# EXHIBIT 4
# FILED UNDER SEAL

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2      charlesverhoeven@quinnemanuel.com
      Melissa Baily (Bar No. 237649)
3      melissabaily@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
4      jordanjaffe@quinnemanuel.com
      Lindsay Cooper (Bar No. 287125)
5      lindsaycooper@quinnemanuel.com
    50 California Street, 22nd Floor
6   San Francisco, California 94111-4788
    Telephone:      (415) 875-6600
7   Facsimile:      (415) 875-6700

8   Attorneys for GOOGLE LLC

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12  GOOGLE LLC,                          CASE NO. 3:20-cv-06754-WHA

13            Plaintiff,
                                         **GOOGLE LLC'S OPPOSITION TO**
14      vs.                              **SONOS, INC.'S MOTION TO DISMISS**
                                         **OR TRANSFER TO THE WESTERN**
15  SONOS, INC.,                         **DISTRICT OF TEXAS**

16            Defendants.

17                                       **UNREDACTED VERSION OF**
                                         **DOCUMENT SOUGHT TO BE FILED**
18                                       **UNDER SEAL**

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .......................................................................................................1

II.   BACKGROUND ..........................................................................................................2

      A.    This Is The Third U.S. Dispute Being Litigated Between The Parties. ...................2

      B.    The Parties Are Located In This District. ...............................................................4

      C.    The Parties Collaborated In This District And Agreed To Litigate In This
            District. ...................................................................................................................4

      D.    Relevant Third-Party Witnesses Are Located In This District And
            California. ...............................................................................................................5

III.  LEGAL STANDARD ..................................................................................................6

IV.   ARGUMENT ...............................................................................................................7

      A.    As The First-Filed Case, Google's Choice Of Forum Should Be Given
            Preference. ...............................................................................................................7

      B.    The Northern District Is Clearly The More Convenient Forum. ..........................11

            1.    Google Could Not Have Brought Its Case In The Destination Venue. ........12

            2.    The Private Interest Factors Weigh Heavily In Favor Of This
                  District. ...............................................................................................12

                  (a)   Plaintiff's Choice Of Forum Favors This District. ...........................12

                  (b)   Convenience Of The Parties And Witnesses Favors This
                        District. ...............................................................................14

                  (c)   Ease Of Access To The Evidence Favors This District. .................19

            3.    The Public Interest Factors Weigh In Favor Of This District. ....................20

      C.    The "Bad Faith" Exception Does Not Apply. ......................................................20

      D.    Google's Complaint Was Adequately Pled. ........................................................22

V.    CONCLUSION ..........................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                    **Page**

*In re Acer America Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ................................................................................. 19

*In re Adobe Inc.*,
   823 F. App'x. 929 (Fed. Cir. 2020) ..................................................................... 16, 20

*Adobe Sys. Inc. v. Bargain Software Shop, LLC*,
   No. C–14–3721 EMC, 2014 WL 6982515 (N.D. Cal. Dec. 8, 2014) ......................... 7

*Apple Inc. v. Fundamental Innovation Sys. Int'l LLC*,
   No. C 19-00638 WHA, 2019 U.S. Dist. LEXIS 72986 (N.D. Cal. Apr. 30, 2019)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................... 7, 22, 23

*Aster Graphics, Inc. v. Static Control Comp., Inc.*,
   No. SA CV 17-1167-DOC(JDEx), 2018 U.S. Dist. LEXIS 196131
   (C.D. Cal. Feb. 12, 2018) ........................................................................................ 24

*Audionics Sys. v. AAMP of Fla., Inc.*,
   No. CV 12-10763 MMM(JEMx), 2013 U.S. Dist. LEXIS 202488
   (C.D. Cal. Apr. 19, 2013) ................................................................................. 21, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 7, 22, 23

*Children's Network, LLC v. PixFusion LLC*,
   722 F. Supp. 2d 404 (S.D.N.Y. 2010) ..................................................................... 8

*Cold Spring Granite Co. v. Matthews Int'l Corp.*,
   No. 10-cv-4272, 2011 WL 4549417 (D. Minn. 2011) ........................................... 23

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
   319 F.R.D. 269 (N.D. Cal. Mar. 13, 2017) ...................................................... 23, 24

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................................... 12

*Diablo Techs., Inc. v. Netlist, Inc.*,
   No. 13-CV-3901-YGR, 2013 U.S. Dist. LEXIS 147593 (N.D. Cal. Oct. 11, 2013) .......... 8, 9, 21

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018) .............................................................................. 23

*Elecs. For Imaging, Inc. v. Coyle*,
   394 F.3d 1341 (Fed. Cir. 2005) ......................................................................... 6, 11

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ................................................................................................. 22

*Evolve Techs., LLC v. Coil Winding Specialist, Inc.*,
   No. 3:18-cv-00671BEN-BGS, 2019 U.S. Dist. LEXIS 52152 (N.D. Cal. Mar. 27, 2019)... 23, 24

*Flint v. UGS Corp.*,
   No. C07-04640 MJJ, 2007 WL 4365481 (N.D. Cal. 2007) ............................. 11, 12

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ....................................................... 13, 14, 19, 20

*Genentech, Inc. v. Amgen Inc.*,
   No. CV 17-1407-GMS, 2018 WL 503253 (D. Del. Jan. 22, 2018) ........................................ 13

*Genentech, Inc. v. Eli Lilly and Co.*,
   998 F.2d 931 (Fed. Cir. 1993) ............................................................................................ 8, 11

*Google Inc. v. Eolas Tech. Inc.*,
   No. 15-cv-5446, 2016 WL 3346529 (N.D. Cal. June 16, 2016) ............................................ 10

*Google Inc. v. Eolas Techs., Inc.*,
   No. 3:15-cv-05446-JST (N.D. Cal. Mar. 4, 2016) ................................................................. 10

*Google LLC f/k/a Google Inc. v. Sonos, Inc.*,
   No. 3-20-cv-03845 (N.D. Cal.) .............................................................................................. 3

*In re Google Inc.*,
   No. 2017-0107, 2017 WL 977038 (Fed. Cir.  Feb. 23, 2017) ........................................... 10, 14

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*,
   179 F.R.D. 264 (N.D. Cal. 1998) ......................................................................................... 22

*Hammond Dev. Int'l, Inc. v. Google LLC*,
   No. 1:20-cv-00342-ADA, 2020 U.S. Dist. LEXIS 110984 (W.D. Tex. June 24, 2020) ...... 16, 17

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,
   No. C 14-0437 CW, 2014 WL 5695051 (N.D. Cal. Nov. 4, 2014) ........................................ 14

*Hilton v. Apple Inc.*,
   No. C13–2167 EMC, 2013 WL 5487317 (N.D. Cal. Oct. 1, 2013) .................................... 7, 11

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................................... 14

*Inherent.com v. Martindale-Hubbell*,
   420 F. Supp. 2d 1093 (N.D. Cal. 2006) ............................................................................... 10

*Interwoven, Inc. v. Vertical Computer Sys., Inc.*,
   No. C 10-4645 RS, 2011 WL 227671 (N.D. Cal. Jan. 24, 2011) ............................................ 6

*J.M. Smucker Co. v. Promotion in Motion, Inc.*,
   420 F. Supp. 3d 646 (N.D. Ohio 2019) ............................................................................... 22

*J3 Eng. Gr., LLC v. Mack Indus. of Kalamazoo, LLC*,
   390 F. Supp. 3d 946 (E.D. Wisc. 2019) ............................................................................... 12

*Joubert v. Lienhard*,
   No. 19-CV-02651-LHK, 2020 WL 1233938 (N.D. Cal. Mar. 13, 2020) ............................. 7, 15

*Kaur v. U.S. Airways, Inc.*,
   No. C-12-5963 EMC, 2013 WL 1891391 (N.D. Cal. May 6, 2013) ...................................... 18

*Lax v. Toyota Motor Corp.*,
   65 F. Supp. 3d 772 (N.D. Cal. 2014) .............................................................................. 11, 18

*Maranon v. Santa Clara Stadium Auth.*,
   No. 15-CV-04709-BLF, 2018 WL 3932490 (N.D. Cal. Aug. 16, 2018) ............................. 7, 24

*Meraki, Inc. v. ClearPath Networks, Inc.*,
   No. 13-145-SI, 2013 WL 2049982 (N.D. Cal. May 14, 2013) .............................................. 19

*MIS Sciences Corp. v. Rpost Comm. Ltd.*,
   No. 14-cv-00376-VC, 2016 WL 2931659 (N.D. Cal. May 19, 2016) ............................... 23, 24

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir. 1989) .............................................................................................. 24

*Munoz v. UPS Ground Freight, Inc.*,
  No. C07-00970 MJJ, 2007 WL 1795696 (N.D. Cal. June 20, 2007) ......................................... 15

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) ................................................................................................. 14

*Payne v. Kennedy Johnson Gallagher LLC*,
  No. CV-10-297-PHX-DGC, 2010 U.S. Dist. LEXIS 50879 (D. Ariz. May 21, 2010) .............. 21

*Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*,
  No. 12CV911-IEG WMC, 2012 WL 2068728 (S.D. Cal. June 8, 2012) .................................. 17

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
  No. 17-cv-04405-HSG, 2017 WL 6389674 (N.D. Cal. Dec. 7, 2017) ................................ 13, 14

*Prof'l Underwriting Grp., Inc. v. Hartford Ins. Co. of Se.*,
  No. CV 15-9714-R, 2016 WL 7448143 (C.D. Cal. Mar. 9, 2016) ............................................. 9

*Rain Gutter Pros, LLC v. MGP Mfg., LLC*,
  55 F. Supp. 3d 1330 (W.D. Wash. 2014) .................................................................................. 23

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998) ................................................................................................. 12

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
  No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197 (N.D. Cal. Mar. 16, 2020) ................. 18

*Royal Queentex Enterprises v. Sara Lee Corp.*,
  No. C-99-4787 MJJ, 2000 WL 246599 (N.D. Cal. Mar. 1, 2000) ............................................ 13

*Sanchez v. Am. Para Prof'l Sys. Inc.*,
  No. 5:17-CV-01835-EJD, 2017 WL 3605230 (N.D. Cal. Aug. 22, 2017) ............................... 17

*Sonos, Inc. v. Google LLC*,
  No. 2-20-cv-00169 (C.D. Cal.) ..................................................................... 2, 3, 15, 17, 21

*Sony Comp. Entm't Am., Inc. v. Am. Med. Response, Inc.*,
  No. C06-06603-CW,  2007 WL 781969 (N.D. Cal. Mar. 13, 2007) ..................................... 8, 13

*StemCells, Inc. v. Neuralstem, Inc.*,
  No. C08–2364 CW, 2008 WL 2622831 (N.D. Cal. July 1, 2008) .............................................. 6

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ................................................................................................................... 11

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*,
  218 F.R.D. 663 (N.D. Cal. 2003) .......................................................................................... 9, 10

**Statutory Authorities**

28 U.S.C. § 1404(a) ............................................................................................................. 7, 11, 13

**Rules and Regulations**

Fed. R. Civ. P. 8 ......................................................................................................................... 22

Fed. R. Civ. P. 11 ........................................................................................................ 2, 3, 20, 21

Fed. R. Civ. P. 45(c)(1)(A) ........................................................................................................ 18

Fed. R. Civ. P. 45(c)(1)(B) ........................................................................................................ 17

**Additional Authorities**

U.S. Patent No. 7,720,686 ............................................................................................................ 5

U.S. Patent No. 8,239,559 ............................................................................................................ 5

I.      **INTRODUCTION**

This is a dispute between two California companies.  It implicates products that were designed and developed in California.  And it calls for the testimony of witnesses who reside primarily in California.  California is the focus of Sonos's accusations and the only logical site for their resolution.  Nonetheless, Sonos seeks to litigate its claims in the Western District of Texas (the "Western District")—a district to which Sonos admittedly has ***no*** connection, and a district that bears no connection to this case.

This is the first-filed action, which ordinarily dictates that the case should proceed here. Sonos argues that the first-filed rule should not apply because Google's suit was anticipatory.  But the anticipatory suit exception exists to guard against the kind of forum shopping and procedural gamesmanship that ***Sonos*** is engaged in here.  Sonos seeks to litigate its allegations in a forum that has no relationship to the case, and Sonos only provided Google with a "courtesy copy" of its complaint in an effort to create a basis for alleging willfulness in the Western District the next day. In fact, the "courtesy copy" provided by Sonos already stated that Google did not stop infringing "in response to receiving a draft of this complaint" despite the fact that Google had not yet received the draft.  Yet now Sonos complains of Google acting in response to receiving the draft complaint containing allegations of willful infringement.  Sonos should not be able to dodge the consequences of its attempted procedural gamesmanship.

Even if the Court determines that Google's case was anticipatory, that is not the end of the analysis.  The Court also must make an independent determination as to which of the two proposed forums is appropriate for resolution of this dispute based on the Section 1404(a) convenience factors.  Sonos has not identified any relevant witnesses or evidence in the Western District, which is unsurprising given that Sonos does not have an office in Texas, and the likely witnesses responsible for designing and developing the accused functionality are primarily located

in this District.  Sonos vaguely suggests that there may be people with relevant knowledge in Austin because some Google employees in that office work on the Google Cloud Platform.  But the Google Cloud Platform is an enterprise product that is not accused here.  And in any event, a vague suggestion that there *may* be relevant people in the Western District, without more, is insufficient for Sonos to meet its burden here, where there is no question that there are relevant party and third-party witnesses in this District.

Sonos also argues that Google's complaint was brought in bad faith.  It was not.  Upon receiving Sonos's letter, Google investigated the accused products (which are the same as those at issue in the parties' parallel litigation) and determined that it had a Rule 11 basis for alleging non-infringement.  In the alternative, Sonos argues that Google's complaint fails to state a claim under Rule 12(b)(6).  But Sonos cannot claim that Google's complaint fails to put Sonos on notice of the issues in the case; Sonos is the one that accused Google of infringement in the first place.  To the extent the Court finds that Google's complaint requires more detail, Google respectfully asks for leave to amend.

## II.  BACKGROUND

### A.   This Is The Third U.S. Dispute Being Litigated Between The Parties.

This case is the third in a series of U.S. patent infringement cases between Google and Sonos.  Sonos sued Google first, filing a complaint with the International Trade Commission ("ITC") and a companion district court case in its home district—the Central District of California—at the beginning of this year.  *See Certain Audio Players and Controllers, Components Thereof and Products Containing Same*, Inv. No. 337-TA-1191, Declaration of Lindsay Cooper ("Cooper Decl.") Ex. 1; *Sonos, Inc. v Google LLC*, No. 2-20-cv-00169 (C.D. Cal.), Cooper Decl. Ex. 2 (collectively, "*Sonos I*").  Sonos is asserting five patents against Google in *Sonos I*, two of which come from the same family as patents at issue in this case.  *Compare* Dkt.

1-4, 1-5 (asserted '206 and '966 patents claim priority to U.S. Patent App. 11/853,790) *with* Cooper Decl. Ex. 3 (same for U.S. Patent No. 9,219,959, asserted in *Sonos I*).  The *Sonos I* patents relate generally to pairing and syncing speakers in a home network.  Cooper Decl. Exs. 3, 37-40.  The *Sonos I* district court case is stayed pending resolution of the ITC investigation, in which an Initial Determination is expected by May 2021.  Cooper Decl. Ex. 4.

Google filed an offensive patent case in this District in June 2020.  *Google LLC f/k/a Google Inc. v. Sonos, Inc.*, No. 3-20-cv-03845 (N.D. Cal.) ("*Sonos II*").  The patents Google is asserting against Sonos in *Sonos II* similarly relate to pairing and syncing speakers in a home network.  Cooper Decl. Exs. 5-9.  *Sonos II* is currently pending in this District before Judge Chen.

The instant case is *Sonos III*.  On September 28, 2020, Sonos sent Google a copy of a proposed complaint it said it would file in the Western District the next day.  Mot. at 3-4; Dkt. 11-1, Caridis Ex. A.  In the "courtesy copy" of the Western District complaint that Sonos sent Google, and in the as-filed version of its complaint in the Western District the next day, Sonos alleged:

> Sonos provided a pre-filing copy of this Complaint to Google, thereby providing clear pre-suit notice of infringement of the patents-in-suit.  Google, however, has never given any indication that it is willing to stop infringing, and ***did not do so in response to receiving a draft of this complaint.***

Dkt. 11-1, Caridis Ex. A at ¶ 36 (emphasis added); Dkt. 11-1, Caridis Ex. F at ¶ 36.  In other words, Sonos would use any inaction by Google in response to receiving the complaint to set up a willfulness case against Google.  So, upon receiving Sonos's letter, Google investigated Sonos' allegations, determined that it had a Rule 11 basis for non-infringement, and filed the instant declaratory judgment action.  Dkt. 1.  Sonos filed a mirror-image patent infringement complaint in the Western District the following day.  Mot. at 4; Dkt. 11-1, Caridis Ex. F.  As with *Sonos I* and *Sonos II*, the patents at issue in this case relate to pairing and syncing speakers in a home network.

B.    **The Parties Are Located In This District.**

Google is a California-based company.  Google has been headquartered in Northern California since its founding in 1998, and it is currently headquartered in Mountain View, California, which is located in this District.   Declaration of Daniel S. Friedland ("Friedland Decl.") ¶ 2.  The key witnesses with relevant knowledge regarding the development, design, and finances of the accused functionality are based in this District.  *Id.* ¶¶ 5-11.  These witnesses do not recall anyone from a Google Texas office working on the accused functionality.  *Id.* ¶¶ 5-7, 9-11.

Sonos is also a California-based company.  Sonos was founded in Santa Barbara, California in 2002 (Mot. at 2), and it still maintains its headquarters in Santa Barbara today.  Dkt. 1-1.  Sonos also has a significant presence in this District, with an office at 550 Montgomery Street in San Francisco.  Dkt. 1-1.  Although Sonos has 13 offices worldwide, none is located in Texas.  *Id.*

Sonos's witnesses are primarily based in California.  All but one of the named inventors on the patents-in-suit appear to live in Santa Barbara.  *See* Dkt. 1-2, 1-3 *and* Cooper Decl. Ex. 10 (Joni Hoadley, named inventor on '615 and '033 patents, based in Santa Barbara); *see* Dkt. 1-4, 1-5 *and* Cooper Decl. Ex. 11 (Robert A. Lambourne, named inventor on '206 and '966 patents, based in Santa Barbara); Dkt. 1-6 (William H. Bush, named inventor on '460 patent, based in Santa Barbara).  The only non-California named inventor is based in a suburb of Boston, Massachusetts—not Texas.  *See* Dkt. 1-2, 1-3 *and* Cooper Decl. Ex. 12 (Arthur Coburn IV, named inventor on '615 and '033 patents, based in Lexington, MA).

C.    **The Parties Collaborated In This District And Agreed To Litigate In This District.**

Sonos and Google have a long history of collaboration on features that Sonos now accuses of infringing the '615 and '033 patents.  Indeed, Sonos and Google had regular calls related to

their collaboration on certain of these features.  *See e.g.,* Cooper Decl. Ex. 13.  Arthur "Tad"

Coburn, the named inventor on the asserted '615 and '033 patents, visited the Google team in

Mountain View, California at least once.  Ex. 14.

Furthermore, throughout the parties' relationship, Google and Sonos repeatedly agreed that

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████  *See e.g.*, Ex. 15 at Section 10.2; *see also*

Ex. 16 at Section 11.[1]

**D.     Relevant Third-Party Witnesses Are Located In This District And California.**

There are relevant third parties in this District and California.  At least one of the

California-based named inventors no longer works at Sonos, and is thus a third party.  Cooper

Decl. Ex. 10.  Should invalidity of the patents be at issue, the following witnesses also appear to

have relevant information regarding prior art to the asserted patents:

- **Ravi Rajapakse**.  Mr. Rajapakse is the named inventor on U.S. Patent No. 8,239,559, which discloses a system for playing back audio among groups of devices and zones.  Cooper Decl. Ex. 17.  Mr. Rajapakse's work is relevant prior art for the '206 and '966 patents, which Sonos contends cover allowing a user to control audio players in a multi-zone system.

- **Jan F. Jannink and Timothy E. DeGraw**.  Messrs. Jannink and DeGraw are named inventors on U.S. Patent Publication No. 2008/0120501 A1, which relates to remote playlist sharing.  Cooper Decl. Ex. 18.  This publication is also relevant prior art for the '615 and '033 patents.

- **Pandora**.  Pandora is an Oakland, California-based subscription music streaming service and the assignee of U.S. Patent No. 7,720,686 B2, which relates to providing personalized playlists to users remotely.  Cooper Decl. Ex. 19.  This patent invention is also relevant prior art for the '615 and '033 patents.

- **Dolby Laboratories**.  Dolby is a San Francisco-based audio technology company and the assignee of European Patent No. 2986034B1, which relates to equalization.

---

[1] The forum selection provisions in these agreements apply to disputes relating to the agreements. See Ex. 15 at Section 10.2 ██████████████████████████████████████████████████ (emphasis added).  Google does not presently contend that these provisions alone require denial of Sonos's motion to transfer.

1

Cooper Decl. Ex. 20.  This patent, whose named inventor is Alan J. Seefeldt,  is

2

prior art to the '460 patent, which Sonos also contends relates to equalization.

3

All of these entities and witnesses are based in this District.  Cooper Decl. Exs. 21 (Rajapakse), 22

4

(Jannink), 23 (DeGraw), 24 (Pandora), 25 (Volk), 26 (Reed), 27 (Dolby), 28 (Seefeldt).

5

### III.    LEGAL STANDARD

6

As between two parallel suits, the Federal Circuit has emphasized that "[t]he first-filed

7

action is preferred, even if it is declaratory, 'unless considerations of judicial and litigant

8

economy, and the just and effective disposition of disputes, require otherwise.'"  *Interwoven, Inc.*

9

*v. Vertical Computer Sys., Inc.*, No. C 10-4645 RS, 2011 WL 227671, at *2 (N.D. Cal. Jan. 24,

10

2011).  The preference for the first-filed case is thus the starting point.

11

The trial court must also evaluate "the forum in which all interests are best served."  *Id.*  To

12

determine which forum would best serve all interests, a court examines "'the convenience and

13

availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the

14

possibility of consolidation with related litigation, or considerations relating to the real party in

15

interest.'"  *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005) (holding

16

district court abused its discretion in dismissing first-filed case as anticipatory where other

17

considerations, such as convenience and availability of witness, or the possibility of consolidation

18

with related litigation, suggested that it was inefficient for the first-filed case not to proceed).[2]

19

20

The court with jurisdiction over the earlier-filed action will decide (1) whether to apply the

21

first-to-file rule and (2) whether the convenience of the parties warrant transfer.  *See, e.g.,*

22

*StemCells, Inc. v. Neuralstem, Inc*., No. C08–2364 CW, 2008 WL 2622831, at *4 (N.D. Cal. July

23

1, 2008) ("[T]he court in the first-filed action should decide whether there is an exception to the

24

25

26

---

[2] In this context, this question is determined under Federal Circuit law, not regional circuit law. *Id*. at 1345-6 ("Because it is an issue that falls within our exclusive subject matter jurisdiction, we do not defer to the procedural rules of the regional circuits nor are we bound by their decisions." (citation omitted)).

27

28

first-to-file rule."); *see also Hilton v. Apple Inc.*, No. C13–2167 EMC, 2013 WL 5487317, at *10

(N.D. Cal. Oct. 1, 2013) ("[T]o the extent that Plaintiff argues that the balance of convenience

factors weigh in favor of this case being litigated in this district, the case law makes clear that such

arguments are properly reserved for the forum where the first-filed action is pending.").

A motion to transfer venue is governed by 28 U.S.C. § 1404(a).  "Generally, the party

seeking transfer bears the burden of showing that transfer is appropriate."  *Joubert v. Lienhard*,

No. 19-CV-02651-LHK, 2020 WL 1233938, at *2 (N.D. Cal. Mar. 13, 2020).  A defendant

seeking transfer must make a "'strong showing of inconvenience to warrant upsetting the

plaintiff's choice of forum.'"  *Adobe Sys. Inc. v. Bargain Software Shop, LLC*, No. C–14–3721

EMC, 2014 WL 6982515, at *2 (N.D. Cal. Dec. 8, 2014).

To survive a Rule 12(b)(6) motion to dismiss, a claim must allege "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  Even if a court determines that a party's pleading is insufficient,

it should be lenient in granting leave to amend.  *Maranon v. Santa Clara Stadium Auth.*, No. 15-

CV-04709-BLF, 2018 WL 3932490, at *2 (N.D. Cal. Aug. 16, 2018) (noting that "Rule 15(a) is a

liberal standard" such that "leave to amend 'shall be freely given when justice so requires.'").

## IV.   ARGUMENT

### A.   As The First-Filed Case, Google's Choice Of Forum Should Be Given Preference.

As the first-filed action, this case should be given preference unless there is another forum

"in which all interests are best served."  *Apple Inc. v. Fundamental Innovation Sys. Int'l LLC*, No.

C 19-00638 WHA, 2019 U.S. Dist. LEXIS 72986, *9-10 (N.D. Cal. Apr. 30, 2019) (citing

*Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993)).  As explained in more detail below, there is no such forum.

## 1.   <u>Sonos Is Not Entitled To Benefit From The Anticipatory Suit Exception.</u>

The anticipatory suit exception to the first-to-file rule exists to prevent forum shopping. *Sony Comp. Entm't Am., Inc. v. Am. Med. Response, Inc.*, No. C06-06603-CW,  2007 WL 781969, *2 (N.D. Cal. Mar. 13, 2007).  Only one party is forum shopping here, and it is Sonos.  This suit has no connection to the Western District.  Indeed, as explained in more detail below, Google likely could not have established personal jurisdiction over Sonos there.  *Infra* § B.1.  The Court should not credit a motion to dismiss or transfer premised on forum shopping where the movant itself has engaged in that very practice.  *Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 413 (S.D.N.Y. 2010) (refusing to find that first-filed case was anticipatory where patentee was forum shopping: "[P]laintiffs had sound reasons for filing their declaratory judgment action in this district.  While PixFusion accuses plaintiffs of forum shopping, that accusation is more properly directed at PixFusion itself.").

Sonos accuses Google of seeking declaratory relief in order to gain a "procedural advantage."  Mot. at 7.  But it was Sonos, not Google, that attempted to obtain a procedural advantage.  Sonos's position is that (i) Sonos should be permitted to use the courtesy copy of its complaint to support a willfulness allegation, claiming that Google did nothing in the face of receiving it, but (ii) Google cannot do anything in the face of receiving the draft complaint without Sonos accusing Google of an anticipatory filing and bad faith.  Sonos cannot have it both ways.  Faced with this clear gamesmanship, Google was well within its rights to "seek a judicial determination of the controversy immediately, without delay and uncertainty."  *Diablo Techs., Inc. v. Netlist, Inc.*, No. 13-CV-3901-YGR, 2013 U.S. Dist. LEXIS 147593 at *16-17 (N.D. Cal. Oct. 11, 2013).

In any event, Google's suit was not "anticipatory."  A suit is anticipatory if the plaintiff filed upon receipt of a "specific, concrete indication" that a suit by defendant is imminent—for example if the plaintiff's case was "precipitated by the receipt of communication stating *unequivocally* that a suit would be filed by a specific date unless certain demands were met." *Prof'l Underwriting Grp., Inc. v. Hartford Ins. Co. of Se*., No. CV 15-9714-R, 2016 WL 7448143, at *1 (C.D. Cal. Mar. 9, 2016) (emphasis in original).  Taken at face value, Sonos's September 28 letter to Google was neither concrete nor unequivocal.  To the contrary, it concluded by inviting Google to engage.  Dkt. 11-1, Caridis Ex. A ("We continue to be hopeful that Google will reconsider its infringement and its refusal to engage in a meaningful discussion.").

Considering a nearly identical set of facts and arguments from the defendant, a court in this District held that the plaintiff's first-filed case was not anticipatory.  *Diablo Techs.*, 2013 U.S. Dist. LEXIS 147593, at *13-17.  In *Diablo*, the patentee faxed a letter to the accused infringer at 5:30 p.m., and told the accused infringer that it was going to amend its complaint to add additional patent infringement claims the next day.  *Id*. at *5.  The accused infringer filed a declaratory judgment action the next morning.  *Id.* at *5-6.  In *Diablo*, the patentee advanced the same argument that Sonos does here—namely, that the declaratory judgment action was anticipatory, in bad faith, and constituted improper forum shopping.  *Id.* at *13-14.  The court rejected patentee's arguments, held that the accused infringer had every right to seek declaratory relief under the circumstances, and observed that "to ignore the first-to-file rule when the first-filed case is a declaratory relief action . . . would allow the patent owner to control venue in all instances, a result inconsistent with [the Declaratory Judgment Act's] purpose."  *Id.* at *16-17.

Sonos cites two cases in support of its argument that Google's case is an anticipatory suit.  Both are distinguishable.  In *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 664-67 (N.D. Cal. 2003), the court found not only a "specific and concrete indication" that a suit was

imminent where the plaintiff provided a hard deadline of July 7, followed by specific extensions to July 11 and July 29, but also that the plaintiff had acted in bad faith, "mislead[ing]" defendant to delay its filing to ensure that it could file first.  In *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2006), the court found "a specific and concrete indication that a suit . . . was imminent" where the defendant unambiguously stated that "unless a settlement is reached within five (5) business days a lawsuit will be filed."  *Id.* at 1100.   Unlike *Z-Line* and *Inherent*, although Sonos told Google it planned to file the next day, it also provided an invitation for Google to "reconsider its infringement and its refusal to engage in a meaningful discussion."  Dkt. 11-1, Caridis Ex. A.[3]

Even if the Court determines that Google's case was anticipatory, *Z-Line* and *Inherent* still support Google, not Sonos.  In both cases, after concluding that the first-filed case was anticipatory, the courts nonetheless analyzed the transfer factors under Section 1404 and determined that the appropriate forum for the case was the one with a legitimate connection to the parties and the dispute.  *Inherent*, 420 F. Supp. 2d at 1101-02 (determining that the case should proceed in New Jersey, not California, because, among other reasons, "New Jersey is the place where the majority of witnesses are located"); *Z-Line*, 218 F.R.D. at 667 (finding that the convenience factors did not weigh against transfer where "documents and things related to Bell'O's copyrights and trade dress rights are likely located in New Jersey").  In this case, this District, and not the Western District, is the appropriate forum for this dispute.

[3]   In a footnote, Sonos raises *Google Inc. v. Eolas Techs., Inc*., No. 3:15-cv-05446-JST (N.D. Cal. Mar. 4, 2016), where Google urged a Northern District court to keep its second-filed declaratory judgment case rather than transfer it to the Eastern District of Texas.  Mot. at 4 n.1.  What Sonos fails to mention is that the Northern District court never even decided this issue.  Instead, it stayed the case to let the judge of the first-filed action consider venue.  *Google Inc. v. Eolas Tech. Inc.*, No. 15-cv-5446, 2016 WL 3346529, at *8 (N.D. Cal. June 16, 2016).  Although the Eastern District of Texas initially determined that Texas would be a more convenient venue, the Federal Circuit held that this was "clear error"  in part because "Google has a strong presence in the transferee district," and the case was ultimately transferred to this District.  *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).

### B.   The Northern District Is Clearly The More Convenient Forum.

Even if the Court finds that Google's case was anticipatory, the Federal Circuit has described that as only "one factor in the analysis." *Elec. for Imaging*, 394 F.3d at 1348-49.  The Court must consider the remaining factors as well, including "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.; Genentech*, 998 F.2d at 938 (reversing dismissal of declaratory judgment action as anticipatory because district court failed to consider other factors, such as the location of relevant witnesses and documents), *abrogated on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995); *Apple*, 2019 U.S. Dist. LEXIS 72986, *13-14 (analyzing transfer factors under Section 1404(a) in addition to the question of whether the first-filed suit was anticipatory, and finding that the case belonged in this District where "Apple allegedly developed the accused charging features in this district," and "the Eastern District of Texas has little interest in this case as the inventions were not developed there").  Sonos agrees that the Court must consider the convenience factors conventionally used when deciding motions to transfer under Section 1404(a).  Mot. at 10.

To evaluate transfer under § 1404(a), courts first consider whether the case could have been brought in the destination venue.  *Flint v. UGS Corp.*, No. C07-04640 MJJ, 2007 WL 4365481, at *2 (N.D. Cal. 2007).  If the answer is yes, courts then consider four "private" and four "public" factors: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.  *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014).

1    **1.    Google Could Not Have Brought Its Case In The Destination Venue.**

2    Whether the plaintiff could have brought its case in the destination venue is a threshold

3    issue. *Flint,* 2007 WL 4365481, at *2.  Google could not have brought this case in the Western

4    District because that district appears to lack personal jurisdiction over Sonos.  Sonos does not

5    appear to have the kind of "continuous and systematic" contacts with the Western District that

6    would subject it to general jurisdiction there.  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014)

7    ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of

8    incorporation and principal place of business.").  Sonos is a Delaware corporation with its

9    principal place of business in Santa Barbara, California (Dkt. 1 ¶ 5), and Sonos does not have any

10   offices in Texas.  Dkt. 1-1.  Nor has Sonos pointed to any evidence indicating  that this case arises

11   out of or relates to the Western District such that Sonos would be subject to specific jurisdiction

12   there.  *Compare e.g., Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355,

13   1360 (Fed. Cir. 1998) (suggesting specific jurisdiction in a declaratory judgment case could be

14   based on cease-and-desist letters sent to the forum state).  This case does not bear any connection

15   to the Western District at all.

16
17

18   **2.    The Private Interest Factors Weigh Heavily In Favor Of This District.**

19   Relevant party and third-party evidence is in this District, and Sonos has not identified any

20   witnesses with relevant information in the Western District.  The private interest factors weigh

21   heavily in favor of transfer.

22
     **(a)    *Plaintiff's Choice Of Forum Favors This District.***
23
24   Google is the plaintiff here, and Google chose its home forum.  Sonos cannot claim to be

25   surprised by this choice, since Google and Sonos are already litigating in this District, Sonos

26   visited Google in this District in connection with a collaboration related to features that Sonos

27   accuses of infringement, and Sonos has repeatedly ***agreed*** to litigate with Google here in other

28   contexts.  *Supra* § II.A-II.C; *see also J3 Eng. Gr., LLC v. Mack Indus. of Kalamazoo, LLC,* 390 F.

-12-

1   Supp. 3d 946, 952 (E.D. Wisc. 2019) ("[G]iven the presence of forum selection clauses pointing to

2   Ozaukee County, Wisconsin as the forum for litigation, it should not have surprised Mack that J3

3   filed its lawsuit there.").[4]   Under these circumstances, Google's choice of forum should be given

4   "great weight."  *Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-cv-04405-HSG, 2017 WL

5   6389674, at *3 (N.D. Cal. Dec. 7, 2017) (plaintiff's choice of forum entitled to "great weight"

6   where the forum was its "home turf," and where the "technology at issue was designed and

7   developed here").

8

9        Sonos claims that it is the true plaintiff in this case, and that ***its*** choice of forum weighs in

10  favor of transfer.[5]   Courts have rejected this argument in similar circumstances.  *See, e.g.*, *Sony*

11  *Computer*, 2007 WL 781969, at *3-5 (rejecting defendant's argument that its choice of forum

12  should prevail "as the true plaintiff in th[e] case," and holding that plaintiff's choice of forum in its

13  home district weighed "heavily" against transfer).  Even if the Court does consider Sonos to be the

14  true plaintiff, courts give much less deference to the plaintiff's choice of forum if it is one where

15  none of the operative facts occurred.  *Plexxikon*, 2017 WL 6389674, at *3 ("[T]he degree to which

16  courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue

17  choice is not its residence or where the forum lacks a significant connection to the activities

18

19

20

---

21       [4]   Sonos suggests that Google would not be inconvenienced by having to litigate this case in
    the Western District because "Google is already litigating numerous cases" there.  Mot. at 12.  But
22  unrelated cases pending in the proposed transferee forum have no bearing on the Section 1404(a)
    analysis, which requires "individualized, case-by-case consideration of convenience and fairness."
23  *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009); *see also Genentech, Inc. v. Amgen
    Inc.*, No. CV 17-1407-GMS, 2018 WL 503253, at *5 (D. Del. Jan. 22, 2018) (dismissing argument
24  that "transfer is warranted, because Plaintiffs are 'familiar' with the Central District of California
    after participating in over ten different actions there" because the moving party "did not identify
25  any similarities between this litigation and the ten actions it referenced").
         [5]   Sonos cites *Royal Queentex Enterprises v. Sara Lee Corp*., No. C-99-4787 MJJ, 2000 WL
26  246599, at *5 (N.D. Cal. Mar. 1, 2000), for the proposition that a "plaintiff's chosen forum will be
    accorded little deference" in "cases of anticipatory suits."  Mot. at 10.  As discussed above,
27  Google's case was not anticipatory, and in any event, *Royal Queentex* supports Google here.  The
    *Royal Queentex* court denied a motion to transfer because the defendant had not met its burden of
28  establishing that convenience factors weighed heavily in favor of transfer.  *Id.* at *8.

---

1  alleged in the complaint."). Because none of the operative facts arise from the Western District,

2  Sonos's preference to litigate there should not be given much, if any, weight. *Id.*

3                        **(b)      *Convenience Of The Parties And Witnesses Favors This District.***

4        "The convenience of the witnesses is probably the single most important factor in the

5  transfer analysis." *In re Genentech,* 566 F.3d at 1343 (internal citation omitted); *Heartland*

6  *Payment Sys., Inc. v. Mercury Payment Sys., LLC,* No. C 14-0437 CW, 2014 WL 5695051, at *3

7  (N.D. Cal. Nov. 4, 2014). In this case, where there are numerous known witnesses based in

8  California and none based in Texas, this factor overwhelmingly favors this District. *In re Google*

9  *Inc.*, No. 2017-0107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (California, not Texas,

10  was the proper venue where "the vast majority of Google's employees—in particular those

11  responsible for projects relating to the accused products—work and reside in" this District); *In re*

12  *Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (Washington, not Texas, was the proper

13  venue where "[a]ll of the identified key witnesses in this case are in Washington, Japan, Ohio, and

14  New York" and "[n]o witnesses live in Texas"); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333,

15  1336 (Fed. Cir. 2009) (North Carolina, not Texas, was the proper venue where the "accused drug

16  was developed and tested" there, and relevant witnesses resided there, given Texas had "no

17  connection" to the case).

18        ***Google Witnesses.*** Google's main offices are located in the Northern District, and over

19  ▮▮ of the company's U.S. employees—more than ▮▮ people—work there. Friedland Decl. ¶

20  3. The Google witnesses that are responsible for the development of (1) Google's Room EQ

21  feature, which Sonos accuses of infringing the '460 patent (Dkt. 11-1, Caridis Ex. F at 82-83), (2)

22  the functionality that allows casting playback of Google Play Music, YouTube Music, or YouTube

23  to a Cast receiver, which Sonos accuses of infringing the '615 and '033 patents (*id.* at 24-39), and

24  (3) the functionality that allows creating and managing speaker groupings for media playback,

which Sonos accuses of infringing the '206 and '966 patents (*id.* at 59-78), are based primarily in the Bay Area. Friedland Decl. ¶ 5-11 (identifying nine individuals by name who served as technical leads, product managers and primary engineers working on the accused functionalities). The witness with knowledge of the financials relating to the accused products is also located in the Northern District. *Id.* ¶ 12. In *Sonos I*, the parallel proceedings involving the same accused products, 15 of the 17 Google witnesses who were deposed are located in this District. Declaration of James Judah (Judah Decl.") ¶ 2-3. Several of these witnesses, including ███, ██████████████████████████████████████████████████████████████, likely have information relevant to this case as well. *Id.*; Friedland Decl. ¶ 6, 9, 11-12. None of the Google employees who were deposed in *Sonos I* are located in Texas. Judah Decl. ¶ 2.

Sonos speculates that there are "likely" witnesses in the Western District because "Google has a significant presence in Austin, within the Western District of Texas, and employs engineers in that district who are likely to be knowledgeable about the accused products and functionalities." Mot. at 11-12. Because Sonos has not actually identified any relevant witnesses in the Western District, the Court can—and should—dismiss this speculative argument. *Joubert*, 2020 WL 1233938, at *4 (rejecting vague suggestion that "there may be other witnesses based in Texas" because "[t]he moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include"); *Munoz v. UPS Ground Freight, Inc.*, No. C07-00970 MJJ, 2007 WL 1795696, at *4 (N.D. Cal. June 20, 2007) (denying transfer based on this factor because "Defendants do not identify specifically any witnesses that will be called and the inconvenience they will face if transfer is denied"). More to the point, Google is not aware of any likely witnesses in the Western District of Texas. *See* Friedland Decl. ¶ 5-12. None of the Google employees who were deposed in *Sonos I* are based in the Austin office. Judah Decl. ¶ 2-3. And the Google Cloud Platform is not relevant to this case. The Google Cloud

1    Platform is an enterprise product that Google sells to other businesses.  Cooper Decl. Ex. 29.  The

2    Google Cloud Platform is not accused of infringement here.  Dkt. 1.[6]

3           Sonos argues that the Western District of Texas recently denied Google's motion to

4    transfer to this District a case involving similar accused products.  Mot. at 10 (citing *Hammond*

5    *Dev. Int'l, Inc. v. Google LLC,* No. 1:20-cv-00342-ADA, 2020 U.S. Dist. LEXIS 110984, at *5-16

6    (W.D. Tex. June 24, 2020)).  Google does not agree that the Western District is a more convenient

7    forum than this District for the *Hammond* case.  There, the court found the only factors weighing

8    against transfer to the Northern District were "court congestion and other practical problems,"

9    including that the *Hammond* court's time to trial is "25% faster than the NDCA."  *Id*. at *5.

10   Subsequent to *Hammond*, however, the Federal Circuit reversed another transfer denial by the

11   same judge.  *In re Adobe Inc*., 823 F. App'x. 929 (Fed. Cir. 2020).  There, addressing the same

12   "court congestion" analysis as in *Hammond*, the Federal Circuit explained that reliance on the

13   district court's scheduling orders was not properly considered under this factor because "[n]othing

14   about the court's general ability to set a schedule directly speaks to [the issue of docket

15   congestion]."  *Id*. at 932.  Moreover, the factual situation in *Hammond* is distinct from this case.

16   In *Hammond* the court had consolidated the Google case with a case against another defendant and

17   also relied on Hammond's identification of "individuals, including the HDI founder, for which

18   WDTX is more convenient."  *Hammond*, 2020 U.S. Dist. LEXIS 110984, at *9, *14-15.  By

19   contrast, here, Sonos has not identified any likely witnesses in the Western District or any

20   witnesses for whom the Western District would be more convenient.[7]  Further, unlike here,

_____

[6] Although two of Sonos's patents refer to a "cloud-based network" (Dkt. 1-2, Dkt. 1-3), the
Google Cloud Platform is not alleged to infringe.  That both patents contain the word "cloud" is
convenient for Sonos but does not change the irrelevance of the Google Cloud Platform product.
As discussed *supra*, the relevant witnesses Google has identified so far do not recall working with
anyone from a Google Texas office on the accused functionality.  Friedland Decl. ¶ 6-7, 9-11.
   [7]   To the extent Sonos attempts to identify relevant witnesses in its Reply, the Court should
reject this effort.  *See* L.R. 7-3(d)(1) (allowing opposing party to object if "new evidence has been

Hammond alleged that elements of Google Cloud Platform were part of an accused product.  *Id.* at
*1 ("HDI alleges that . . . Google Assistant-enabled devices associated with the Google Cloud
Platform infringe the Patents-in-Suit").

      *Sonos Witnesses.*  Sonos is headquartered in Santa Barbara, California, which is closer to
this District than to Waco, Texas.  Sonos also has a significant presence in this District, with an
office in San Francisco.  *Supra* § II.B.  Sonos does not have any offices in Texas.  *Id.*

      Sonos has not identified any relevant Sonos witnesses in this District.  From what Google
has been able to uncover, most of the relevant Sonos witnesses, including a majority of the named
inventors on the Asserted Patents who still work at Sonos, are based in Santa Barbara, which is
much closer to this District than the Western District.  *Supra* § II.D.  These witnesses may be
within the subpoena power of this Court, but they are definitively not within the subpoena power
of the Western District.  Fed. R. Civ. P. 45(c)(1)(B) (party witnesses can be compelled to testify at
trial "within the state where the person resides, is employed, or regularly transacts business, if the
person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur
substantial expense").[8]  Indeed, of the nine Sonos witnesses who were deposed in *Sonos I*, many
of whom likely have information relevant to this case as well, five were located in California.
Judah Decl. ¶ 4.  None was from Texas.  *Id.*

      *Third-Party Witnesses.*  Courts ruling on transfer motions have emphasized that "[t]he
convenience of non-party witnesses is the most important convenience factor; more important that

---

submitted in the reply"); *Sanchez v. Am. Para Prof'l Sys. Inc*., No. 5:17-CV-01835-EJD, 2017 WL
3605230, at *2 (N.D. Cal. Aug. 22, 2017) (holding that plaintiff "may not introduce new evidence
in its reply brief"); *see also Peregrine Semiconductor Corp. v. RF Micro Devices, Inc*., No.
12CV911-IEG WMC, 2012 WL 2068728, at *7 (S.D. Cal. June 8, 2012) (noting "it is not proper
for a party to submit new evidence in a reply brief" when defendants attempted to identify three
new non-party witnesses through a declaration in their reply brief).

[8]   The final named inventor is based in a suburb of Boston, MA, which has direct flights to the
Bay Area but not to Waco, Texas, and as mentioned above traveled to the Northern District to
meet with Google in the past.  *Supra* §§ II.C-II.D.; Cooper Decl. Ex. 36.

the convenience of party witnesses." *Lax*, 65 F. Supp. 3d at 780; *see also Kaur v. U.S. Airways,*

*Inc.,* No. C-12-5963 EMC, 2013 WL 1891391, at *6 (N.D. Cal. May 6, 2013).  At least one of the

California-based named inventors on the patents-in-suit no longer works at Sonos, and thus is a

third party.  Cooper Decl. Ex. 10 (Hoadley).  And to the extent third-party prior art witnesses will

be important to this litigation, Google has identified a number of such witnesses based in this

District.  *Supra* § II.D.  These witnesses are all within the subpoena power of this Court, but not

the Western District.  *See* Fed. R. Civ. P. 45(c)(1)(A) (third-party witnesses can be compelled to

testify at trial "within 100 miles of where the person resides, is employed, or regularly transacts

business in person").  By contrast, Google is not aware of any relevant third parties in Texas.  *See*

Judah Decl. ¶ 2.

*   *   *   *

Hailing key party and non-party witnesses from their homes in this District to a district

where no relevant witnesses reside would be a burdensome undertaking.  There are no direct

flights from California to Waco, Texas, where Judge Albright's courtroom is located.  Cooper

Decl. Ex. 30.  Commercial flights to Waco require at least four hours of flight time (plus a layover

in Dallas) (Cooper Decl. Ex. 31), which does not even account for time spent waiting at the airport

and travel to and from the airport, let alone the risk of missing a tight connection.  Conversely, if

this case remains in this District, Google employees and third-party prior art witnesses could

readily travel back and forth between the courthouse and their homes, a far more convenient

arrangement.[9]

---

[9]  Sonos argues that the "convenience of a litigant's employee witnesses [is] entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum." Mot. at 11, *citing Rice-Sherman v. Big Heart Pet Brands, Inc.,* No. 19-cv-03613-WHO, 2020 U.S. Dist. LEXIS 46197, at *13 (N.D. Cal. Mar. 16, 2020).  This argument has no applicability here, where Sonos has not identified a single witness, party or third-party, who resides in the Western District, and where nearly all of the known party witnesses are based in California.

In ordinary circumstances, witnesses who have to leave home for trial "incur significant expenses for airfare, meals, and lodging," as well as "'personal costs associated with being away from work, family, and community.'" *In re Acer America Corp*., 626 F.3d 1252, 1255 (Fed. Cir. 2010). Given the current global pandemic and health and safety restrictions, interstate travel poses an entirely new risk, on top of what was otherwise already an inconvenience. The cost, inconvenience and public health risk associated with air travel to the Western District is significant—particularly given that, if this case remains in this District, many of the witnesses could travel to the courthouse by car. This factor weighs heavily against transfer.

### (c)   *Ease Of Access To The Evidence Favors This District.*

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.*; *Meraki, Inc. v. ClearPath Networks, Inc.,* No. 13-145-SI, 2013 WL 2049982, at *2 (N.D. Cal. May 14, 2013) (this factor weighed against transfer where all of defendant's "business documents and records relating to the research, design and development of all of its products are physically present or electronically accessible in San Francisco," and where "[t]here are no foreseeable documents, electronically stored information, or tangible things, physically present" in the transferee district).

Google researches, designs and develops the accused functionality in this District. Friedland Decl. ¶¶ 5-11. Sonos also maintains an office in this District, suggesting that Sonos documents are located here as well. Dkt. 1-1. And prior art witnesses and evidence are also located in this District. *Supra* § II.D. In contrast, there is no indication that any relevant evidence is located in the Western District.

**3.    The Public Interest Factors Weigh In Favor Of This District.**

The public interest factors also weigh in favor of this District.  Most importantly, this District has a strong local interest in this dispute.  Both parties maintain offices in this District. *Supra* § II.B.  Google was founded in this District and still maintains its headquarters and largest U.S. offices here.  Friedland Decl. ¶¶ 2-3.  Google also designed and developed the accused functionality here.  *Id*. ¶¶ 5-11.  Thus, the claims in this case "call[] into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."  *In re Hoffman-La Roche*, 587 F. 3d at 1336.

The remaining public interest factors are neutral.  Both forums are equally familiar with the applicable law.  Sonos suggests that this case will proceed to trial faster in the Western District of Texas, but this case is proceeding just as fast if not faster than the Western District, since the first case management conference has already been scheduled in this case, but not in Texas.  Dkt. 26.  In any event, the Federal Circuit has determined that this factor should be given little weight as time to trial "appears to be the most speculative" of the factors in the transfer analysis. *Genentech*, 566 F.3d at 1347; *In re Adobe Inc*., 823 Fed.Appx. at 932 (holding that this factor should not be treated as dispositive since there is no evidence of an "appreciable difference in docket congestion" between the Northern District and the Western District as of July 2020).

**C.    The "Bad Faith" Exception Does Not Apply.**

Sonos also argues that the first-to-file rule should not apply because Google's case was brought in "bad faith."  Mot. at 7-9.  It was not.  Immediately after receiving Sonos's proposed complaint, Google investigated the allegations and determined that it had a legitimate Rule 11

basis to believe that it does not infringe.  *Supra* § II.A.  The accused products are, after all, the same as those at issue in *Sonos I*.  *Id.*[10]

As discussed above in connection with the anticipatory suit exception, the facts of *Diablo Technologies* are similar to this case and support denial of Sonos's bad faith argument as well. 2013 U.S. Dist. LEXIS 147593.  In *Diablo*, where the declaratory judgment plaintiff received notice of patentee's suit at 5:30 p.m. and filed the next morning, the patentee advanced the same argument that Sonos does here—namely, that the plaintiff acted in bad faith because it could not have performed a reasonable inquiry before filing its complaint.  *Id.* at *5, *17-18.  The court rejected patentee's arguments, finding that them to be an improper "motion for dismiss under FRCP Rule 11 in disguise."  *Id.* at *17-18.  In particular, and like this case, the court found that the plaintiff was not acting in bad faith since it had "submitted evidence as to why the Northern District is a convenient venue."  *Id.* at *18.

The cases Sonos cites are inapposite, finding bad faith where the plaintiff ***misled*** the defendant to secure its choice of venue.  *See Audionics Sys. v. AAMP of Fla., Inc.*, No. CV 12-10763 MMM (JEMx), 2013 U.S. Dist. LEXIS 202488, at *15-16 (C.D. Cal. Apr. 19, 2013).  In *Audionics*, the court found bad faith where the plaintiff repeatedly told the defendant it would respond to its allegations before filing seeking declaratory judgment but sought declaratory judgment anyways.  *Id.*  In *Payne v. Kennedy Johnson Gallagher LLC*, No. CV-10-297-PHX-DGC, 2010 U.S. Dist. LEXIS 50879, at *5 (D. Ariz. May 21, 2010), the court found bad faith

---

[10]   Sonos points to an October 12 email from Google's local counsel in the Western District of Texas case as support for its argument that Google's case was brought in bad faith.  In that email, when Ms. Amstutz said Google was requesting an extension to respond to the complaint because Google needed to "assemble its legal team and assess the allegations," she was referring to the fact that Google needed to assemble its ***local*** legal team in the Western District of Texas.  Ms. Amstutz's subsequent email and Google's subsequent request to the Court both confirmed as much.  Cooper Decl. Ex. 32 ("My firm, however, is also part of the legal team and is extremely new to the case, parties and issues."); Cooper Decl. Ex. 33 ("[T]his extension is necessary because Defendant recently retained Texas counsel in this matter, and Texas counsel needs additional time to be involved in the preparation of Defendant's answer or other response.").

where the plaintiff assured the defendant there would be "no litigation" but secretly filed suit in his home forum to secure venue. Unlike these cases, Google did not mislead Sonos at all.

While Google's case was not brought in bad faith, even if the Court were to determine that it was, the Court still must analyze whether Sonos's proposed forum is the appropriate forum to resolve the parties' dispute. *Audionics*, 2013 U.S. Dist. LEXIS 202488 at *20-23 (refusing to transfer case even upon a finding of bad faith because the convenience factors did not weigh heavily in favor of transfer). In this case, the answer to that question is undoubtedly this District.[11]

### D.    Google's Complaint Was Adequately Pled.

*Iqbal* and *Twombly* set forth the applicable pleading standard under Federal Rule of Civil Procedure 8. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under the *Iqbal/Twombly* standard, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specific facts are not necessary; the defendant only needs to be given "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Sonos does not seriously argue that it did not have "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Nor could it. Sonos is the one that initiated the current dispute, identifying the patents and products that Google describes in its complaint. Under similar circumstances, courts in this District have held that a party seeking

---

[11]  Sonos cites a case from the Northern District of Ohio for the proposition that "[i]t would be inherently inequitable to allow a party to race to the courthouse with an improper declaratory action, and yet retain that forum by later amending its complaint." *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 665 n.13 (N.D. Ohio 2019). The court in *J.M. Smucker* did not squarely address this issue because it dismissed the first-filed action as anticipatory. In addition, the court found that "Smucker's declaratory judgment complaint was motivated by improper forum shopping," which is not the case here. *Id.* at 665. In any event, authority from this District makes it clear that, in determining the applicability of the first-to-file rule, "the court should employ the date on which the original, rather than the amended, complaint was filed." *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (N.D. Cal. 1998).

declaratory non-infringement relief can plead less than a patent infringement plaintiff because "the accuser-defendant should typically already be on notice of the patent infringement questions posed by the lawsuit." *MIS Sciences Corp. v. Rpost Comm. Ltd.*, No. 14-cv-00376-VC, 2016 WL 2931659, at *1 (N.D. Cal. May 19, 2016); *see also Evolve Techs., LLC v. Coil Winding Specialist, Inc.*, No. 3:18-cv-00671BEN-BGS, 2019 U.S. Dist. LEXIS 52152, *4-7 (N.D. Cal. Mar. 27, 2019) (finding "general denials of infringement sufficient to sustain declaratory judgment claims for non-infringement at the pleading stage").  Courts in other districts have reached the same conclusion.  *See e.g., Rain Gutter Pros, LLC v. MGP Mfg.*, *LLC*, 55 F. Supp. 3d 1330, 1336 (W.D. Wash. 2014) (denying motion to dismiss declaratory non-infringement claims where plaintiff "identified one of its products and the claim elements from both asserted patents that it believes are missing"); *Cold Spring Granite Co. v. Matthews Int'l Corp.*, No. 10-cv-4272, 2011 WL 4549417, at *2 (D. Minn. 2011) (holding that "Plaintiff has stated a plausible claim for non-infringement [where] it has sufficiently identified and alleged the process and resultant product for which it seeks a declaratory judgment").  And considering the converse situation—whether a plaintiff's infringement claims sufficiently put defendant on notice under *Iqbal/Twombly*—the Federal Circuit held a complaint to be sufficiently pled where the plaintiff specifically identified the accused products and "alleged that the accused products meet 'each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently.'" *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

Sonos cites *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 273 (N.D. Cal. Mar. 13, 2017) for the proposition that a declaratory judgment plaintiff must "set forth factual allegations showing *how* each accused product or service specifically does not meet at least one claim limitation." Mot. at 8.  Google acknowledges *Comcast,* but notes that (1) it was decided before *Disc Disease,* and (2) there have also been recent decisions from this District going the

opposite way on the same issue. *See Evolve Techs.*, 2019 U.S. Dist. LEXIS 52152 ("Numerous

California district courts have found general denials of infringement sufficient to sustain

declaratory judgment claims for patent non-infringement at the pleading stage") *and* Cooper Decl.

Ex. 34 (non-infringement allegations found to be sufficient in *Evolve*: "CWS has not infringed,

either directly or indirectly, any valid claim of the patents-in-suit—*i.e.*, the '417 patent, the '693

patent, the '655 patent, the '629 patent, and the '042 patent"); *see MIS Sciences*, 2016 WL

2931659, at *1-2 (finding declaratory non-infringement allegations sufficient since defendant was

already familiar with its own infringement allegations) *and* Cooper Decl. Ex. 35 (non-

infringement allegations found to be sufficient in *MIS Sciences*: "MIS Sciences does not infringe

any claim of the '198 patent, directly or indirectly, contributorily or otherwise, through its or its

customer's activities in conjunction with any of MIS's products or services").

To the extent the Court is inclined to grant Sonos's motion to dismiss, it should do so

without prejudice and give Google leave to amend. *Maranon*, 2018 WL 3932490, at *2 (noting

that "Rule 15(a) is a liberal standard" such that "leave to amend 'shall be freely given when justice

so requires'"); *Aster Graphics, Inc. v. Static Control Comp., Inc.*, No. SA CV 17-1167-DOC

(JDEx), 2018 U.S. Dist. LEXIS 196131, at *20 (C.D. Cal. Feb. 12, 2018) (dismissing without

prejudice and giving plaintiff leave to amend); *Comcast*, 319 F.R.D. at 277 (same).[12]

## V.      **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court deny Sonos's

Motion To Dismiss or Transfer to the Western District of Texas.

---

[12]    Sonos cites a single case for the proposition that Google's case should be dismissed with prejudice, but *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989), was a RICO case, not a patent case, and in *Moore,* the court refused to grant the plaintiff leave to amend because its <u>third</u> amended complaint was "almost identical" to the prior amended complaint.

1    DATED:  October 26, 2020                QUINN EMANUEL URQUHART & SULLIVAN,
                                             LLP
2

3                                        By:  */s/ Charles K. Verhoeven*
                                             _____
4                                            Charles K. Verhoeven (Bar No. 170151)
                                             charlesverhoeven@quinnemanuel.com
5                                            Melissa Baily (Bar No. 237649)
                                             melissabaily@quinnemanuel.com
6                                            Jordan Jaffe (Bar No. 254886)
                                             jordanjaffe@quinnemanuel.com
                                             50 California Street, 22nd Floor
7                                            San Francisco, California 94111-4788
                                             Telephone:     (415) 875-6600
8                                            Facsimile:     (415) 875-6700

9                                            Attorneys for GOOGLE LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28