**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SONOS, INC.,<br>　　　　Plaintiff<br><br>v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant | No. 6:20-cv-881-ADA |

**DEFENDANT GOOGLE LLC'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

**Page**

NOTES ON CITATIONS ................................................................................................................ ii

I.   "MULTIMEDIA" ('206 AND '615 PATENTS) ............................................................... 1
II.  "NETWORK INTERFACE" ('206, '615, AND '885 PATENTS) ..................................... 1
III. "PLAYBACK DEVICE" ['206, '615, '033 PATENTS] / "ZONE PLAYER" ['966, '885 PATENTS] ................................................................................................................... 2
IV.  "ZONE" [ALL PATENTS] ................................................................................................ 3
V.   "ZONE CONFIGURATION" / "GROUP CONFIGURATION" ['206 PATENT] ............ 3
VI.  "ZONE SCENE" ['206 PATENT] ...................................................................................... 7
VII. "CAUSING THE SELECTABLE INDICATION OF THE AT LEAST ONE OF THE ONE OR MORE ZONE SCENES TO BE DISPLAYED" ['206 PATENT] ............. 8
VIII. "LOCAL AREA NETWORK" ['615 PATENT] ................................................................ 9
IX.  "CLOUD" ['615 AND '033 PATENTS] ........................................................................... 10
X.   "A MEDIA PARTICULAR PLAYBACK SYSTEM" ['615 PATENT] .......................... 10
XI.  "DATA NETWORK" ['966, '033, '885 PATENTS] ......................................................... 11
XII. "REMOTE PLAYBACK QUEUE" ['033 PATENT] ........................................................ 12
XIII. "AN INSTRUCTION FOR THE AT LEAST ONE GIVEN PLAYBACK DEVICE TO TAKE OVER RESPONSIBILITY FOR PLAYBACK OF THE REMOTE PLAYBACK QUEUE FROM THE COMPUTING DEVICE, WHEREIN THE INSTRUCTION CONFIGURES THE AT LEAST ONE GIVEN PLAYBACK DEVICE TO" ['033 PATENT] ........................................................................................ 13
XIV. "WHEREIN THE INSTRUCTION COMPRISES AN INSTRUCTION" ['033 PATENT] ............................................................................................................................ 15

## NOTES ON CITATIONS

| Citation | Reference |
|---|---|
| Ex. A | Ex. A is a true and correct copy of the deposition of Google's expert, Dr. Kyriakakis, on June 11, 2021. |
| Ex. B | Ex. B is a true and correct copy of the deposition of Sonos's expert Dr. Schmidt on June 25, 2021. |
| Ex. C | Ex. C is a true and correct copy of the Microsoft Academic Definition of "network interface." |
| Ex. D | Ex. D is a true and correct copy of April 19, 2021 email correspondence with the Court regarding the meet and confer requirements for claim construction. |
| Ex. E | Ex. E is a true and correct copy of the deposition of Sonos's expert Dr. Almeroth on June 22, 2021. |
| Br. | DI 60 is Sonos' Opening Claim Construction Brief (the "Br.") |
| Resp. | DI 64 is Google's Response Claim Construction Brief (the "Resp.") |
| Reply | DI 66 is Sonos' Reply Claim Construction Brief (the "Reply.") |
| '033 Pat. | '033 Pat. is Sonos's U.S. Patent No. 10,779,033. |
| '615 Pat. | '615 Pat. is Sonos's U.S. Patent No. 9,967,615. |
| '206 Pat. | '206 Pat. is Sonos's U.S. Patent No. 9,344,206. |
| '966 Pat. | '966 Pat. is Sonos's U.S. Patent No. 10,469,966. |
| '885 Pat. | '885 Pat. is Sonos's U.S. Patent No. 10,848,885. |

## TABLE OF AUTHORITIES

**Page**

**Cases**

*BookIT Oy v. Bank of America Corporation*,
2020 WL 3967842 (Fed. Cir. 2020) .................................................................................. 3

*CBT Flint Partners, LLC v. Return Path, Inc.*,
654 F.3d 1353 (Fed. Cir. 2011) ....................................................................................... 11

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) ......................................................................................... 6

*Horizon Pharma, Inc. v. Dr. Reddy's Lab'ys Inc.*,
839 F. App'x 500 (Fed. Cir. 2021) .................................................................................... 6

*In re Varma*,
816 F.3d 1352 (Fed. Cir. 2016) ....................................................................................... 14

*MyMail, Ltd. v. America Online, Inc.*,
476 F.3d 1372, 81 U.S.P.Q.2d 1832 (Fed. Cir. 2007) ....................................................... 7

*O2 Micro Int'l v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ....................................................................................... 10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) ......................................................................................... 6

*Trs. Of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016) ....................................................................................... 13

*TVnGO Ltd. (BVI) v. LG Elec., Inc.*,
Case No. 20-1837 (Fed. Cir. Jun. 28, 2021) ..................................................................... 4

**Statutory Authorities**

35 U.S.C. § 101 ....................................................................................................................... 6

I. **"MULTIMEDIA" ('206 AND '615 PATENTS)**

| Sonos Construction | Google Construction |
|---|---|
| "any type of media that comprises audio (including audio alone)" | Plain and ordinary meaning; no construction necessary at this time |

Multimedia is a well-known term in the art. Sonos does not dispute that the plain meaning of "multimedia" is evidenced from the word itself (*i.e.*, multiple media) and fails to meaningfully rebut the fact that its own expert previously agreed that "multimedia" requires "multiple media types." Resp. at 3.[1]

Repeating the same citations to the '206 and '615 patents that Sonos relied upon in its opening brief, Sonos contends that accepting the plain meaning of "multimedia" would exclude one embodiment in the specification. But Sonos is referring to an example that shows a "multimedia player" as an audio device, which is entirely consistent with the plain meaning. Sonos's recitation of the specification's statement that "music and/or other multimedia content can be shared" is ambiguous at best, and does not require the Court to depart from the plain meaning.

Finally, Sonos continues to argue that this Court should adopt the construction in the prior ITC and *D&M* cases. But it is undisputed that these cases involved different patents and different intrinsic evidence. Sonos similarly does not rebut Google's cited authority establishing that it is legal error to rely on constructions for different patents. (Reply at 1-2.)

II. **"NETWORK INTERFACE" ('206, '615, AND '885 PATENTS)**

| Sonos Construction | Google Construction |
|---|---|
| "a physical component of a device that provides an interconnection with a <u>data network</u>" | Plain and ordinary meaning; no construction necessary at this time |

---

[1] In a footnote, Sonos argues that after testifying that "multimedia" requires multiple media, its expert stated that audio or video alone can be multimedia. Reply at 1 n. 2. This is inaccurate. That portion of Dr. Almeroth's testimony states that software programs existed "to play multimedia files and stream either *audio or video* content," which only distinguishes audio from video—a fact irrelevant to the present dispute. DI 64, Ex. 10 at ¶ 15.

| | |
|---|---|
| "<u>data network</u>" means "a medium that interconnects devices, enabling them to send digital data packets to and receive digital data packets from each other" | |

In its Reply, Sonos provides no citations to intrinsic evidence supporting its construction and does not explain why plain meaning is not appropriate. Instead, it only argues that a construction from another case, with different patents, with different claim language, and with a different intrinsic record supports its construction. Sonos does not address the intrinsic record for the patents-in-suit nor the fact that the ITC specifically *rejected* as unduly narrow Sonos's contention that the interconnection is with a "network for transferring digital data packets." Resp at 5. Plain meaning is appropriate.[2]

### III.    "PLAYBACK DEVICE" ['206, '615, '033 PATENTS] / "ZONE PLAYER" ['966, '885 PATENTS]

| Sonos Construction | Google Construction |
|---|---|
| "a <u>data network</u> device configured to process and output audio" | Plain and ordinary meaning; no construction necessary at this time |

In its Reply, Sonos again provides no citations or argument from the intrinsic record for the patents-in-suit for these claim terms. Nor does it explain why plain meaning for a basic term like "playback device" is inappropriate. Sonos's Reply again relies solely on constructions of similar terms in *other patents* from *other cases*. As explained *supra*, without a showing that the intrinsic record is the same (which it is not), such arguments carry no weight.

Sonos also wrongly argues that its construction should be adopted because Google "only expressly disputes Sonos's separate construction of 'data network.'" (Reply at 2.) This is

---

[2]   While Sonos's attempt to read its improper construction of "data network" into this term is the main dispute between the parties, it is only one of multiple reasons why Sonos's construction should be rejected and plain meaning should be adopted. Reply at 2. For example, Sonos also provides no justification for restricting a "network interface" to "a physical component." Under the plain meaning, a "network interface" includes "software *or* hardware interfaces." Ex. C (Microsoft Academic Definition) (emphasis added).

incorrect. Google also disputes that the plain meaning of "playback device" is limited to "processing and outputting audio." The specification states that a "playback device . . . provides audio, *video*, *and/or audiovisual output*." '033 Pat. at 3:36-41.

## IV.     "ZONE" [ALL PATENTS][3]

| Sonos Construction | Google Construction |
|---|---|
| No separate construction necessary. | "an area or areas with one or more playback devices" |

Sonos has not substantively disputed Google's proposed construction for Zone in either its opening or reply briefs. (Br. at 7-8, Reply at 3.) This is because the patent specification explicitly defines "zone" as an area with one or more playback devices: "*Each of the audio devices may be installed or provided in one particular area* or zone and hence referred to as a zone player herein." '206. at 4:33-36; *id.* at Abstract ("each of the players is located in a zone"); 2:32-33 ("each of the players is located in a zone"). The patentee's definition of this term should be adopted. *BookIT Oy v. Bank of America Corporation*, 2020 WL 3967842, *3 (Fed. Cir. 2020).

Sonos's only argument is that because "zone" is used in conjunction with other terms, such as "zone player" and "zone configuration," that it would be "procedurally inappropriate and unhelpful to a jury" to construe it by itself. (Reply at 3.) Sonos cites no case law in support of that argument, and in fact Sonos has done precisely the same thing by asking the Court to construe "multimedia" when that term only appears as "multimedia controller" ('206 Patent) and "multimedia content" ('615 Patent). The Court should construe this unfamiliar term as the specification defines it.

## V.     "ZONE CONFIGURATION" / "GROUP CONFIGURATION" ['206 PATENT]

| Sonos Construction | Google Construction |
|---|---|
| Not indefinite | "Zone configuration" and "Group |

---

[3]  Sonos took issue with Google's proposal because it only offered it for the Zone Scenes Patents. To resolve this dispute, Google has adjusted its proposal to apply to Direct Play Patents as well.

| | |
|---|---|
| | configuration" are indefinite. |

The intrinsic record hopelessly conflates the made-up terms "zone configuration," "group configuration," and "zone scene." The specification is filled with references to "zone group configuration"—*literally* conflating the disputed terms. Even the image on the face of the patent expressly identifies the same thing as both a "zone configuration" and a "zone scene": ('206 Pat.,



Fig. 3A.) Sonos's expert declaration cited to the same thing in the specification as providing examples of a "group configuration" and a "zone configuration." (DI 66, Ex. 1 ¶¶ 64-67.) In other words, even Sonos's own expert charged with rebutting indefiniteness confused the specification's description of these two terms.[4] He similarly was unable to identify any examples of either a "zone configuration" or a "group configuration" during his deposition. (Ex. E. at 61:2-24.) *See TVnGO Ltd. (BVI) v. LG Elec., Inc.*, Case No. 20-1837 (Fed. Cir. Jun. 28, 2021) (finding "intra-patent" inconsistencies rendered patent claims indefinite).

Contrary to Sonos's suggestion, the claim language only exacerbates this confusion. It states that the "zone configuration characterizes one or more zone scenes" and "each zone scene identifying a group configuration…" This self-referential claim language does not help a person of ordinary skill understand and differentiate these terms because it is circular. Tellingly, Sonos's expert was unable to provide any examples of how a "zone configuration" could "characterize" a "zone scene" or how a "zone scene" could "identify" a "group configuration." (Ex. E at 50:24-

---

[4] When confronted by this fact, Sonos's expert attempted to say at his deposition that the citation was a "typo," but it is clear from reading the declaration that this is not the case. The expert's declaration cited the discussion of "zone group configuration" in the specification as support for his statement that "[i]n the context of this claim language and the relevant disclosure in the specification, *a POSITA would understand 'group configuration . . . ' to refer to* . . . ." (Ex. E at 112:10-113:15; DI 66, Ex. 1, ¶64.)

59:11.)

Sonos describes at length the alleged motivation behind the "zone scene" patents on pages 3-5 of its Reply, but that discussion is largely irrelevant to the issues presented.[5] The key issue is the inability to differentiate between "group configuration," "zone configuration" and "zone scene." While spending pages on other issues, Sonos's Reply is largely silent on this point. Sonos's specific arguments for each of these terms are addressed below.

Zone Configuration

Without any meaningful distinction found in the intrinsic record, Sonos is left to argue that "zone scene" and "zone configuration" refer to the same underlying information, but that "zone configuration" refers to the "data" and "zone scene" refers to the "perspective of a user" of that same data. (Reply at 5-6.) This distinction is incorrect based on the intrinsic record and does not save the claims from indefiniteness even if credited.

*First*, Sonos cites to nothing in the specification to support its view that "zone scenes" are merely a "user perspective"—nor could it. The specification explicitly describes "saving" a zone scene, and therefore it is clearly not a "user perspective" and is instead "data," just like Sonos's construction of zone configuration. *E.g.*, '206 Pat. at Cl. 7 ("a command to save at least one of the one or more zone scenes"). While Sonos argues that "zone configuration" must refer to the data version of a zone scene because the specification references "zone configuration files," the claims never use the phrase "zone configuration files." Sonos's arguments regarding "zone configuration files" are therefore irrelevant to the actual term at issue. Indeed, by choosing to disclose zone

---

[5] For example, Sonos repeatedly cites to the '206 Patent at 8:7-36, but Sonos ignores the critical portion of that part of the specification, which defines the claimed "zone scene" and describes it as the solution to the "inefficient" and "time consuming" system known in the art. Reply at 3; '206 Pat. at 8:24-28.

configuration *files*, but claim a zone configuration, and the patentee distinguished these terms and the presumption is that zone configuration files are ***not*** claimed. *See Horizon Pharma, Inc. v. Dr. Reddy's Lab'ys Inc.*, 839 F. App'x 500, 504 (Fed. Cir. 2021) ("use of both the terms 'target' and 'produce' at different points in the specification does not mean that these words have the same meaning. . . . this suggests that the patent applicants were aware of their separate meanings").

***Second***, even assuming there were intrinsic record support for such a construction (there is not), Sonos cites no support for its novel argument that one claim term may be the "perspective of the user" of another claim term. Even if it were legally tenable, the claims are directed to a device (a "multimedia controller"), not the feelings of a user. Further, attempting to claim a feeling inspired by data is itself a classic example of indefiniteness. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005) (finding the term "aesthetically pleasing" indefinite).[6]

Group Configuration

For "group configuration," Sonos's construction again overlaps entirely with the term "zone scene." Sonos contends that a "group configuration" is a "grouping" of speakers, while a "zone scene" is a "special kind of group configuration." (Reply at 4-5.) The ambiguity and recursive nature of Sonos's construction is self-evident.

Sonos's purported distinctions regarding why a "zone scene" is a "special" group configuration provide no help. While a "zone scene" is a predefined grouping according to Sonos, Sonos never states that a "group configuration" cannot be "predefined" or that it is not "saved," making these distinctions illusory. At bottom, Sonos contends that "group configuration" and

---

[6] Attempting to claim these mental processes also runs headlong into invalidity under 35 U.S.C. § 101. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016) ("analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, [are] essentially mental processes within the abstract-idea category").

"zone scene" are the same thing. As with "zone configuration," the lack of an understandable difference between "group configuration" and "zone scene" *under Sonos's own construction* demands a finding of indefiniteness.

## VI.   "ZONE SCENE" ['206 PATENT]

| Sonos Construction | Google Construction |
|---|---|
| No separate construction necessary.[7] | "a group of two or more zones that are grouped according to a common theme by configuring the zones in a particular scene (e.g., morning, afternoon or garden)" |

The parties agree that "zone scene" is a coined term and has no plain and ordinary meaning. As a result, the term must be defined by the disclosure in the specification. *MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1376, 81 U.S.P.Q.2d 1832, 1835 (Fed. Cir. 2007) ("Both parties agree that the term NSP is a coined term, without a meaning apart from the patent. . . . We therefore look to the specification to determine what the NSP must do . . . .").

Here, the specification defines "zone scene" as a "particular scene (e.g., morning, afternoon, or garden), where a predefined Zone grouping and setting of attributes for the grouping are automatically effectuated." '206 Pat. at 8:24-28. Google's proposed construction directly tracks this definitional language. By contrast, Sonos's proposal is inconsistent with this definition. It fails to include the critical "scene" (like "morning, afternoon, or garden"), or the "attributes" of the group that must accompany the zone scene. Sonos's proposal also adds elements that are *not* required by the definition in the specification, such as "synchronous playback" (which is required

---

[7] Sonos's Reply discusses at length its "construction" for "zone scenes." (Reply at 7 ("Sonos's construction faithfully captures . . .").) Yet, **Sonos never proposed a construction for this term in its claim construction disclosures, or during the parties' meet and confer discussions, or in its opening brief**. This is all the more incredible given that Sonos now agrees that "zone scene" is a coined term, which would necessarily require a construction. Any proposed construction by Sonos for this term comes far too late, violates this Court's disclosure rules, and has deeply prejudiced Google. (Ex. D; Order Governing Proceedings – Patent Cases 062421).)

for some claims and not others) and that the zone scene must be "previously saved."

Sonos makes two arguments in its Reply. (Reply at 7.) First, Sonos argues that Google's construction doesn't make sense because "theme" means the same thing as "zone scene" in the patents. (*Id*.) Not so. As the specification explains, "theme" may be a synonym for "scene"—not a "zone scene." '206 Pat. at Abstract. ("a mechanism is provided to allow a user to group some of the players *according to a theme or scene* . . ." (emphasis added)). Therefore, there is no reason to insert the definition of "zone scene" wherever the word theme appears. Second, Sonos takes issue with Google describing its construction in its briefing by using the term "thematic information" because that term does not appear in the specification. (Reply at 7.) This attacks a straw man. Google only used that phrase to *explain* its construction in its brief. "Thematic information" is not in Google's proposed construction. Sonos's complaint about Google including "morning, afternoon, or garden" in its construction even though those are the non-limiting examples used in the specification is similarly meritless because Google's construction explicitly states that those are non-limiting examples by prefacing them with "e.g." (Resp. at 12.)

### VII. "CAUSING THE SELECTABLE INDICATION OF THE AT LEAST ONE OF THE ONE OR MORE ZONE SCENES TO BE DISPLAYED" ['206 PATENT]

| Sonos Construction | Google Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary at this time | Indefinite |

Underscoring the ambiguity and indefiniteness of this term, Sonos has now proposed two completely different arguments for why claim 19 of the '206 Patent is not indefinite. First, Sonos argued in its opening brief that "there is no reasonable debate that claim 19 was meant to depend from claim 18" because the term "of the at least one of the one or more zone scenes to be displayed" found antecedent basis in claim 18, but not claim 17. (Br. at 18.) Google pointed out in its response that this could not address the antecedent basis issue, which stemmed from the fact that neither

claim 17 ***nor*** claim 18 included antecedent basis for the term "wherein causing the selectable indication of the at least one of the one or more zone scenes to be displayed." (Resp. at 18.) Sonos now argues that somehow the term "causing an indication . . ." in claim 18 provides antecedent basis for "causing the <u>selectable</u> indication" in claim 19 due to a link between claims 17 and 18. (Reply at 8.) This (unclear) argument fails because claim 17 is describing a <u>selectable</u> indication of the <u>zone configuration</u> and claim 18 is describing a (non-selectable) indication of <u>zone scenes</u>. Neither provides antecedent basis for claim 19's <u>selectable</u> indication of <u>zone scenes</u>. Sonos's various convoluted attempts to link these claims highlights the lack of a reasonable certainty about the scope of claim 19, rendering it indefinite.

## VIII. "LOCAL AREA NETWORK" ['615 PATENT]

| Sonos Construction | Google Construction |
|---|---|
| "<u>data network</u> that interconnects devices within a limited area, such as a home or office" | Plain and ordinary meaning; no construction necessary at this time |

Both parties agree LAN has a "well-known meaning" in the field. (Reply at 9.) As with its other proposed terms, Sonos does not cite any intrinsic evidence in its Reply justifying a departure from plain meaning, as Google has proposed. And the ITC also previously rejected Sonos's construction of LAN as inconsistent with the plain meaning. Resp. at 19.

Rather than address the intrinsic record, Sonos relies exclusively on extrinsic evidence, citing primarily to a Wikipedia article from 2021—***10 years*** after the priority date of the '615 Patent. The article states that a "LAN" refers to "a limited area computer network, which has the characteristics of a 'data network.'" (Reply at 9.) Sonos' construction of "data network," however, artificially restricts the network to a bi-directional, packetized network. The article does not purport to define all types of LANs, let alone state that they must be bidirectional, packetized networks. As Google's expert explained, a LAN can connect devices other than computers (*e.g.*,

"mixing consoles," "loud-speakers," "microphone preamplifier," and "printers"), can connect devices using analog or digital protocols, and does not need to transfer data packets. Ex. A at 48:25-51:1.[8]  Sonos's 2021 Wikipedia article is irrelevant and fails to justify restricting a LAN to digital data packets or bidirectional networks.

## IX. "CLOUD" ['615 AND '033 PATENTS]

| Sonos Construction | Google Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary at this time | "over a network" |

Google's proposed construction has not changed.  It is "over a network."  The phrase Sonos claims will likely cause jury confusion—"over a wide-area network such as the Internet"—is one *Sonos* used in its own opening brief.  Br. at 27.  Google attempted to compromise on this term by suggesting it would agree to Sonos's own phrasing of what "cloud" means, but Sonos apparently now contends its own description of this term would cause jury confusion.  Accordingly, an express construction is required because the term "cloud" is subject to more than one ordinary meaning and there is an "actual dispute regarding the proper scope of the claims." *See O2 Micro Int'l v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008).

## X. "A MEDIA PARTICULAR PLAYBACK SYSTEM" ['615 PATENT]

| Sonos Construction | Google Construction |
|---|---|
| "a media playback system" | Indefinite |

The Court cannot correct what Sonos admits is an "error" because any correction would be subject to reasonable debate based on claim language and the specification.  As Google explained, there are multiple different interpretations, each of which is reasonable.  (Resp. at 21-23.)

---

[8]  Sonos mischaracterizes the testimony of Google's expert.  Reply at 9.  Dr. Kyriakakis did not testify that "two cups connected by a short string constitutes a 'LAN.'" *Id*.  Rather, when asked whether communicating over "two cups on a string" was a "data network," Dr. Kyriakakis explained that Sonos's counsel had created "***an extreme example***," but that in certain circumstances the voice carried over the string may be considered data.  Ex. A at 60:18-61:2.

Sonos relies on a single case in its Reply, *CBT Flint Partners*. *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1359 (Fed. Cir. 2011). But *CBT Flint Partners* found the claim was not indefinite because a POSITA would have found the claim to have the same scope and meaning under ***each of the three possible meanings***. *Id.* Sonos is making a very different argument here, which is that its proposed construction and the correction the Court should enter have the same meaning—*not* that all the possible meanings are the same. (Reply at 10.) Even if Sonos meant to argue that each of the possible meanings of "media particular playback system" – including at least "playback system for particular media," "media playback system" or "multimedia playback system" are all equivalent, doing so would improperly equate multimedia and media and ignore the existence of the other playback systems that Google identified.

Whether or not the claims include a "typographical error" as Sonos argues, the error does *not* have only one reasonable correction. A POSITA could understand "media particular" as intended to differentiate from "multimedia," *i.e.* a playback system specific to a particular type of media – such as audio. *See e.g.* Ex. B at 102:7-9. A POSITA could also understand "media particular playback system" as a subset of "playback systems." Because the term could be understood a number of different ways, it is indefinite.

## XI. "DATA NETWORK" ['966, '033, '885 PATENTS]

| Sonos Construction | Google Construction |
|---|---|
| "a medium that interconnects devices, enabling them to send digital data packets to and receive digital data packets from each other" | Plain and ordinary meaning; no construction necessary at this time |

Sonos admits "data network" is a "well-known term of art." (Reply at 10.) As Google demonstrated in its Response, nothing in the intrinsic record redefines the term here. And the ITC already rejected Sonos's construction as inconsistent with the plain meaning of "data network." The term should maintain its plain and ordinary meaning.

Sonos's Reply does not dispute that its construction would exclude networks that do not transmit digital data packets, for example analog circuit-switched networks, telephone networks, and cellular networks. Resp. at 23. Google also demonstrated that Sonos's construction improperly excludes unidirectional networks, such as data diode networks, broadcast networks, and multicast networks. *Id*. Sonos now argues that these networks are not "data networks." (Reply at 11, 12 n. 17.) But data can analog *or* digital, as Sonos's expert admitted. (Ex. E. 178:8:23.) And Sonos's construction improperly excludes these data networks. Indeed, Google presented substantial evidence confirming that non-packetized and unidirectional networks are "data networks." *See, e.g.*, DI 64 Ex. 12, ¶¶62-67; *see also id*. at Ex. E, ¶¶27-28 (patent describing "analog data networks," such as "analog cellular service"). Because Sonos's construction seeks to redefine the term "data network" to exclude networks that transmit data, it should be rejected.

Sonos also argues that the term "data network" should exclude "conventional" speaker systems because allegedly the "patents distinguished and improved upon" these prior systems. Resp. at 12. But nothing in the patents disclaims or disavows the use of analog data networks or audio systems, and even Sonos's own products at the time included support for analog networks. Indeed, in concluding that Sonos's interpretation of "data network" was inconsistent with the plain meaning of the term, the ITC considered and rejected a similar disclaimer argument by Sonos. DI 60, Ex. 7 at 16. Like the ITC, this Court should adopt the plain meaning and reject Sonos's attempt to improperly narrow this well-known term.[9]

## XII. "REMOTE PLAYBACK QUEUE" ['033 PATENT]

| Sonos Construction | Google Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary at this time | "remote playback queue provided by a third party application" |

---

[9] Sonos mischaracterizes Google's expert's testimony regarding data networks. *Supra* n. 8.

Where the specification repeatedly and uniformly describes a term in a certain fashion, the claims should be limited to what is actually disclosed.  Resp. at 26.  That is exactly the case here.  Sonos did not identify any examples of an alleged "remote playback queue" in the patent that do not use a third party application because there are none.

Sonos attempts to avoid the issue by distinguishing the case law that Google cited, but those cases are the *same* cases that Sonos cited in its opening brief with respect to "playback device" and "zone player."  For example, Sonos previously cited to *Groove Digital* for the proposition that "[A] patent's repeated and consistent description of a claim term may inform its construction" and cited to *ICU Med* as holding that "constructing a term to include certain features because the specification 'repeatedly and uniformly' described the term to include such features."  Br. at 6, n.7.  In other words, Google relied on these cases for exactly the same propositions that Sonos cited them for in its opening brief.  The Court can readily disregard Sonos's new and inconsistent positions concerning its own cited cases.

Sonos also argues there is no "clear disclaimer of a remote playback queue that is provided by something other than a third-party application."  (Reply at 13.)  But the Federal Circuit held that "[A] patent applicant need not expressly state 'my invention does not include X' to indicate his exclusion of X from the scope of his patent."  *Trs. Of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363-1364 (Fed. Cir. 2016).  The specification here contains no discussion of a "remote playback queue" at all.[10]  The only queue that is possibly disclosed is one from a third party application, as provided by Google's construction.

### XIII. "AN INSTRUCTION FOR THE AT LEAST ONE GIVEN PLAYBACK DEVICE TO TAKE OVER RESPONSIBILITY FOR PLAYBACK OF THE REMOTE PLAYBACK QUEUE FROM THE COMPUTING DEVICE, WHEREIN THE INSTRUCTION CONFIGURES THE AT LEAST ONE GIVEN PLAYBACK

---

[10]  For this reason, as previously stated, Google contends the term lacks written description.

**DEVICE TO" ['033 PATENT]**

| Sonos Construction | Google Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary at this time | "an instruction for the at least one given playback device…"; Instruction means one instruction. |

Sonos's Reply brief does not dispute (or even mention) the applicability of *In re Varma*, 816 F.3d 1352 (Fed. Cir. 2016). *Compare* Resp. at 28-29 (discussing *Varma* being "directly on point") *with* Reply at 14-15 (*Varma* unmentioned). It is therefore undisputed that under *Varma* "the instruction" claimed in the '033 patent must be one instruction. This resolves the sole dispute presented under Google's proposed construction.

While not addressing this central issue, Sonos's Reply makes two arguments, neither of which affects the analysis. First, it argues that sub-steps (i) through (iii) in the claim are "functions" of the "playback device," and not part of "the instruction." This ignores the claim language Sonos itself quoted: "***wherein the instruction*** configures the at least one given playback device to (i)… (ii) … and (iii)…" (Reply at 14.) The singular "instruction" thus must configure the "playback device" to perform all these functions. This is the plain meaning of the claim language, which is Google's proposal. Sonos notably proposes no alternate construction. Second, Sonos discusses the prosecution history. But Sonos never addresses the portion of the prosecution history quoted by Google, where Sonos distinguished the *Gran* reference because it required "continuously direct[ing] the media rendering device" by sending multiple messages, as compared to the claim language which discuss transmitting a single "instruction." DI 64, Ex. 17. Nor does Sonos address that *Gran* did not "transmit ***such an instruction*** that configures the media rendering device to [perform all three sub-steps]. DI 64, Ex. 17 (emphasis added). Having distinguished a prior art reference that uses multiple messages, Sonos cannot now claim that its single instruction can comprise multiple messages. Sonos does not address this issue in its Reply.

## XIV. "WHEREIN THE INSTRUCTION COMPRISES AN INSTRUCTION" ['033 PATENT]

| Sonos Construction | Google Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary at this time | Indefinite |

The logical inconsistency created by the claim language remains: A singular instruction cannot "contain" or "include" another singular instruction.  Sonos's Reply fails to address this key issue, which renders the claim indefinite.  Instead, Sonos argues that the claim language "follows a common claim-drafting technique that Google routinely uses." (Reply at 15.)  Not so. Sonos did not identify a single Google patent or claim that included "the instruction comprising an instruction" or any analogous language.

Next, Sonos argues the claim "simply provides more specificity for a previously-recited limitation using the word 'comprises.'" (Reply at 15.)  As Google already explained, that is not what is claimed.  The claim language requires that "*the* instruction" comprise "an instruction." How a single instruction can contain another single instruction is never explained by Sonos or the patent.  Sonos's cited expert testimony is of no help either because the expert simply *assumes* Sonos's reading of the claim language.  (Reply, Ex. 27 at ¶ 102.) Dr. Schmidt readily admitted he did not analyze whether a singular instruction can contain another instruction.  Ex. B at 113:12-114:22, 124:25-125:8, 140:24-141:5. Dr. Kyriakakis's testimony explaining how a singular instruction cannot contain a singular instruction is thus unrebutted.[11]   Based on the actual claim language—not how Sonos wishes it drafted it—the claim language is indefinite.

---

[11]  Sonos's quibbles with Dr. Kyriakakis's definition of a person of ordinary skill, but its complaint generally repeats its own construction for "data network."  *See* DI 66, Ex. 27 at para. 20 (criticizing the level of ordinary skill applied by Dr. Kyriakakis because he "expresses extremely broad views of what is encompassed by the terms 'data' and 'network' in the abstract…").

DATED: June 29, 2021          Respectfully submitted,

By    */s/ Charles K. Verhoeven*

*Counsel for Defendant*
*Google LLC, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 29, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

/s/ Charles K. Verhoeven
Charles K. Verhoeven