# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 6:20-cv-00881-ADA<br><br>JURY TRIAL DEMANDED<br><br>**PUBLIC REDACTED VERSION** |

## GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

# **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | The Court Should Transfer Based On The Parties' Forum Selection Clause. | 1 |
| | A. Sonos Put The Parties' Collaboration At Issue. | 1 |
| | B. Sonos's Infringement Allegations Implicate The Technology The Parties Developed During Their Collaboration. | 2 |
| | C. A Substantial Nexus Exists Between The CIA, The Collaboration, And This Case. | 3 |
| II. | In The Alternative, The Court Should Transfer For The Convenience Of Parties And Witnesses. | 5 |
| | A. The Private Interest Factors Favors Transfer. | 5 |
| | B. The Public Interest Factors Weigh In Favor Of Transfer. | 8 |

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*10Tales, Inc. v. TikTok Inc.*,
  No. 20-810, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ...................................................... 7

*Bright Response v. Google*,
  No. 2:07-CV-371 (E.D. Tex.) ................................................................................................... 7

*Cioffi v. Google*,
  No. 13-cv-103 (E.D. Tex.) ........................................................................................................ 7

*ContentGuard Holdings, Inc. v. Google*,
  No. 14-cv-61 (E.D. Tex.) .......................................................................................................... 7

*Correct Transmission LLC v. ADTRAN, Inc.*,
  No. 20-669, Dkt. 59 (W.D. Tex. May 17, 2021) ....................................................................... 8

*Eolas Tech. Inc. v. Adobe Sys., Inc.*
  No. 09-cv-446 (E.D. Tex.) ........................................................................................................ 7

*EVS Codec Tech., LLC v. LG Elec., Inc.*,
  No. 18-343, 2019 WL 2904747 (E.D. Tex. Jul. 5, 2019) ...................................................... 4, 5

*In re Apple*,
  979 F.3d 1332 (Fed. Cir. 2020) ................................................................................................. 8

*In re HP Inc.*,
  No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................................... 7

*In re Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ................................................................................................. 8

*In re TracFone Wireless, Inc.*,
  No. 2021-136, 2021 WL 1546036 (Fed. Cir. Apr. 20, 2021) .................................................... 6

*In re Volkswagen*,
  545 F.3d 304 (5th Cir. 2008) ..................................................................................................... 8

*Invensas Corp. v. Samsung, Elecs. Co.*,
  No. 17-670, 2018 WL 3862060 (E.D. Tex. Aug. 14, 2018) ...................................................... 4

*Maxell Ltd. v. Apple Inc.*,
  No. 5:19-cv-00036, Dkt. 191 (E.D. Tex. Jan. 22, 2020) ........................................................... 5

*Quicksilver, Inc. v. Acad. Corp.*,
    No. 98-1772, 1998 WL 874929 (N.D. Tex. Dec. 3, 1998) .................................................... 5, 6

*Rosenthal v. Blue Diamond Growers, Inc.*,
    No. 03-424, 2003 WL 22736550 (W.D. Tex. Nov. 12, 2003) .................................................. 5

*SimpleAir, Inc. v. Google*,
    No. 14-cv-11 (E.D. Tex.) ........................................................................................................ 7

Sonos does not dispute that the parties collaborated on the functionality it accuses of infringing two patents-in-suit. The only issue Sonos disputes is whether Google has established that there is a "non-frivolous" nexus between the agreements that covered the parties' collaboration—███████████████████████████████████████—and this case. Google has demonstrated such a nexus. Sonos itself put the parties' collaboration, and thus the 2013 Content Integration Agreement ("CIA"), at issue in its Complaint. In addition, several of Google's defenses require interpretation and application of the CIA. Sonos suggests that the CIA does not apply because its patents predate the CIA or because ████████ ████████████████████████████ But Google's position is not ████████ ████████ Rather, ████████████ in the CIA—and other Sonos conduct—led Google to infer that (1) Google, not Sonos, ████████████████████████████████ ████████████████, and (2) Sonos either did not have any intellectual property rights covering the jointly-developed technology, or did not intend to enforce them.

If the nexus between the CIA and this case is "non-frivolous," the case should be transferred unless there are "extraordinary circumstances *unrelated to the convenience of the parties*." Sonos does not contend that there are any such circumstances, and there are none. In the alternative, Google moves to transfer because NDCA is a more convenient forum for this case.

I. **The Court Should Transfer Based On The Parties' Forum Selection Clause.**

    A. *Sonos Put The Parties' Collaboration At Issue.*

Sonos put the collaboration at issue in its Complaint by accusing Google of collaborating with Sonos to "gain[] access to Sonos's engineers, products, and technology" so that it could copy Sonos's technology and infringe its patents. Dkt. 51 ¶¶ 11-14. Sonos has leaned into these allegations, citing them in opposition to Google's motion to dismiss Sonos's willful infringement allegations. *See* Dkt. 56 at 11 (urging Court to infer that Google acted egregiously based on

1

allegations that the parties "worked together to integrate Google's products into the Sonos ecosystem"). Because *Sonos* put the collaboration at issue, Sonos should not be permitted to argue that the agreements governing the collaboration are unrelated to this case.

    **B.**    ***Sonos's Infringement Allegations Implicate The Technology The Parties Developed During Their Collaboration.***

Sonos refers to the asserted '615 and '033 patents as the "*cloud queue*" patents. Ex. 1 at 17:3-8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2), ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (Ex. 3), and ▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4-5). ▮▮▮▮▮▮▮▮▮▮▮ (Ex. 6-8) ▮▮▮▮▮▮▮▮ (Ex. 6-7), ▮▮▮▮▮▮▮▮ (Ex. 9-10)—▮▮▮▮▮▮▮▮▮▮ (Ex. 11-12).

Sonos's allegations directly implicate the parties' work on cloud queue, as illustrated by the following comparison between the parties' 2015 announcement and Sonos's Complaint:



*See also* Dkt. 1 at 43 (alleging that Google Play Music's "cloud server" provides a "remote playback queue"). The cloud queue functionality that Sonos accuses of infringement ███████ ███████████████████████████████████████████ Ex. 19 at 21.[1]

### C. A Substantial Nexus Exists Between The CIA, The Collaboration, And This Case.

Sonos argues that Google has not demonstrated a "non-frivolous" nexus between the CIA and this case. Resp. 7. But Sonos *itself* created that nexus when it accused Google of using the collaboration to "gain[] access to" and "copy[]" Sonos's technology. Dkt. 51 ¶¶ 11-15, 77, 89.

Sonos has not offered any theory as to what the CIA covers ████████████ ██████████████████████████████████████████████████.[2] Nor could it. ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ Declaration of Umesh Patil ¶¶ 3, 4. ████████████████████████████████ ██████████████████████████████████ *See* Ex. 13 at -26 ████████ █████████████████████████████████); Dkt. 35-4 (CIA). The initial term of the CIA ███████████—the length of time it took the parties to develop the now-accused functionality. Further, as part of the CIA ████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████ (Dkt. 35-4 § 3.3), which was a topic of discussion throughout the collaboration (Ex. 8, 14-16), and appears to be implicated by Sonos's infringement allegations. *See* Dkt. 51.

Sonos insists that the CIA does not apply because the '615 and '033 patents "claim priority

---

[1] Sonos complains that Google has not provided any "analysis" for this statement. Resp. 6. It is unclear what "analysis" Sonos contends is missing, and Sonos never followed up on this issue during venue discovery.

[2] Sonos refused to provide information regarding the applicability of the CIA (Ex. 17), and the Court denied Google's motion to compel this information. Dkt. 80-1.

before the CIA." Resp. 2. But even if that were true,[3] the salient point is that Sonos never informed Google of its intellectual property rights at any point during the collaboration. Instead, Sonos facilitated Google's development of the accused functionality while remaining silent about its purported rights—actions which give rise to Google's equitable defenses. Dkt. 33-1 ¶¶ 5-22.

Sonos also insists that the CIA does not support Google's defenses because "[t]he CIA grants ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Resp. 4. This argument misses the point as well. None of Google's defenses depends on the existence of an express license to Sonos's patents, which alone distinguishes *Invensas Corp. v. Samsung, Elecs. Co.*, No. 17-670, 2018 WL 3862060 (E.D. Tex. Aug. 14, 2018).[4] Google's unclean hands, estoppel, waiver and implied license defenses are equitable, and turn on Sonos's awareness of the technology that Google was developing, Sonos's encouragement of Google's efforts, and most importantly, Sonos's agreement as part of the CIA that *Google*—not Sonos—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 33-1 ¶¶ 5-22; Dkt. 35-4 § 3.4. For these defenses, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of the CIA are ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Sonos contends that the CIA "has no nexus to this lawsuit." Resp. 5. The only nexus Google needs to establish is a "non-frivolous" one, which exists given Sonos's allegations and Google's defenses. *See EVS Codec Tech., LLC v. LG Elec., Inc.*, No. 18-343, 2019 WL 2904747

---

[3] Although the '615 and '033 patents claim priority to December 2011, Sonos did not introduce the notion of a remote or cloud-based queue into its patents until ***seven years after the alleged priority date,*** in 2019. Ex. 18 (2019 amendment adding "remote playback queue").

[4] *Id.* at *2 (dismissing argument that defendant had a license to the accused products because defendant did not establish that the accused products were covered by the license).

(E.D. Tex. Jul. 5, 2019).[5]  Once Google has established a non-frivolous nexus, the burden shifts to *Sonos* to prove that "extraordinary circumstances unrelated to the convenience of the parties" disfavor transfer.  *Id.*  Sonos does not contend that there are such circumstances, and there are none.  The public interest factors are all either neutral or weigh in favor of transfer (*infra* § II.B).

## II.   In The Alternative, The Court Should Transfer For Convenience.

### A.   *The Private Interest Factors Favors Transfer.*

The parties agreed that California is a convenient forum at least six times.  Mot. 2, n. 2.[6]

**Google Witnesses**.  Google has specifically identified 12 Bay Area-based witnesses who are likely to testify in this case (Dkt. 35-2 ¶¶ 5a-6b), and Sonos does not dispute that these witnesses are relevant.  Indeed, eight of them were deposed in the parties' pending ITC case involving the same products and related patents.  Supplemental Declaration of James Judah ("Supp. Judah Decl.") ¶ 3.  By contrast, Google is not aware of any likely witnesses in WDTX whose roles relate to the accused functionalities.  Ex. 20 at 7.

Sonos speculates that there are "**hundreds** of relevant Google witnesses" in WDTX.  Resp. 9.  Sonos is apparently referring to the "hundreds" of Google employees that work on Google Cloud Platform ("GCP") products, but GCP is not an accused product and Sonos has failed to identify a single one as being likely to testify in this case.[7]  *See Quicksilver, Inc. v. Acad. Corp.*,

---

[5]  Sonos cites *Maxell Ltd. v. Apple Inc.*, No. 5:19-cv-00036, Dkt. 191 at 5 (E.D. Tex. Jan. 22, 2020) for the proposition that "non-frivolous means that '[t]he outcome of that dispute will determine whether the patentee can sustain its suit for infringement.'" That standard is met here. If Google prevails on its CIA defenses, Sonos's claims for the '615 and '033 patents fail.

[6]  Sonos contends that "Google also has conceded that this District is convenient in at least 16 other cases." Resp. 3. But a party's decision not to challenge venue does not act as a waiver for all future cases, particularly given that transfer motions are based on "an individualized, case-by-case consideration of convenience and fairness.'" *Rosenthal v. Blue Diamond Growers, Inc.*, No. 03-424, 2003 WL 22736550, at *2 (W.D. Tex. Nov. 12, 2003).

[7]  Neither Sonos's complaint nor its original infringement contentions mention GCP. Dkt. 51; Ex. 21. One day before the close of venue discovery, Sonos served amended infringement contentions that now recite the words "Google Cloud Platform." Ex. 22. But GCP is still not an accused

No. 98-1772, 1998 WL 874929, at *3 (N.D. Tex. Dec. 3, 1998) (transferring case where plaintiff suggested there "may be" witnesses in NDTX but did not identify any specific witnesses).

Sonos also points to six WDTX-based employees whose roles relate to sales and customer support for the accused products. Resp. 11. These witnesses' roles relate to the accused *products*, which have many different non-infringing uses, not the accused *functionality*. Ex. 20 at 7. Sonos does not contend that these witnesses are likely to testify in this case. If Sonos seeks testimony on Google's sales or customer support for the accused products, Sonos will likely seek testimony from a corporate representative as it did in the parties' prior case. Supp. Judah Decl. ¶ 4. In that case, Google's corporate representatives on these topics were based in NDCA. *Id.*

Sonos points to eight out-of-state Google employees. Resp. 12. Sonos does not attempt to explain how these individuals are relevant. In any event, none of these individuals is based in Texas and they will all need to travel regardless of where trial is held. *In re TracFone Wireless, Inc.*, No. 2021-136, 2021 WL 1546036, at *3 (Fed. Cir. Apr. 20, 2021) (out-of-state witnesses who live closer to WDTX than transferee forum do not weigh heavily against transfer).

***Sonos Witnesses.*** Sonos has never identified any Sonos witnesses in this District. Most of the relevant Sonos employees are in Santa Barbara, CA where Sonos is headquartered. Mot. 2.

***Third Parties.*** Google has identified eight third parties[8] within the subpoena power of NDCA but not this District. Mot. 3. Sonos asks the Court to ignore these witnesses because "prior art witnesses are generally unlikely to testify at trial." Resp. 10.[9] But Google routinely calls prior

---

product and Sonos does not contend otherwise. Sonos argues that GCP is relevant because it ***services and supports*** the accused products, not because it is an accused product itself. Resp. 2.

[8] Google initially identified ten third parties. Mot. 3. Since Sonos dropped the '460 patent, two are no longer relevant.

[9] Although Sonos contends the prior artists identified by Google in NDCA are irrelevant, Sonos itself points to ▇▇▇▇▇▇▇ as a WDTX-based witness given his work on one of Google's prior art systems. Resp. 9-10. First, ▇▇▇▇▇▇ is not a "third-party," as Sonos contends. *Id.* at 9. He is a

6

artists as witnesses at trial and has done so in at least five prior patent cases.[10]  Sonos also asks the Court to ignore NDCA-based third parties because Sonos speculates that "none of those witnesses are *unwilling* to attend trial in this District."  Resp. 9.  The Federal Circuit has rejected this argument.  *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3, n.1 (Fed. Cir. Sept. 25, 2018) (if there is "no indication that a non-party witness is willing, the witness is *presumed to be unwilling*").  And this Court has rejected Sonos's suggestion that videotaped depositions sufficiently substitutes live testimony.  *10Tales, Inc. v. TikTok Inc.*, No. 20-810, 2021 WL 2043978, at *3 (W.D. Tex. May 21, 2021).

Sonos points to component suppliers and YouTuber "Willie D." as potential third-party witnesses based in this District (Resp. 9), but does not argue they are likely to testify in this case.[11]  It is unlikely Sonos would waste trial time calling third-party suppliers to establish that the accused products satisfy "processor" or "computer-readable medium" claim limitations.  And while Google cited a video uploaded by "Willie D." as supporting the public availability of the Nexus Q in its invalidity contentions, Nexus Q is a *Google* product.  If Google needs trial testimony on this issue, Google will call its own employees—not an anonymous YouTuber.

***Access to Evidence.***  Sonos points to electronic documents that may be stored at a Google data center in Midlothian, Texas.  Resp. 8.  But the physical location of electronically-stored documents does not weigh against transfer, particularly given—as Sonos itself admits—the documents are "equally accessible in either district."  Resp. 8.

---

current employee and thus within Google's control.  And if Google seeks trial testimony about this system, Google is likely to call a NDCA-based manager who led ▆▆▆▆▆▆▆ team.

[10]  *SimpleAir, Inc. v. Google*, No. 14-cv-11 (E.D. Tex.); *Eolas Tech. Inc. v. Adobe Sys., Inc*. No. 09-cv-446 (E.D. Tex.); *ContentGuard Holdings, Inc. v. Google*, No. 14-cv-61 (E.D. Tex.); *Cioffi v. Google*, No. 13-cv-103 (E.D. Tex.); *Bright Response v. Google*, No. 2:07-CV-371 (E.D. Tex.).

[11]  Sonos also speculates that Andrew Greene has "relevant information concerning the integration of third-party applications, Spotify and Google Cloud."  Resp. 10.  Neither of the exhibits Sonos cites demonstrate that Mr. Greene worked on the Spotify account.

***Other Practical Problems.*** Sonos suggests that this Court is "one of the few in the country" conducting patent trials during the pandemic. Resp. 13. But trial in this case is scheduled to begin in June 2022, by which point both districts will almost certainly resume in-person trials. Sonos also suggests that a trial here would be safer because WDTX has "fewer COVID-19 cases and [lower] chances of transmission" (*id.*), but that argument is not supported by the numbers.[12]

**B.** ***The Public Interest Factors Weigh In Favor Of Transfer.***

Sonos does not dispute that NDCA likely has greater familiarity with California law which governs the CIA and other agreements. Mot. 2, n.2. Sonos contends that NDCA is more congested than this District, but because the parties already have case assignments in both districts, the relevant inquiry is comparing this Court's docket to that of Judge Alsup, who is presiding over the parties' NDCA case. This Court has 1,050 active cases (Ex. 23); Judge Alsup only has 157 (Ex. 24). Judge Alsup's average time to trial (573 days) is faster than this Court (623 days) (Ex. 25, 26), and he "usually get[s] patent cases to trial in 12 to 14 months." Ex. 1 at 22:23-23:2. Finally, Sonos suggests WDTX has a localized interest due to Google's expanding presence here (Resp. 14-15). But this factor is not about the parties' "connections to each forum writ large," but rather to "***the events that gave rise to a suit***." *In re Apple*, 979 F.3d 1332, 1345 (Fed. Cir. 2020).[13,14]

---

[12] As of June 24, 2021, San Francisco County had higher vaccination rates (72.8% versus 37.7%) and lower positive test rates (.5% versus 2.2%) than McLennan County. Ex. 27, 28.

[13] Sonos points to "a repair facility located in this District." Resp. 14. Sonos is referring to "uBreakiFix," a third-party business that offers services such as repairing broken phone screens nationwide for phones from Google and other companies. Ex. 29. uBreakiFix's facilities are not Google's and thus are not relevant. *Correct Transmission LLC v. ADTRAN, Inc.*, No. 20-669, Dkt. 59 (W.D. Tex. May 17, 2021). To the extent they are relevant, there are significantly more "uBreakiFix" locations in NDCA than WDTX. Ex. 30.

[14] Sonos also argues that Google "has committed, and continues to commit, acts of indirect infringement in this District." Resp. 15. The Fifth and Federal Circuits have both "unequivocally rejected" this argument with respect to consumers of the accused products. *In re Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (citing *In re Volkswagen,* 545 F.3d 304, 318 (5th Cir. 2008)). To the extent Sonos's argument is based on distributors or suppliers (Resp. 15), the ones Sonos identifies have offices in multiple districts, including the NDCA. *See, e.g.*, Dkt. 68-16, 68-18, 68-20.

8

| | |
|---|---|
| DATED:  June 29, 2021 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By:  */s/ Charles K. Verhoeven* |
| | Charles K. Verhoeven (*pro hac vice*) |
| | charlesverhoeven@quinnemanuel.com |
| | Melissa Baily (*pro hac vice*) |
| | melissabaily@quinnemanuel.com |
| | Jordan Jaffe (*pro hac vice*) |
| | jordanjaffe@quinnemanuel.com |
| | Lindsay Cooper (*pro hac vice*) |
| | lindsaycooper@quinnemanuel.com |
| | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| | 50 California Street, 22nd Floor |
| | San Francisco, California 94111-4788 |
| | Telephone:     (415) 875 6600 |
| | Facsimile:     (415) 875 6700 |
| | |
| | Paige Arnette Amstutz |
| | Texas State Bar No. 00796136 |
| | SCOTT, DOUGLASS & MCCONNICO, LLP |
| | 303 Colorado Street, Suite 2400 |
| | Austin, TX  78701 |
| | Telephone:  (512) 495-6300 |
| | Facsimile:  (512) 495-6399 |
| | pamstutz@scottdoug.com |
| | |
| | *Counsel for Defendant Google LLC* |

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 29, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven