## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **SONOS, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | **6-20-CV-00881-ADA** |
| *v.* | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |
| | § | |

## ORDER DENYING DEFENDANT GOOGLE'S MOTION TO TRANSFER

Came on for consideration this date is Defendant Google LLC's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) filed on January 14, 2021. Def.'s Mot., ECF No. 37. Plaintiff Sonos, Inc. filed its Response in opposition on June 15, 2021. Pl.'s Resp., ECF No. 67. Google filed its Reply on June 29, 2021. Def.'s Reply, ECF No. 82. Google filed a motion for leave to file a sur-reply on July 16, 2021 and the Court granted leave on July 21, 2021. Def.'s Mot. for Leave, ECF No. 86; Text Order Granting Def.'s Mot. for Leave. Sonos subsequently filed its Sur-Reply on July 21, 2021. Pl.'s Sur-Reply, ECF No. 91. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** the Motion.

## I. INTRODUCTION

A party seeking a transfer to an allegedly more convenient forum carries a significant burden. *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (hereinafter "*Volkswagen II*") ("[A] plaintiff's choice of venue … places a *significant burden* on the movant to show good cause for the transfer.") (emphasis added). Google does not contest that venue is proper in the Western District of Texas ("WDTX"). *See generally* Def.'s Mot. Google moved to have this case transferred to the Northern District of California ("NDCA"). *Id.* at 1. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly more convenient*. *Volkswagen II*, 545 F.3d at 315 (stating that when the

1

movant fails to demonstrate that the transferee venue is "*clearly* more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected") (emphasis added). This Court finds that Google has failed to meet its significant burden to show that transfer is warranted.

## II. BACKGROUND

Defendant Google is a limited liability corporation incorporated in Delaware with its principal place of business located in Mountain View, California. Pl.'s Am. Compl., ECF No. 51 at ¶ 43. Google is "one of the largest technology companies in the world and conducts product development, engineering, sales, and online retail, search, and advertising operations" in the Western District of Texas. *Id.* at ¶ 44.

Plaintiff Sonos, Inc. is a Delaware corporation with its principal place of business located in Santa Barbara, California. *Id.* at ¶ 42. Sonos is "one of the world's leading providers of innovative audio products," including "wireless multi-room audio devices/systems." *Id.* at ¶ 5.

Google and Sonos are industry competitors in the "smart-speaker" market. *Id.* at ¶ 11. In 2011, following the launch of Google's music streaming service—Google Play Music—Google collaborated with Sonos for the purpose of integrating Google Play Music with Sonos's wireless home-music system. *Id.* at ¶ 12; Pl.'s Resp. at 1. This integration would allow Sonos consumers to access, control, and play content from Google Play Music on or through Sonos devices. Pl.'s Resp. at 1–2. As part of this effort, Google and Sonos executed a Content Integration Agreement ("CIA") which contains provisions relating to the ownership of intellectual property developed as a result of the collaboration. Def.'s Mot. at 1–2. The CIA incorporates a mandatory forum selection clause from a separate license agreement between the Parties:

> 10.2 Choice of Law. This Agreement is governed by California law, excluding California's choice of law rules. FOR ANY DISPUTE RELATING TO THIS

AGREEMENT, THE PARTIES CONSENT TO PERSONAL JURISDICTION IN, AND THE EXCLUSIVE VENUE OF, THE STATE AND FEDERAL COURTS OF CALIFORNIA.

*See* Content Integration Agreement, ECF No. 37-3 § 1.1; API Agreement, ECF No. 37-4 § 10.2 (capitalization in original).

On September 29, 2020, Sonos filed this suit alleging infringement of five separate patents[1] against Google. Pl.'s Compl., ECF No. 1 at 1. Two of these patents—U.S. Patent Nos. 9,967,615 ("the '615 patent") and 10,779,033 ("the '033 patent")—allegedly relate to a functionality developed during the course of the collaboration governed by the CIA. *See* Def.'s Mot. at 1. Google asserts that there is "a substantial nexus" between the current case and the CIA, and that the CIA's forum selection clause therefore applies. *Id.* Google also asserts that the NDCA is a clearly more convenient forum than the WDTX. *Id.* Accordingly, Google filed this Motion to Transfer Venue under 28 U.S.C. § 1404(a) on January 14, 2020, requesting that the Court transfer this case from the WDTX to the NDCA. *Id.*

### III. LEGAL STANDARD

**A. 28 U.S.C. § 1404(a)**

For the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing *good cause*. *Volkswagen II*, 545 F.3d at 314 ("When viewed in the context of § 1404(a), to show *good cause* means that a moving party, in order to

---

[1]United States Patent Nos. 9,967,615; 10,779,033; 9,344,206; 10,469,966; and 9,219,460.

support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (emphasis added) (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not *clearly more convenient* than the venue

chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. Under a § 1404(a) motion to transfer, "the moving party bears a *heavy burden* of demonstrating why the factors 'clearly favor such a change.'" *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007) (citing *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999)) (emphasis added).

## B. Forum Selection Clause

A case may also be transferred under § 1404(a) if there is an applicable forum selection clause. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). If a party files a transfer motion where a mandatory forum selection clause applies, then "proper application of § 1404(a) requires that [the] forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 59–60 (internal quotations omitted).

A court must first determine if the forum selection clause governs the dispute. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011). The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *EVS Codec Tech., LLC v. LG Elec., Inc.*, 2019 WL 2904747, at *2 (E.D. Tex. Jul. 5, 2019) (citing *Gen. Protecht Grp.*, 651 F.3d at 1359). If the court finds such a non-frivolous nexus, then the case should be transferred to the forum named in the agreement unless "extraordinary circumstances unrelated to the convenience of the parties" disfavor transfer. *Id.* (citing *Atl. Marine*, 571 U.S. at 63–64).

An applicable forum selection clause requires a district court to adjust its usual § 1404(a) analysis in three ways. *Atl. Marine*, 571 U.S. at 63. "First, the plaintiff's choice of forum is entitled to no weight," and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, [the] court … should not

consider arguments about the parties' private interests" and "may consider arguments about public-interest factors only." *Id.* at 64. Finally, when a forum selection clause controls, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

## IV. ANALYSIS

The threshold determination for a U.S.C. § 1404(a) analysis is "whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. As a preliminary matter, neither party contests the fact that venue is proper in the NDCA and that this case could have been filed there. Def.'s Mot. at 6; *see generally* Pl.'s Resp. The Court agrees with the Parties that this action could have been brought in the NDCA.

### A. Applicability of the Forum Selection Clause

In its Motion, Google argues that the forum selection clause in the CIA applies to the current case because of the Agreement's non-frivolous connection to the '615 and '033 patents. Def.'s Mot. at 4–5. Google first notes several instances in Sonos's Complaint where Sonos references the collaboration in its allegations. *Id.* These references relate to Google's "access to Sonos's engineers, products, and technology" under the collaboration, with Sonos asserting in its Complaint that "Google used the knowledge it had gleaned from Sonos" in order to begin willfully infringing Sonos's patents. Pl.'s Compl. at ¶¶ 11–14. According to Google, Sonos put the Parties' collaboration at issue through these allegations, and the ownership of intellectual property created through the collaboration is governed by the CIA. Def.'s Mot. at 5. Google further argues that its affirmative defenses to Sonos's '615 and '033 patent infringement claims—giving estoppel, waiver, and limited liability as examples—would require application or

interpretation of the CIA to resolve. *Id.* Taken altogether, Google arrives at the conclusion that the CIA forms a non-frivolous nexus with this case and the forum selection clause therefore applies. *Id.*

In response, Sonos argues that the forum selection clause has no bearing on venue in this case. Pl.'s Resp. at 3. Sonos points out that the CIA governs *ownership* of intellectual property developed under the agreement and does not include an express license to relevant pre-existing intellectual property rights. *Id.* at 4. Noting that both the '615 and '033 patents claim priority to a patent application[2] filed prior to the execution of the CIA, Sonos contends that the CIA and its ownership clauses have no bearing on the question of infringement and no nexus to this case. *Id.* As to Google's affirmative defenses, Sonos argues that said defenses have no bearing on Sonos's infringement claims and will not determine whether Sonos can sustain its infringement suit. *Id.* at 5. Sonos notes that Google does not explain how the accused technology relates to the CIA or the intellectual property developed thereunder, and claims this prevents a nexus between Google's estoppel defense and the CIA. *Id.* at 6–7. Sonos finds that Google's waiver and limitation on liability defenses similarly fail to create a non-frivolous nexus, noting that the CIA makes no mention of the asserted patents or accused technology. Sonos concludes that its infringement claims do not arise from or relate to the CIA; therefore, the CIA's forum selection clause does not apply. *Id.* at 8.

In its Reply, Google reasserts that Sonos created a non-frivolous nexus between the CIA and this case when it alluded to the Parties' collaboration in the Complaint. Def.'s Reply at 3. Google claims that the collaboration between the Parties was focused solely on technology that relates to a claimed function of the '615 and '033 patents. *Id.* at 3–4. Google further claims that Sonos never informed Google of its intellectual property rights during the collaboration while

---

[2] Application No. 13/341,237, now U.S. Patent No. 9,654,821. Pl.'s Am. Compl. at ¶ 59.

facilitating Google's development of the claimed function. *Id.* at 4. Google does not dispute that the CIA does not provide Google with a license to Sonos's pre-existing intellectual property but argues that Google's asserted defenses do not require an express license. *Id.* According to Google, "the ownership provisions of the CIA are relevant not because they provide Google with an express license … but rather because they support Google's defenses." *Id.* Google reasserts that this connection between Sonos's allegations, Google's defenses, and the CIA is sufficient to create a non-frivolous nexus. *Id.*

Sonos responds in its Sur-Reply that Google does not own the intellectual property rights at issue, and therefore there is no non-frivolous nexus between the CIA's ownership provisions and the asserted defenses. Pl.'s Sur-Reply at 1. In Sonos's view, the CIA's forum selection clause should not apply to defenses that rely on "extra-contractual inferences" made by Google. *See Id.* at 2 n.2. Sonos also argues that Google did not sufficiently support its contention that the functionality created under the collaboration is the same as the functionality accused by Sonos in this case. *Id.* at 2. Lastly, Sonos contends that even if there were a basis for Google's defenses, no interpretation of the CIA is necessary to resolve these defenses. *See Id.* at 3.

The Court finds that the forum-selection clause does not apply to this particular case. Neither party disputes that the '615 and '033 patents are owned by Sonos, and Google does not argue that the ownership provisions of the CIA provide Google with ownership of or a license to the patented technology. *See* Def.'s Reply at 1; Pl.'s Resp. at 4. Google's argument that a non-frivolous nexus was created when Sonos "put the parties' collaboration at issue" in its Complaint ignores the type of connection required for a forum selection clause to apply. *See* Def.'s Mot. at 5. Although the CIA's forum selection clause is written broadly—applying to any dispute "relating to" the CIA—the dispute at issue "must still fall *within* the scope of the agreement" in

order to trigger the attendant clause. *Saint Lawrence Commc'ns LLC v. Amazon.com, Inc.*, 2019 WL 2904756, at *4 (E.D. Tex. July 5, 2019) (emphasis in original). Google's argument that the CIA governed the Parties' collaboration as a whole is irrelevant in this context; Sonos's infringement claims "are not related to the [CIA] because their resolution *does not* require[] the application of various provisions of the [CIA]." *See Id.* (internal quotations omitted) (emphasis in original). A non-frivolous nexus must exist between the relevant agreement and the *particular dispute* before a court, rather than between the agreement and the parties' relationship generally. *See Invensas Corp. v. Samsung Elecs. Co.*, 2018 WL 3862060, at *3 (E.D. Tex. Aug. 14, 2018) (finding that forum selection clauses in two agreements were not implicated where the accused infringer failed to show that either agreement was triggered by the asserted accused activity). Although provisions of the CIA relate to ownership of intellectual property, Google does not claim that these provisions defeat Sonos's claims directly—e.g., that the provisions render the '615 and '033 patents invalid, or grant rightful ownership of these patents to Google. Nor does Sonos reference the CIA *itself* as a basis for the allegations in its Complaint. *See* Pl.'s Compl. at ¶¶ 11–14. Accordingly, Sonos's mention of the collaboration in its Complaint is not sufficient to form a non-frivolous nexus between the CIA and the current case.

Google's affirmative defenses similarly do not form a non-frivolous nexus between this case and the CIA. The Court finds *Saint Lawrence Commc'ns LLC v. Amazon.com, Inc.*, 2019 WL 2904756 (E.D. Tex. July 5, 2019), to be instructive here. The defendant in that case relied on a licensing agreement with a forum selection clause to support a defense against willful infringement claims. *Id.* at *3. The *Saint Lawrence* licensing agreement was similar to the CIA in the sense that both forum selection clauses broadly cover disputes "relating to" the respective agreements. *Id.*; *see* API Agreement § 10.2. Like the instant case, it was undisputed in *Saint*

*Lawrence* that the allegedly infringed patents were not covered by the agreement at issue. 2019 WL 2904756, at *4; Pl.'s Resp. 4–5; *see* Def.'s Reply at 4 (stating that Google does not argue that the ownership provisions are relevant as to the question of express licensing). The court in *Saint Lawrence* ultimately found that the licensing agreement's forum selection clause did not apply to the parties' dispute, because the agreement did not—on its face—put the defendant on notice that its actions could constitute infringement. 2019 WL 2904756, at *4. The court determined that inferences of subjective intent on the part of the defendant to infringe would "require one to look beyond the Agreement itself," and therefore "the provisions of the Agreement and the parties' knowledge thereof are at most tangential to the instant lawsuit." *Id.*

In a similar fashion, Google's defenses require the Court to look beyond the CIA and its provisions. "While the Agreement may be used as *evidence* at trial … the Agreement itself is not [Google's] *defense* to [Sonos's] claims." *See Id.* at *5 (emphases in original). Google's estoppel and waiver defenses rely on the CIA to support findings that Google could "reasonably infer" its ownership of the accused technology or that Sonos "waived its rights" to enforce the patents at issue. Def.'s Mot. at 5. Google refers to evidence of "other conduct" on the part of Sonos that will be used to support these defenses as well. *Id.* These defenses are not derived from the provisions of the CIA themselves; the CIA merely functions as "one of the many bricks in the evidentiary wall" that Google seeks to build and is only tangential to Google's defenses. *See Saint Lawrence* at *5. This cannot serve as the basis for a non-frivolous nexus between the CIA and this case. As the court in *Saint Lawrence* observed, if forum selection clauses applied in this manner "every defendant … would be incentivized to claim the agreement [with a forum selection clause] was important evidence relating to some issue of triable fact." *Id.* This application would be improper and far beyond the reasonable intentions of parties at the time of

negotiation and execution of such agreements. *Id.*

Google purports that its limited liability defense relies on the application of a specific provision of the CIA. Def.'s Mot. at 5; *see* Content Integration Agreement § 8.1. However, as Google itself notes, this provision only limits damages for claims "arising from or relating to this agreement or the subject matter hereof." Def.'s Mot. at 5; *see* Pl.'s Resp. at 7–8. As the Court has already determined, Sonos's claims do not directly implicate nor rely on the CIA, and the CIA does not provide any direct defense to the alleged infringement of the patents at issue. Furthermore, neither party disputes that the CIA only governs the ownership of intellectual property developed under the collaboration, as opposed to ownership of the patents at issue. *See* Def.'s Reply at 1; Pl.'s Resp. at 4. Accordingly, the limited liability provision of the CIA—on its face—does not "relate to" the '615 and '033 patents, given that these patents claim priority before the CIA's execution and are therefore pre-existing intellectual property outside the CIA's scope. The Court therefore does not find a non-frivolous nexus between any of Google's argued defenses and the CIA.

The Court stresses that it is not deciding Google's defenses are frivolous in and of themselves, nor that the CIA will not be relevant to those defenses if and when Google asserts them. The Court merely finds that the connection between the CIA and Google's defenses (as well as Sonos's Complaint) is not "non-frivolous" in this context, preventing the application of the forum selection clause. Having found that the forum selection clause does not apply to this dispute, the Court proceeds to the issue of § 1404(a) transfer under the *Volkswagen II* interest factors.

## B. The Private Interest Factors Weigh Against Transfer.

### *i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original).

Google asserts that the accused functionality was researched, designed, and developed in the NDCA, and that any relevant documents would therefore be created by individuals located there. Def.'s Mot. at 9. Google also claims that relevant evidence possessed by third-party prior art witnesses is located in California. *Id.* at 3, 8–9. Finally, Google posits that because Sonos maintains offices in the NDCA, its documents are also likely in the California. *Id.* at 9.

In its Response, Sonos argues that this factor is at most neutral. Pl.'s Resp. at 8. Sonos points out that Google has admitted that any relevant documents are available electronically, and are therefore easily accessible from either district under consideration. *Id.* Sonos also notes that these electronic documents are stored in data centers across the country, and that one of these data centers is within 100 miles of this Court with no comparable data center for the NDCA. *Id.* Sonos also states that multiple relevant third-party witnesses are in the WDTX, including third-party companies that produced components for the accused devices. *Id.* at 9. Sonos argues that relevant documents possessed by these entities would be more easily accessed from the WDTX than the NDCA. *Id.*

Google replies that the documents stored in the data center near this Court should not weigh against transfer because the documents are equally accessible in either district. Def.'s Reply at 7. In its Sur-Reply, Sonos notes that because the physical location of evidence is the relevant consideration under this factor, the presence of these documents near the Court should

weigh against transfer. Pl.'s Sur-Reply at 3.

The Court finds that this factor weighs against transfer. Google conflates the creation of documents with the location of documents, arguing that because relevant documents were created in the NDCA that this factor weighs in favor of transfer. Def.'s Mot. at 9. But this factor focuses on where the created documents are currently *stored*—where such documents were *created* is properly considered under the local interest factor. *See Fintiv*, 2019 WL 4743678, at *2 (stating that the relevant consideration is where documentary evidence is stored); *see also Hammond Dev. Int'l, Inc. v. Google LLC.*, 2020 WL 3452987, at *5 (W.D. Tex. June 24, 2020) (considering where defendant "researched, designed, and developed the accused functionality" under the local interest factor). Google does not directly challenge Sonos's assertion that the data center within 100 miles of this Court contains relevant information, stating only that information from the center is easily accessible electronically from both the NDCA and the WDTX. Def.'s Reply at 7; *see* Pl.'s Resp. at 8. While the Court is sympathetic to Google's argument, Fifth Circuit precedent mandates that the physical location of electronic documents be considered under this factor. *See, e.g.*, *Kuster v. W. Digital Techs., Inc.*, 2021 WL 466147, at *3 (W.D. Tex. Feb. 9, 2021) (considering the physical location of electronic documents despite this consideration being "out of touch with modern patent litigation"). Even if Google's prior art witnesses do have relevant evidence related to this case, "the bulk of the relevant evidence usually comes from the accused infringer" and "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotations omitted). Accordingly, the Court finds that the relative ease of access to sources of proof weighs against transfer.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at \*5 (citing *Volkswagen II*, 545 F.3d at 316). A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, 2015 WL 10818740, at \*4 (W.D. Tex. Dec. 16, 2015). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Google identifies eight individuals and two entities located within the NDCA with relevant prior art information for the patents at issue. Def.'s Mot. at 3. Google also notes that at least one of the named inventors on the asserted patents is a third party, appears to reside in Santa Barbara, and is "likely" within the subpoena power of the NDCA. *Id.*

In response, Sonos notes that none of Google's asserted witnesses are alleged to be unwilling to testify in the WDTX, and therefore should not be given much weight under this factor. Pl.'s Resp. at 9. Sonos also claims that the third-party inventor mentioned by Google is willing to testify at trial in the WDTX. *Id.* Noting that this Court has found that prior art witnesses are generally unlikely to testify at trial, Sonos argues that Google's prior art witnesses should be afforded little weight. *Id.* at 10. Sonos also asserts that video deposition testimony would suffice if the testimony of these witnesses is required. *Id.* Finally, Sonos identifies as relevant witnesses several third-party suppliers[3] of components for the accused devices and a

---

[3] These include Intel Corp., Qualcomm Techs., Inc., Synaptics Inc., Marvell, Samsung, Broadcom, Inc., SK Hynix Inc., and Micron Tech., Inc.

former Google executive[4] located in the WDTX. *Id.* Sonos concludes that this factor weighs against transfer or is at best neutral. *Id.*

Google argues in its Reply that because Google routinely calls prior artists as witnesses at trial, its asserted prior art witnesses should be granted greater weight in the current analysis. Def.'s Reply at 6–7. Google also argues that its third-party witnesses should be presumed unwilling rather than willing under the analysis of this factor. *Id.* at 7. Google notes that this Court has found video depositions to be an insufficient substitute for live testimony. *Id.* Regarding the third-party suppliers mentioned by Sonos, Google posits that it is unlikely that these suppliers will be called to testify. *Id.* Google also contests Sonos's claim that former employee Andrew Greene has relevant information concerning the integration of third-party applications. *Id.* at 7 n.11.

In its Sur-Reply, Sonos argues that it defies logic for Google to claim that a former executive such as Andrew Greene would not have relevant information concerning "integration of third-party applications," and that Google refused to provide this information to Sonos during venue discovery when requested. Pl.'s Sur-Reply at 3–4 n.3. Sonos remarks that its asserted witnesses in the WDTX likely have information concerning prior art, relevant technical and financial information, and information concerning the integration of third-party applications with the Google Cloud Platform. *Id.* at 4.

The Court finds this factor to weigh slightly against transfer. Firstly, Google's prior art witnesses are not entitled to great weight; as this Court has explained previously, "prior art witnesses are generally unlikely to testify at trial, and the weight afforded their presence in this transfer analysis is minimal." *CloudofChange, LLC v. NCR Corp.*, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020). Despite Google's history of calling prior art witnesses in past

---

[4] The former head of Partnerships & Alliances for Google Cloud, Andrew Greene.

litigation, the Court must consider transfer motions on "an individualized, *case-by-case* consideration of convenience and fairness." *Van Dusen*, 376 U.S. at 622 (emphasis added). Just as Google's previous decisions not to challenge venue in the WDTX should not be treated as a waiver for future cases, Google's previous decisions to call prior art witnesses do not dissuade the Court from its general practice of ascribing little weight to such witnesses. *See* Def.'s Reply at 5 n.6. As to the third-party inventor identified by Google that lives in Santa Barbara, Sonos claims in its Response that this inventor is willing to testify. *See* Def.'s Mot. at 8; Pl.'s Resp. at 9. Given that Google does not contest this assertion in its Reply, the Court will consider this witness under the witness convenience factor rather than the compulsory process factor. *See* Def.'s Reply at 6–7.

Sonos points to several third-party suppliers, two prior art witnesses, and a former Google executive in the WDTX as relevant to this factor. The Court first notes that Sonos does not identify any of these witnesses as unwilling, and accordingly gives these witnesses little weight as per Sonos's own arguments. Pl.'s Resp. at 9–10; *see CloudofChange*, 2020 WL 6439178, at *4 ("When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor."). The prior art witnesses that Sonos identifies are also entitled to little weight because of the aforementioned unlikelihood of said witnesses testifying at trial.

Regarding the third-party suppliers, Google argues only that it is "unlikely" that Sonos will call these witnesses to establish that the accused products satisfy claim limitations. Def.'s Reply at 7. The Court cannot dismiss out of hand that some of these witnesses may be called to testify, but agrees that it is unlikely that *all* of them will be called to testify at trial. *See Fintiv*,

2019 WL 4743678, at *6. The Court also notes that several of these witnesses—Intel,[5] Synaptics,[6] and Broadcom[7]—are headquartered in the NDCA, which would make them subject to subpoena by the courts there. Fed. R. Civ. P. 45(c)(1)(B). As a result, the Court does not place significant weight on these third-party suppliers.

The Court finds Google's former executive Andrew Greene to be the decisive element for this factor. Despite Google's argument that Mr.Greene did not work on the particular partnership account that Sonos references, the Court agrees with Sonos that it strains credulity that the former head of "Partnerships & Alliances" would not have information concerning the "integration of third-party applications." Pl.'s Sur-Reply at 3–4, n.3; *see* Def.'s Reply at 7 n.11. Given that such information is potentially relevant to triable issues, the Court finds that this witness tips this factor against transfer.

### iii. The Cost of Attendance for Willing Witnesses.

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, 2017 WL 4155236, at *5 (E.D. Tex. Sep. 19, 2017). The convenience of party witnesses is given little weight. *Fintiv*, 2019 WL 4743678, at *6. The Fifth Circuit's 100-mile rule states that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue § 1404(a) is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen I*, 371 F.3d at 204–05). As a preliminary matter, given typical time

---

[5] Intel has its headquarters in Santa Clara, CA. *Intel Corporation (INTC)*, Yahoo Finance, https://finance.yahoo.com/quote/intc/profile/ (last visited July 29, 2021).
[6] Synaptics has its headquarters in San Jose, CA. *Synaptics Incorporated (SYNA)*, Yahoo Finance, https://finance.yahoo.com/quote/syna/profile/ (last visited July 29, 2021).
[7] Broadcom has its headquarters in San Jose, CA. *Broadcom Inc. (AVGO)*, Yahoo Finance, https://finance.yahoo.com/quote/avgo/profile/ (last visited July 29, 2021).

limits at trial, the Court does not assume that all of the party and third-party witnesses listed in a 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.*

Google asserts that this factor weighs strongly in favor of transfer. Def.'s Mot. at 7. Google first notes that the majority of its U.S. employees are located in the NDCA, and that the witnesses responsible for developing several accused products and functionalities are based there. *Id.* The CIA containing the aforementioned forum selection clause was also negotiated by Google employees located in the NDCA. *Id.* Google argues that Sonos has not identified any relevant witnesses in the WDTX, and that the Court should therefore reject Sonos's assertion that relevant witnesses might be located in this District. *Id.* at 8. Finally, Google points out that most of the relevant Sonos witnesses are based in the NDCA, including three of the named inventors on the accused patents—two that still work at Sonos and one that is a third party. *Id.*

In its Response, Sonos contests Google's assertion that relevant witnesses are not present in this District, stating that Google has hundreds of employees working on relevant technology in the WDTX. Pl.'s Resp. at 11. Sonos identifies several witnesses within and close to the WDTX, including two witnesses involved in sales of the accused products, four employees whose job functions relate to work on the accused products, and over 200 employees whose roles relate to the Google Cloud platform. *Id.* at 11–12; *see* Pl.'s Resp. Ex. 27, ECF No. 68-27. Sonos also identifies eight Google employees and four former Google employees located in either New York or Massachusetts that it claims would be less inconvenienced traveling to the WDTX than the NDCA. Pl.'s Resp. at 12. The inventor of the '615 and '033 patents lives in Massachusetts as

well, and Sonos argues that the 1000-mile difference in comparative travel distances makes the WDTX more convenient that the NDCA for this witness. Finally, Sonos argues that it is unlikely that all of Google's asserted witnesses will testify, and that the convenience of Google's party witnesses should be given little weight. *Id.*

In reply, Google points to twelve specifically identified witnesses in the NDCA and claims that it is not aware of any likely witnesses in the WDTX whose roles relate to the accused functionalities. Def.'s Reply at 5. Google argues that the Google Cloud platform is not an accused product and that Sonos fails to identify any of the hundreds of witnesses related to Google Cloud as likely to testify. *Id.* Google also argues that the roles of the six WDTX-based employees relate to the accused products generally rather than to the accused functionalities in this case, and that therefore these witnesses are not likely to testify. *Id.* at 6. As to Sonos's out-of-state witnesses, Google asserts that none of these witnesses were shown to be relevant by Sonos and that these witnesses will all need to travel regardless of where trial is held. *Id.*

Sonos responds that the six WDTX-based employees may have relevant information concerning sales, damages, and infringement issues. Pl.'s Sur-Reply at 4. Sonos also points to three additional Google employees assigned to office locations in the WDTX that were previously responsible for design, development, sales, marketing, or finance of the accused products. *Id.* at 4–5. Sonos also notes that Google has recently identified 42 additional individuals related to engineering and product management for the Google Cloud Platform in response to Sonos's Requests for Production. *Id.* at 5. Sonos further notes that the Court has held the Google Cloud Platform to be relevant to accused functionalities, and therefore claims that these 42 witnesses are relevant under this factor. *Id.* at 5 n.6.

The Court finds that this factor weighs against transfer. Google's asserted witnesses are

undoubtedly relevant, but the vast majority are party witnesses, and the Court does not assign great weight to these witnesses because Google can compel their testimony. *See Fintiv*, 2019 WL 4743678, at *6. This also applies to the two inventors that still work for Sonos. The sole third-party inventor that was identified by Google under the compulsory process factor is a willing witness, and resides in Santa Barbara outside of the NDCA. Def.'s Mot. at 8; Pl.'s Resp. at 9. However, this witness has declared that travel to Waco would not be inconvenient for her. Hoadley Decl., ECF No. 68-12. As a result, the Court finds that the convenience of this witness would not be greatly influenced by the selection of either forum.

With regard to Sonos's witnesses, the Court first finds it apt to reiterate that long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Fintiv*, 2019 WL 4743678, at *6. It is unlikely that all of Sonos's 200 identified employees related to Google Cloud or the additional 42 employees identified in Sonos's Sur-Reply will testify at trial. Sonos does not identify these employees with any further specificity, and even if it did, these witnesses are Google employees and entitled to little weight under this factor. *Id.*; *see* Pl.'s Resp. at 11–12.

This factor weighs against transfer primarily due to the convenience of the four former Google employees located in the northeastern United States, along with the third-party inventor of the '615 and '033 patents living in Boston, Massachusetts. Sonos is correct that these witnesses would be more inconvenienced traveling more than twice the distance—over 1000 additional miles—to the NDCA compared to the WDTX. Fifth Circuit precedent states that the inconvenience to willing witnesses increases in direct relation to the additional distance to be traveled beyond 100 miles. *Volkswagen I*, 371 F.3d at 204–05; *see Zenith Elecs. LLC v. Sony Corp.*, 2011 WL 13217851, at *7 (E.D. Tex. Apr. 25, 2011) ("The '100 mile rule' generally

favors transfer … if the proposed venue is a shorter average distance away from witnesses than the plaintiff's chosen venue."); *Elbit Sys. Land & C4i Ltd. v. Hughes Network Sys., LLC*, 2017 WL 4693513, at *9 (E.D. Tex. July 19, 2017) ("Transfer is favored if the transferee venue is a shorter average distance from witnesses as compared to the transferor venue."); *Phil-Insul Corp. v. Reward Wall Sys., Inc.*, 2012 WL 12836668, at *2 (E.D. Tex. Feb. 10, 2012) (finding that Nebraska would be "far more convenient" for Canadian witnesses than Texas due to the additional 700 miles that witnesses would otherwise be required to travel); *Krispy Krunchy Foods LLC v. Jenna Mktg. LLC*, 2021 WL 1916151, at *4 (W.D. La. Apr. 16, 2021) (finding that venue in transferee district was more convenient because of its "proximity to all of [movant's] … witnesses" relative to transferor district). Accordingly, because these witnesses would be more inconvenienced traveling to the NDCA compared to the WDTX, the Court finds that this factor weighs against transfer.

### iv. Other Practical Considerations

In considering a transfer motion, the Court considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

Google does not discuss this factor in its Motion. *See generally* Def.'s Mot. In its Response, Sonos argues that this factor weighs against transfer due to this Court being one of the few in the country to successfully conduct a patent trial with live testimony during the COVID-19 pandemic. Pl.'s Resp. at 13. Sonos also notes that the counties from which a jury would be selected in the WDTX are considerably less populated than the respective NDCA counties, reducing the chances of COVID-19 transmission. *Id.* In its Reply, Google predicts that by the time trial for this case begins, both courts will almost certainly be holding in-person trials. Def.'s Reply at 8. Google also notes that trial in the WDTX would not necessarily be safer, given the

higher relative rate of vaccination in the NDCA. *Id.* at 8 n.12.

The Court finds that this factor is neutral. The Parties' arguments of trial safety are beyond the expertise of the Court to accurately weigh—whether a venue is safer due to higher vaccination rates or lower population density is a question for a professional epidemiologist. Sonos's arguments concerning the relative possibilities of a live trial are a different matter, and Google does not support its contention that "both districts will almost certainly resume in-person trials" by the time this case arrives in court. *See Id.* at 8. However, given that courts in the NDCA have just recently begun allowing public access to in-person hearings[8], the Court cannot definitively say that Google's prediction is without merit. Ultimately, whether in-person trials will or will not occur in California at the time of trial is too speculative for the Court to reasonably determine at this juncture. As a result, the Court does not find that other practical considerations weigh for nor against transfer.

### C. The Public Interest Factors Weigh Against Transfer.

### i. Administrative Difficulties Flowing from Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

Google states that it is not aware of any appreciable differences in times to trial for the presumptive judge in the NDCA—District Judge William H. Alsup—versus this Court. Def.'s Mot. at 10. Google also argues this factor should be given little weight as it is generally the most speculative factor. *Id.* In response, Sonos asserts that this factor weighs heavily against transfer, pointing to the lower number of pending cases in the WDTX relative to the NDCA as well as the faster average time to trial in the WDTX. Pl.'s Resp. at 13–14. Google replies that the relevant

---

[8] *General Order No. 78: IN RE: Update on Court Proceedings and Operations following State of California Reopening*, https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_78_In_re_Update_Court_Ops_CA_Reopening.pdf (June 23, 2021).

inquiry is a comparison between this Court and Judge Alsup's dockets, and argues that Judge Alsup's average time to trial is faster than this District. Def.'s Reply at 8. Sonos rejects this analysis, arguing that the proper comparison is between the two districts at issue rather than individual judges. Pl.'s Sur-Reply at 7.

The Court finds that this factor weighs against transfer. Even if Google's assumption that this case will be transferred to Judge Alsup is accurate, Google's comparison between the dockets is inapposite. Google's analysis for the average time to trial for Judge Alsup considers a more than *twenty-year* timespan, encompassing nearly the entirety of Judge Alsup's time on the bench. Def.'s Reply Ex. 25, ECF No. 83-9. This tells the Court little about Judge Alsup's *current* average time to trial. If an apples-to-apples, judge-to-judge comparison were appropriate, Google should have at the very least limited its analysis to the three years that the judge currently presiding over this case has served as a District Judge in Waco. As it stands, the Court cannot consider Google's statistics comparable or informative on the question of court congestion. On the other hand, Sonos cites statistics that consider recent and comparable time periods for the two districts, with a median time to trial of 29.3 months in the NDCA compared to 22.4 months in the WDTX. *See* Pl.'s Resp. at 14; *Kuster*, 2021 WL 466147, at *8 (stating that these statistics were the most recent available in February 2021). Accordingly, the Court finds that this factor weighs against transfer to the NDCA.

### ii. Local Interest in Having Localized Interests Decided at Home

There is "a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947); *Piper Aircraft*, 454 U.S. 235, 260 (1981).

Google asserts that the NDCA has a strong local interest in this dispute, with both parties having offices in the NDCA and Google being headquartered there. Def.'s Mot. at 10. Google

also notes that the accused functionality was designed and developed in the NDCA, and argues that the WDTX has very little, if any, interest in this dispute. *Id.*

Sonos responds that Google has significant presences in both districts, and points to the sale, marketing, and advertising of the accused districts and the employees who facilitate these activities in the WDTX. Pl.'s Resp. at 14. Sonos also identifies the employees who work on the Google Cloud Platform and a repair facility for the accused devices within the WDTX. *Id.* at 14–15. Furthermore, Sonos argues that Google continues to commit indirect acts of infringement within the WDTX by inducing third party retailers to sell the accused devices in this District. *Id.* at 15. Sonos also points to the previously mentioned third-party suppliers that provide components satisfying the limitations of asserted claims, and suggests that Sonos's claims bring these suppliers' work and reputation into question. *Id.*

In its Reply, Google argues that this factor is not about the Parties' connection to "each forum writ large," but rather to "the events that gave rise to a suit." Def.'s Reply at 8 (citing *In re Apple*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)). Google also states that the repair facility Sonos points to is not operated by Google and therefore not relevant, and that there are significantly more of these repair facilities in the NDCA. *Id.* at 8 n.13. Finally, Google argues that Sonos's arguments about indirect infringement creating a local interest have both been "unequivocally rejected" by both the Fifth and Federal Circuits. *Id.* at 8 n.14. Sonos's Sur-Reply contests Google's assertion that the Google employees, engineers, and third-party suppliers are tethered to this lawsuit alone, and argues that these connections reveal Google's significant presence in the WDTX at large. Pl.'s Sur-Reply at 7.

The Court finds that this factor weighs slightly in favor of transfer. Google's presence in both forums is significant, and certainly creates a local interest regarding this dispute in both the

NDCA and the WDTX. However, Google asserts in its Motion that there is no connection between Sonos and the WDTX, with no offices located anywhere in the state of Texas. Def.'s Mot. at 8. Google further notes that Sonos is headquartered in California and operates an office in the NDCA. *Id.* Sonos does not challenge this contention, nor does Sonos attempt to point to any connections—significant or otherwise—between itself and this District. *See* Pl.'s Resp. 14–15; Pl.'s Sur-Reply at 7. Accordingly, the Court finds that Sonos's connections with the NDCA push this factor in favor of transfer despite Google's numerous connections in both districts.

### iii. Familiarity of the Forum with the Law that will Govern the Case

There is "an appropriateness, too, in having the trial of a … case in a forum that is at home with the state law that must govern the case." *Gulf Oil*, 330 U.S. at 509.

Google argues that the NDCA likely has a greater familiarity with California law, which governs the Parties' agreements, including the aforementioned CIA. Def.'s Mot. at 10. Sonos does not address this contention in its Response. *See* Pl.'s Resp. at 13–15. In its Sur-Reply, Sonos argues that there are no state law claims or counterclaims involved in this lawsuit, and there will be no need for the Court to grapple with California law. Pl.'s Sur-Reply at 6–7. Accordingly, Sonos believes that the NDCA's familiarity with California is irrelevant in this context. *Id.* at 7.

The Court finds this factor to be neutral. It is assured that most of the law governing this case will be federal law; even if the CIA is determined to be relevant to the issues presented, it is not clear that interpretation of the CIA's provisions will be necessary to resolve those issues. Both the NDCA and this Court are familiar with federal patent law. Because the Court is unwilling to speculate on the significance or relevance of the CIA at this time, this factor does not weigh for or against transfer.

*iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Neither Google nor Sonos mention this factor amongst their arguments. *See* Def.'s Mot. at 10; Pl.'s Resp. at 13–15. Finding no facts that would implicate this factor, the Court determines it to be neutral.

## IV. CONCLUSION

For the aforementioned reasons, the Court finds that the forum selection clause does not apply to this action and that Google did not meet its burden under § 1404(a) of showing that the Northern District of California is a clearly more convenient forum. Four of the relevant factors— relative access to sources of proof, availability of compulsory process, convenience of willing witnesses, and court congestion—weigh against transfer, with only the local interest factor weighing in favor of transfer. With all other factors being neutral, the Court finds that Google has not met its significant burden to demonstrate that the NDCA is "clearly more convenient." *See Volkswagen II*, 545 F.3d at 314 n.10; *QR Spex*, 507 F.Supp.2d at 664. Therefore, because the Court finds that Google has not demonstrated that the NDCA is a clearly more convenient venue than the WDTX, the Court **DENIES** Google's Motion to Transfer.


SIGNED this 2nd day of August, 2021.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE