**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

SONOS, INC.,

               Plaintiff,

     v.

GOOGLE LLC,

               Defendant.

§
§
§
§
§
§
§
§
§

NO. 6:20-cv-00881-ADA

JURY TRIAL DEMANDED

### SONOS, INC.'S OPPOSITION TO GOOGLE'S MOTION TO STRIKE

Google asks for the unprecedented remedy of striking a patentee's identification of earlier invention dates based on documents produced ***three months before fact discovery opened***. Unsurprisingly, Google strains to articulate how this could have possibly "prejudiced" Google despite the fact that not a single deposition has been taken, Google has not even served its final invalidity contentions (and would not until four months after this production), and nearly the entire fact discovery period remains in the case.  Also unsurprisingly, Google cites but a single case (which stands for the unremarkable proposition that invention documents should ideally be produced "early" in cases) in its entire motion.  This is almost certainly because no court has ever granted the draconian remedy Google now asks for.

Google's motion asks for a remedy that most courts do not consider ordering unless the disclosure in question came at the end of the case, after fact discovery is closed or nearly closed (and then some do not even order it still).  Here rather, Sonos provided its disclosure before fact discovery was even open.  In fact, at the time of production: (1) Sonos had already put Google on notice that it was still investigating and planned to produce conception and reduction to practice evidence upon identification, (2) fact discovery would not even open for another ***three months*** and

1

would not close for another *eight-and-a-half months*, (3) no depositions had been taken, and no discovery responses had been served, and (4) Google's final invalidity contentions would not be due for another *four months*.

Given all this, it is clear that Google's motion falls well short of demonstrating that it is entitled to the relief it seeks.[1]

## I.     FACTUAL BACKGROUND

In several relevant respects, Google's motion misrepresents the factual background of this case and omits relevant information in an attempt to establish prejudice where none exists.

Sonos served a document titled "Preliminary Infringement Contentions and Identification of Priority Dates" on December 11, 2020. In this document, Sonos set forth its initial infringement contentions for the '615, '033, '206, '966, and '460[2] Patents, making reference to attached infringement charts. Although unrelated to its infringement contentions, for convenience Sonos also identified in the same document the earliest priority dates that it was aware of at the time for each of the asserted patents. Notably, this disclosure was based on Sonos's current knowledge and understanding and Sonos specifically noted that it had not yet completed its investigation, collection of information, discovery, or analysis relating to this action, and additional discovery may lead Sonos to amend, revise, or supplement that disclosure. Ex. A at 1 (charts omitted).

On January 8, 2021, Sonos emailed Google informing it that Sonos desired to amend its Complaint to assert a new patent (the '885 Patent had just issued on November 24, 2020). Ex. B. In that email, Sonos provided, *inter alia*, a document titled "Supplemental Preliminary Infringement Contentions and Identification of Priority Dates," which addressed only infringement

---

[1] In fact, Google's motion is suspiciously silent on what standard it even needs to meet in order to qualify for the relief it seeks. This alone should doom Google's motion.

[2] This patent is no longer asserted in this case.

of, and the earliest known priority date for, the new '885 Patent.  Ex. 1.  On February 17, this Court entered Sonos's amended complaint.  Dkt. No. 49.[3]

As indicated in Google's motion, Google wrote Sonos on February 12, 2021, stating its then-understanding that "Sonos has no additional evidence of conception or reduction to practice and will proceed accordingly,"  Ex. 2 at 1, followed by a "request that Sonos remedy the deficiencies highlighted above."  Ex, 2 at 3.  Although Google states in its motion that "Sonos failed to substantively reply," Sonos indeed replied to this letter on March 4, noting, *inter alia*, that it "acknowledge[s] your request for evidence of prior invention," further stating that "[w]e have been and currently are investigating this and will seasonably supplement our . . . document production upon identifying relevant and responsive evidence."  Ex. 3 at 3.

Despite this notice that Sonos was continuing to investigate evidence of conception and reduction to practice and planned to produce documents upon their identification, Google served its preliminary invalidity contentions on March 5.  Ex. 4.  In these contentions, Google apparently anticipated and expected Sonos to produce evidence of conception and reduction to practice (as Sonos told Google it would) and thus specifically reserved its right to "modify or supplement" its contentions in response to Sonos producing such information.  Ex. 4 at 89 ("Google reserves the right to modify or supplement these Preliminary Invalidity Contentions, including in response to any positions taken or information disclosed regarding the priority date, conception date, or date of reduction to practice of the Asserted Claims.").

Further belying any claim that Google did not know or expect that Sonos would produce conception and reduction to practice evidence, Google, on March 31, served pre-fact discovery

---

[3] Sonos's filed a second amended Complaint on February 23 to withdraw the '460 Patent.  Dkt. No. 51.

document requests seeking (among many topics) conception and reduction to practice evidence. Ex. C at 7 (document request no. 7).  Sonos initially objected on grounds that such a request constituted premature merits discovery, but after a meet and confer on May 7, Sonos agreed to produce such documents in the spirit of cooperation.  Sonos completed its investigation and supplemented its document production on May 11.  Ex. 6.  On the following day, May 12, Google's counsel emailed noting that the May 11 production was about 6,000 pages and inquired as to what document requests this production corresponded.  Ex. D.  Sonos replied the same day explaining that these documents were documents that Google argued would be responsive to *five* document requests, including request no. 7 (conception and reduction to practice evidence).[4]  *Id.*

Meanwhile, Sonos had already filed its opening claim construction brief on April 27 and Google's brief was thus due May 18.  However, Google requested a two-week extension to file its responsive brief so that it could review the documents that it asked Sonos to produce.  This pushed back the remainder of the claim construction briefing, necessitated a two-week delay to the *Markman* hearing, and delayed the opening of fact discovery.  Nevertheless, in the spirit of compromise, Sonos agreed.  Dkt. No. 61.  At this point, fact discovery was set to open on July 15 (although in reality it would not open until August 7).

On June 4, Sonos served a "Second Supplemental Preliminary Infringement Contentions and Identification of Priority Dates," document in which Sonos clarified some aspects of the third-

---

[4] Google's pre-fact discovery document requests purported to relate to "claim construction issues." But in reality, these document requests sought voluminous information in addition to claim construction topics, including conception and reduction to practice evidence, as well as deposition transcripts and exhibits, expert reports and exhibits, infringement contentions and domestic industry contentions, and witness statements from other cases that do not involve any of the asserted patents in this action. Ex. C at 6-7.

party accused apps as well as identified earlier invention dates based on the documents produced on May 11.  Dkt. No. 83-6.

Google's first objection to Sonos's May 11 document production came nearly **two months** after.  On July 9, Google sent correspondence demanding that Sonos withdraw its identification of earlier invention dates based on the May 11 document production.  Ex. 7.  This demand was premised on a host of omissions and misstatements about the record, including that Sonos's prior invention dates rely on a 6,000-page document production.  *Id.*  Sonos responded on July 20 to clear the record, including to—once again—explain how Sonos's prior invention dates do not rely on a 6,000-page document production:

> Your letter acknowledges the May 11 document production but goes on to incorrectly state that "Sonos produced over six thousand pages of documents that it is now relying upon for conception and reduction to practice."  Of course, this is not the case.  Even a cursory review of the May 11 document production would quickly reveal that Sonos is not relying on the entirety (or even the majority) of this production for conception and reduction to practice.  Indeed, this production contains over 4,500 pages of material from the *Sonos v. Google* ITC proceeding that Google argued would be responsive to RFP Nos. 2, 4, 5, and 6, such as (i) claim construction briefing, (ii) infringement contentions, (iii) domestic industry contentions, (iv) expert reports, and (v) witness statements – material that Sonos is clearly not relying on for conception and reduction to practice in this case.  In fact, we already explained this to you on May 12 in response to Mr. Jaffe's email questions concerning the May 11 production, namely "What RFPs are these documents responsive to?" and "Does Sonos contend any of these documents evidence conception and reduction to practice for any claimed invention reflected in an asserted claim in this case?"  Richter Eml. to Jaffe 5/12/21 (explaining that "These are documents that you argued would be responsive to RFP Nos. 2 and 4-7," and "*Some* of the documents we produced evidence conception and reduction to practice.").

Ex. E at 2.  Sonos offered to confer further that very week to no avail.  *Id.* at 3.

Despite this letter and Sonos's offer to confer, Google did nothing for nearly another **three weeks** before it approached the Court on August 12 with what it referred to as a "discovery dispute."  Ex. 8.  After agreeing with Sonos that this was not a discovery dispute, this Court indicated that it would consider the issue in a motion to strike.  Ex. 9.

## II.     LEGAL STANDARD

The current dispute concerns Sonos's amendment of *preliminary* contentions and a document production, both occurring several months prior to the opening of fact discovery. Despite this, Google refers to this as a "belated" production and also "misconduct." Unsurprisingly, Google fails to cite a single case that sets forth a standard for how to balance the interests of justice versus purported prejudice in this situation.  The standards set forth below concern amendment of *final* infringement contentions where the local rules *require* leave of court and a showing of good cause.  For the avoidance of doubt, the present situation is not analogous because the dispute concerns *preliminary* contentions which this Court permits to be amended *without* leave of court.  Nevertheless, even under the heightened standard for *final* infringement contentions, Sonos's amendment is permissible.

The Fifth Circuit has directed that in deciding whether to permit amendments to the pleadings after the deadline for such amendments, district courts should consider four factors: "(1) the explanation for the party's failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice."  *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 360 F. Supp. 3d 541, 548–49 (E.D. Tex. 2018) (Bryson, J.) (citing *United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016)).

Similar considerations govern the question whether to permit an out-of-time amendment of infringement contentions.  *Id.*  In other words, in determining whether the plaintiff has shown good cause to amend its infringement contentions, courts consider the same four factors: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the court is excluding, (3) the potential prejudice if the court allows that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice."  *Id.; Virginia Innovation Scis., Inc. v.*

*Amazon.com, Inc.*, No. 4:18-CV-474, 2020 WL 1275786, at *2 (E.D. Tex. Mar. 17, 2020); *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, 360 F. Supp. 3d 541, 549 (E.D. Tex. 2018) (citations omitted).

In general, striking infringement contentions is an "extreme decision" comparable to determining "whether evidence should be excluded for discovery violations." *Eolas Technologies Inc. v. Amazon.com, Inc.*, 2016 WL 7666160, at *1 (E.D. Tex. Dec. 5, 2016) (citing *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. Aug. 24, 2007)). Courts are, therefore, "hesitant to strike contentions absent evidence of unreasonable delay and prejudice." *Id.*

## III.   ARGUMENT

### A.   Sonos's May 11 Document Production and June 4 Identification of Earlier Invention Dates Does Not Violate the OGP

As Sonos represented, Sonos's December 11 preliminary infringement contentions and identification of priority dates were based on Sonos's best and current knowledge and understanding at the time and, in those contentions, Sonos specifically noted that it had not yet completed its investigation, collection of information, discovery, or analysis. Ex. A. Sonos reiterated this exact position to Google in response to Google noting its then-current (but flawed) understanding that "Sonos ha[d] no additional evidence of conception or reduction to practice" but requesting "that Sonos remedy the deficiencies highlighted." Ex. 2 at 3; Ex. 3 (Sonos explaining that "[w]e have been and currently are investigating this and will seasonably supplement our . . . document production upon identifying relevant and responsive evidence.").

Sonos completed its investigation and on May 11 produced a discrete set of documents evidencing conception and reduction to practice. The OGP expressly permits parties to amend ***preliminary*** contentions ***without leave of court*** so long as counsel certifies that it undertook

reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served.  OGP at 8 fn.8.  That is exactly the case here – Sonos undertook reasonable efforts to prepare its preliminary contentions and based its identification of the priority dates on its current knowledge and understanding.  It continued to investigate its positions in this case and ultimately, by May 11, had identified a discrete set of set of documents evidencing conception and reduction to practice, which it promptly produced.  And on June 4, Sonos seasonably supplemented its contentions to identify earlier invention dates based on this May 11 production.[5]

Google argues that Sonos cannot certify that the information was identified after the preliminary contentions were served because the material was Sonos's own documents.  Mot. at 4-5.  But this is an oversimplification of what it means to have "identified" material.   All information is not automatically "identified" simply because a party owns that material containing that information.   Indeed, Sonos and its counsel are not automatons with a computer-like understanding and recall of every conceivable fact that may be stored or represented in electronic form in the records of Sonos spanning more than a decade worth of information.  Google argues further that "Sonos has already litigated related technologies before the International Trade Commission against Google."  Mot. at 5.  But as explained to Google's counsel in this matter several times, the patents asserted in the ITC are different patents in different families than those

---

[5] Google has argued that Sonos failed to certify that it undertook reasonable efforts to prepare its contentions and that its amendment is based on material identified after service.  Google has never explained what its understanding of "certifies" is or how or why Sonos's representations to date do not constitute such a certification.  The OGP is also silent on any exacting form that this certification must take.  Sonos's understanding was and is – like all other material served on opposing counsel and/or presented to the Court – the very fact that counsel submitted such material and signed it constitutes a representation that the material is true and accurate to the best of the signer's knowledge and complies with applicable rules and orders.  To this end, Sonos considered that the very fact that it submitted the amended contentions constituted such certification.

asserted here.  Sonos has never litigated these asserted patents before.  Naturally, the conception and reduction to practice evidence in Sonos's previous litigation is a different set of evidence from what was identified here.

Google claims that Sonos asserts that "it is free to provide priority claims at *any time*."  Mot. at 5.  Sonos has made no such assertion and does not argue for that position here.  Sonos is simply responding to Google's request to strike Sonos's earlier invention dates under the present circumstances.  In doing so, Sonos asserts that, under the circumstances, it ought to be permitted to maintain its earlier contention dates.  The Court ought not lose sight of the posture of this case when Sonos produced its conception and reduction to practice evidence: (1) Sonos had already put Google on notice that it was still investigating and planned to produce such documents upon identification, (2) fact discovery would not even open for another *three months* and would not close for another *eight-and-a-half months*, (3) no depositions had been taken, and no discovery responses had been served, and (4) Google's final invalidity contentions would not be due for another *four months*.

Finally, apparently invoking the adage that if you repeat something often enough, it becomes true, Google in its motion *twice more* repeats the mantra that Sonos is relying on 6,000 pages of documents for conception and reduction to practice.  Mot. at 3 ("Sonos also identified the additional 6,000 pages of documents it had produced as purportedly supporting conception and reduction to practice."); *id.* at 4 ("Sonos then waited *almost six months* to produce over 6,000 pages of documents that it is now seeking to rely upon for conception and reduction to practice.").  As has been explained to Google several times by this point, Sonos is not relying on the entirety of a 6,000-page document production for its earlier invention dates no matter how salacious it sounds.  To be clear, on May 11, Sonos made a document production that included conception and

reduction to practice evidence, but also included many more things, such as (i) claim construction briefing, (ii) infringement contentions, (iii) domestic industry contentions, (iv) expert reports, and (v) witness statements from other cases with different asserted patents – material that Sonos is clearly not relying on for conception and reduction to practice in this case.  Sonos explained this fact to Google the very next day in response to Google's questions: "What RFPs are these documents responsive to?" and "Does Sonos contend any of these documents evidence conception and reduction to practice for any claimed invention reflected in an asserted claim in this case?" Ex. D (explaining that "These are documents that you argued would be responsive to RFP Nos. 2 and 4-7," and "Some of the documents we produced evidence conception and reduction to practice.").

Google disingenuously argues that Sonos "intentionally obfuscated which of the additional 6,000 pages of documents are actually evidence of conception and reduction to practice."  This is not true.  Even a cursory review of the documents would reveal which documents from this production were prior invention documents and which were materials from other litigations, like expert reports and witness statements.  Indeed, in this production, there are only 416 total documents.  And Sonos produced full metadata, including custodian, date modified, and file name, among others.  In this regard, a simple glance at the custodian field would have revealed that there are documents with the custodian "ITC Materials" and documents with custodians of individual Sonos employees and/or named inventors, like "Nick Millington," "Tad Coburn," "Andrew Schulert," "Rob Lambourne," etc.  Further, the conception and reduction to practice documents were consecutively bates labelled and included in a single production volume, rather than being scattered among multiple volumes and interspersed with other responsive material.  If still confused, Google could have just submitted an Interrogatory asking Sonos to identify the

conception and reduction to practice documents (indeed, it served a document request in March asking for these documents; it stands to reason that it could have propounded an interrogatory asking for identification around this same time).  Or, it could have just asked counsel.  In fact, Google's counsel reached out the very next day to ask what these documents were – but specifically noted that "we're not asking for document-by-document report."  Ex. D.  To claim now that Sonos "intentionally obfuscated" its document production is disingenuous.[6, 7]

### B.      Google Has Not Been Prejudiced by Sonos's Identification of Invention Dates

Google's primary argument in this respect is that Google searched for prior art for its preliminary invalidity contentions without the benefit of the invention dates now indicated. Google goes so far as to claim that it was not on notice that it should search for prior art with earlier invention dates.  That is clearly false.  *See* Ex. 3 at 3.  Sonos put Google on notice that it was still investigating and would produce documents upon identification.  *Id.*  Google then anticipated such production because it reserved its rights to supplement or amend its preliminary invalidity contentions – not in response to some ***general*** production of new information, but in response to the ***specific*** information of earlier invention evidence.  Ex. 4 at 89.  That Google has (apparently) made no attempt to exercise this right and supplement its search is not the sort of "prejudice" that

---

[6] As further evidence of its disingenuousness, Google feigns a complaint here about a citation by Sonos to 6,000 pages of production documents, but apparently believes that a citation to 48,000+ pages of production documents to answer multiple specific Sonos interrogatories seeking an explanation as to discrete functionality of the accused products is perfectly acceptable.  *See* Ex F at 51, 53-54 ("Subject to and without waiving the foregoing General and Specific objections, Google responds, as follows: Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Google further refers Sonos to the source code that Google has made available and the following documents containing information responsive to this interrogatory: GOOG-SONOSWDTX-00005033-53611.").

[7] Google also argues throughout that Sonos "waited ***almost six months*** to produce over 6,000 pages . . ."  Sonos cannot tell if this reference to "six months" is a merely an oversight or intentionally misleading.  Clearly, the amount of time between December 11, 2020 and May 11, 2021 is exactly five months – not six months.

defendants typically suffer leading Courts to strike such evidence. *Compare Virginia Innovation Scis., Inc. v. Amazon.com, Inc*., Case No. 18-cv-474, 2020 WL 1275786, at *6–7 (E.D. Tex. Mar. 17, 2020) (finding good cause for allowing amendment of final contentions because a continuance was not necessary where defendant has sufficient time to and did search for prior art using the amended invention date) *with Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, Case No. 15-cv-37, 2017 WL 2651618, at *10 (E.D. Tex. June 20, 2017) (excluding priority date argument raised "nine days before fact discovery closed").

Indeed, a party that fails to even attempt to mitigate any prejudice ought not to thereafter complain of that same prejudice or, worse, benefit from its lack of mitigation. *Glazier v. Fox*, Case No. 14-cv-106, 2016 WL 424994, at *3 (D.V.I. Feb. 3, 2016) (refusing to strike belated evidence where "Defendant . . . had several months to take remedial steps to minimize any alleged prejudice or surprise" but did nothing, explaining further that "in these circumstances defendant had some obligation to take steps to minimize its alleged prejudice and surprise"); *see also Creative Internet Advert. Corp. v. Yahoo! Inc*., Case No. 07-cv-354, 2009 WL 2382136, at *7 (E.D. Tex. July 30, 2009) (finding that "Defendant was neither unfairly surprised, nor prejudiced . . ." because "Defendant took no further action in an effort to mitigate the alleged prejudice it now argues it suffered.").[8]   At no point did Google seek any kind of extension for its final invalidity contentions (despite having four more months to serve them) to give it more time to locate prior

---

[8] Google argues further that its reservation of rights should not cause Google to "scramble" to respond to evidence.  Mot. at 5 fn.2.  Google, however, does not allege that it even attempted to mitigate the "prejudice" by supplementing its search.  Nor does Google explain why it would have been a "scramble" to do so.  Google sought and received a two-week delay in the schedule *specifically* to review Sonos's May 11 document production.  Moreover, at the time of this document production, fact discovery had not yet opened (and would not for three more months) and Google would still have four more months before its invalidity contentions would be due.  No "scramble" necessary.

art that predated Sonos's invention dates (even though the majority of its already-identified art predated Sonos's invention dates).[9]

Google cannot credibly claim that it was not aware that Sonos was still investigating prior invention and would seasonably supplement its production and contentions upon identification. Sonos explicitly told this to Google on March 4.  Ex 3 at 3.  Google asked for conception and reduction to practice evidence via a pre-fact discovery document request and, as a result, expected Sonos to produce documents in response thereto.  Ex. C at 7.  In fact, Sonos did produce conception and reduction to practice documents in response to Google's document request – just as Google expected.  Google confusingly claims that "Sonos did not indicate that it was doing so in response to Google's discovery requests."  Mot. at 6.  But this claim is belied by the record.  The parties had a meet and confer on May 7, during which Sonos indicated that it would produce documents pursuant to Google's document requests.  Two business days later, on May 11, Sonos produced documents.  The next day Google asked what these documents were (apparently without looking at them), to which Sonos replied (on that same day) that these were the documents that Google argued were responsive to document request nos. 2 and 4-7 (with request no. 7 being the document request seeking conception and reduction to practice evidence.)  Ex. C at 7.  It strains credulity for Google to now say that it somehow was not clear that this document production was responsive to Google's requests.

---

[9] In fact, in August, Sonos reached out to Google and attempted to adjust the date for final infringement and **_invalidity_** contentions from August 27 to October 1.  Sonos's cause for this was to account for _Markman_ and the opening of fact discovery (just 20 days prior) being pushed back several times and to bring this date in line with the OGP's timeline specifying that final contentions are due eight weeks after _Markman_ instead of the then-scheduled two-and-a-half weeks. Inexplicably, Google refused this mutually-beneficial extension, arguing only that they were "ready to go with their contentions," which belies every last claim of prejudice Google proffers now.  Ultimately, after asking for a professional courtesy, Google was able to authorize a two-week push-back of the contention date to September 10.

Finally, Google argues that Sonos's invention dates "render certain prior art unviable." Google then identifies three references (Clementine Music Player, Sonos's ZP 80/ZP100, and Crestron AES) that would be antedated, saying nothing of the literal hundreds of other references identified in Google's contentions. Ex. 4 at 12-21, 43-57. Google offers no explanation as to how it is demonstratively prejudiced by earlier invention dates that (allegedly) do not even predate 95% of the other identified references in Google's contentions.

### C.     Google Has Not Demonstrated That it is Entitled to Strike Sonos's Contentions

Under the prevailing legal standard (which is germane to out of-time amendments to *final* invalidity contentions in jurisdictions where the local rules require leave of court and good cause), Google has not met its burden to show that the Court ought to strike Sonos's *preliminary* contentions identifying prior invention dates and evidence produced prior to the opening of fact discovery.  As demonstrated above, Google has not established that Sonos's delay was unreasonable or that it has been prejudiced.  Google advances only that Sonos should have identified and produced the material earlier.  Even if true, this cannot be the threshold for the draconian remedy of precluding Sonos from arguing its prior invention dates, particularly, where Google was on notice that Sonos was still investigating, fact discovery was still months away from even opening, Google would have several months still to serve its final invalidity contentions, and Google failed to seek a continuance (if it needed one) even after being offered one by Sonos.

Although Google is silent on this (or any other) standard in its motion, the more-exacting governing factors of "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the court is excluding, (3) the potential prejudice if the court allows that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice" do not weigh in favor of striking the invention dates.

As to factor 1, Sonos has not even failed to meet any such deadline, as the OGP specifically permits a party to amend initial contentions without leave of court so long as the material was not identified earlier and the party was reasonably diligent in preparation of the initial contentions.  As demonstrated above, this is the case here.

As to factor 2, the exclusion of earlier invention dates—as should go without saying— would be highly prejudicial to Sonos, particularly at this early stage of the case.  This is an extreme remedy.

As to factor 3, as demonstrated above, the prejudice to Google is slim at best.  Google waited many weeks to raise an objection to Sonos's document production and identification of invention dates, and then many more weeks to approach the Court about it.  In all, Google had **four months** to prepare its final invalidity contentions in response to Sonos' document production.  Google declined to move that date back even one more month (despite being offered as much by Sonos), suggesting that Google does not need additional time to search for art.  *Accord Virginia Innovation Scis., Inc.*, 2020 WL 1275786 at *6–7.  Finally, Google has already identified many references that (allegedly) pre-date Sonos's invention dates; thus, the prejudice as to these references is zero.  *See id.*

As to factor 4, there was more than an availability of a continuance to cure any prejudice. For starters, a continuance was arguably not even necessary given how early in the case the prior invention evidence was produced (*i.e.*, before fact discovery even opened).  But more to the point – Google had nearly four months to address this evidence (from May 11 until September 10) before its final invalidity contentions are due.  This, coupled with the entire fact discovery period in front of Google, should provide all the continuance necessary to address a five to nine month adjustment in earlier invention dates.

Dated:  September 9, 2021

Respectfully submitted,

By */s/ Mark D. Siegmund* __ __
Mark D. Siegmund

Jeffrey L. Johnson
Texas Bar No. 24029638
ORRICK, HERRINGTON & SUTCLIFFE LLP
609 Main Street, 40th Floor
Houston, TX 77002
Telephone:  713.658.6400
Facsimile:  713.658.6401
jj@orrick.com

Clement Seth Roberts (admitted *pro hac vice*)
California Bar No. 209203
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard St.
San Francisco, CA 94105
Telephone:  415.773.5484
Facsimile:  415.773.5759
croberts@orrick.com

Bas de Blank (admitted *pro hac vice*)
California Bar No. 191487
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Blvd.
Menlo Park, CA 94205
Telephone:  650.614.7343
Facsimile:  650.614.7401
bdeblank@orrick.com

Alyssa Caridis (admitted *pro hac vice*)
California Bar No. 260103
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa St., Suite 3200
Los Angeles, CA 90017
Telephone:  213.612.2372
Facsimile:  213.612.2499
acaridis@orrick.com

George I. Lee (admitted *pro hac vice*)
Illinois Bar No. 6225430
Sean M. Sullivan (admitted *pro hac vice*)
Illinois Bar No. 6230605
Rory P. Shea (admitted *pro hac vice*)

16

Illinois Bar No. 6290745
J. Dan Smith (admitted *pro hac vice*)
Illinois Bar No. 6300912
LEE SULLIVAN SHEA & SMITH LLP
656 W. Randolph St., Floor 5W
Chicago, IL 60661
Telephone:  312.754.9602
Facsimile:  312.754.9603
lee@ls3ip.com
sullivan@ls3ip.com
shea@ls3ip.com
smith@ls3ip.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Attorneys for Plaintiff Sonos, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Mark D. Siegmund*
Mark D. Siegmund