IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SONOS, INC.,<br><br>   Plaintiff,<br><br> vs.<br><br>GOOGLE LLC,<br><br>   Defendant. | Case No. 6:20-cv-00881-ADA<br><br>JURY TRIAL DEMANDED |

**DEFENDANT GOOGLE LLC'S REPLY  IN SUPPORT OF ITS MOTION TO STRIKE SONOS'S UNTIMELY PRIORITY CLAIMS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ........................................................................................................... 2

    A. Google's Motion Should Be Granted Because Sonos Has Not Met The Standard Set Forth In The OGP For Amending Without Leave Of The Court .............................................................................................................. 2

    B. Google's Motion Should Be Granted Because Sonos Has Not Moved For Leave To Amend And Cannot Meet The Standard For Doing So ..................... 4

        1. Sonos Does Not Provide Any Legitimate Excuse For Its Failure to Meet The Case Schedule ......................................................................... 5

        2. Striking Sonos's New Priority Dates Does Not Unduly Prejudice Sonos ...................................................................................................... 6

        3. Sonos's New Priority Dates And Evidence Are Unduly Prejudicial To Google ............................................................................................... 6

        4. A Continuance Cannot Cure The Prejudice Here .................................... 9

III. CONCLUSION ...................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Allergan, Inc. v. Teva Pharmaceuticals USA, Inc.*,
 2017 WL 119633 (E.D. Tex. 2017) ................................................................................... 5, 8

*Allvoice Developments US, LLC v. Microsoft Corp.*,
 612 Fed. App'x 1009 (Fed. Cir. 2015) .................................................................................. 5

*Canvs Corp. v. United States*
 107 Fed. Cl. 100 (Fed. Cl. 2012) .......................................................................................... 3

*Fahim v. Marriot Hotel Servs., Inc.*,
 551 F.3d 344, 348 (5th Cir. 2008) ......................................................................................... 5

*Global Sessions LP v. Travelocity.com LP*,
 2012 WL 1903903 (E.D. Tex. 2012) .................................................................................... 4

*Harvatek Corp. v. Cree, Inc.*,
 2015 WL 4396379 (N.D. Cal. July 17, 2015) ............................................................... 3, 6, 8

*SoftVault Systems, Inc. v. Microsoft Corp*,
 2007 WL 1342554 (E.D. Tex. 2007) ................................................................................ 7, 9

*True Chemical Solutions, Inc. v. Performance Chemical Company*,
 Case No. 18-cv-0078-ADA (W.D. Tex. 2020) ................................................................. 3, 6

*Virginia Innovations Sciences, Inc. v. Amazon, Inc.*,
 2020 WL 1275789 ................................................................................................................ 8

## I.  INTRODUCTION

Faced with a clear failure to comply with this Court's order, Sonos's opposition is most notable for what it either concedes or fails to dispute. Pursuant to the Order Governing Proceedings ("OGP"), Sonos was required to "identify the earliest priority date" and "all documents evidencing conception and reduction to practice" with its Preliminary Infringement Contentions. In its opposition, Sonos does not dispute that:

- it waited more than **six months** after the Court-ordered deadline to identify its priority date and conception evidence (collectively, "Priority Contentions");

- Sonos's untimely supplement is based entirely on Sonos's own documents, all of which Sonos has had in its possession for over a decade;

- Sonos failed to certify that it "undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served," as required by the OGP. Sonos actually provides *no information at all* about any "efforts" it took to identify a priority date before the deadline, let alone "reasonable efforts." Sonos's opposition is likewise entirely silent on why it took Sonos six months to update its Priority Contentions and

- Google is prejudiced because Sonos waited until after it was able to review Google's invalidity contentions to attempt to exclude prior art that Google identified and charted.

In fact, Google is deeply prejudiced by Sonos's violation of this Court's OGP. Google and its counsel relied on Sonos's disclosure of priority dates to diligently identify prior art publications and products pre-dating those priority dates. During that process, Google discovered that certain of Sonos's own products constitute invalidating prior art. Google then duly served its contentions in April 2021 showing how these products and other publications invalidated the asserted patents. Contrary to the OGP, Sonos withheld its purported early conception evidence until well after it received Google's invalidity contentions. Sonos should not be rewarded for laying behind the log, which if accepted would eviscerate the requirement

1

that the patent owner do its diligence regarding conception and reduction to practice *prior* to receiving invalidity contentions.

Sonos's Opposition confirms that its amendment was also procedurally improper because it never sought leave to do so. While Sonos has yet to request leave to file an amendment, it cannot satisfy that standard either. The Court should thus grant Google's Motion to Strike Sonos's Untimely Priority Claims ("Motion").

## II. ARGUMENT

### A. Google's Motion Should Be Granted Because Sonos Has Not Met The Standard Set Forth In The OGP For Amending Without Leave Of The Court

There is no dispute that, when Sonos served its new Priority Contentions six months after the deadline for providing its Initial Contentions, Sonos did not include the certification required by the OGP. Indeed, Sonos's only argument that it complied with the certification requirement is relegated to a footnote in which it claims that the "fact that counsel submitted [amended contentions] constitutes a representation that the material… complies with applicable rules and orders." Opp. at 8, n.5. But if Sonos's argument were correct and the act of signing a pleading constituted the required certification, then there would be no need for certificate of services, certificates of conference, and other certifications mandated by the local rules and the OGP.

Sonos's Opposition now confirms that Sonos cannot make the necessary certification. Indeed, Sonos remains silent regarding what (if any) efforts it took to "identify the earliest priority date" and "all documents evidencing conception and reduction to practice" prior to serving its Initial Contentions. Sonos also does not articulate any reason why it could not have met the original deadline for identifying its Priority Contentions. Instead, Sonos urges this Court to ignore its lack of diligence because it provided priority dates based on its "best and current knowledge" at the time. Opp. at 7. Such a conclusory assertion does not come close to meeting

2

the standard articulated in the OGP, and allowing parties to freely amend with absolutely no showing of diligence would render the rules meaningless. *See Harvatek Corp. v. Cree, Inc.*, 2015 WL 4396379, *3 (N.D. Cal. July 17, 2015) (striking "at least as early" language from Plaintiff's priority identification because "rules must have teeth if they are to have any effect.").

Sonos does not dispute that its amendments are based entirely on its own documents, but claims that "[a]ll information is not automatically 'identified' simply because a party owns that material." Opp. at 8. However, Sonos does not explain when or how it identified these materials, and Sonos does not provide any reason why it could not have identified them prior to serving its Initial Contentions. Sonos's argument also does not account for the fact that two of the three inventors of the patents-in-suit are Sonos employees and that Sonos "should already know the conception date of a patented invention prior to commencing litigation." *Harvatek*, 2015 WL 4396379, *2-*3. In short, Sonos's Opposition confirms that it cannot make the necessary certification because its untimely amendment is based on information that was available to Sonos at the time of its Initial Contentions. *See True Chemical Solutions, Inc. v. Performance Chemical Company*, Case No. 18-cv-0078-ADA, slip op. at 6 (W.D. Tex. 2020) ("Ultimately, the Court finds that True Chem cannot establish the requisite showing of good cause required by Rule 16 for its proposed out-of-time amendments, as True Chem cannot establish that it only recently became aware of the underlying facts that gave rise to these claims and defenses."); *see also Canvs Corp. v. United States*, 107 Fed. Cl. 100, 107 (Fed. Cl. 2012) ("where the information that a plaintiff relies upon to support amendment was publicly available prior to the time for filing plaintiff's infringement contentions, a court should be reluctant to permit amendment.") (citing *Global Sessions LP v. Travelocity.com LP*, 2012 WL 1903903, at *4 (E.D. Tex. 2012)). "To the extent that the failure to find the relevant information in the time

3

allotted was simply a careless mistake of counsel, this also is insufficient to establish good cause." *Id*.

Seemingly realizing that it would not make sense to interpret the OGP to allow parties to "provide priority claims at any time," Sonos's Opposition states that it "does not argue for that position here." Opp. at 9. Sonos claims that it is arguing that amendment should be permitted "under the circumstances" here. But the circumstances Sonos identifies—(1) a boilerplate assertion in its contentions that it had not yet completed its investigation, (2) that fact discovery was not open at the time it served its contentions, (3) that no fact depositions or discovery had been served, and (4) that Google had yet to serve its final invalidity contentions (Opp. at 9)—apply in every case governed by the OGP so long as priority contentions are served prior to the *Markman* (*i.e.*, the day before fact discovery opens). If Sonos is permitted to freely amend in these "circumstances" without meeting the certification standard set forth in the OGP, then any party could delay disclosure of its priority dates until *Markman* without recourse. Accepting Sonos's argument would effectively rewrite the OGP to permit a patent owner to identify its priority claims the day before fact discovery opens, rather than with its infringement contentions.

### B. Google's Motion Should Be Granted Because Sonos Has Not Moved For Leave To Amend And Cannot Meet The Standard For Doing So

Despite the fact that Sonos has still not actually moved for leave to amend in this case, it purports to analyze Google's Motion under the "good cause" standard. Under this standard, the Court may consider the following factors in determining whether there is good cause for the amendment: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *True Chemical*, slip op. at 4 (citing *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)). In applying this standard, Sonos confuses the burdens of proof. Sonos states that "Google has not met its burden" (Opp. at 14),

4

but it is, in fact, Sonos's burden to show "good cause" for the amendment. *Id*. ("The good cause standard requires that the party seeking relief show that, despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines."). Sonos has not met that burden.

### 1. Sonos Does Not Provide Any Legitimate Excuse For Its Failure to Meet The Case Schedule

Courts recognize that "[t]he most important factor bearing on the 'good cause' inquiry" is "whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline." *Allergan, Inc. v. Teva Pharmaceuticals USA, Inc.*, 2017 WL 119633, *3 -*8 (E.D. Tex. 2017) (Bryson, J., sitting by designation). Where the party seeking the amendment has not met its burden to show that it acted diligently, the Court can deny a motion for leave without considering other factors. *See Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. App'x 1009, 1016 (Fed. Cir. 2015) ("Because the district court did not abuse its discretion in deciding that Allvoice did not act diligently in moving to amend its infringement contentions, we need not consider the potential prejudice to Microsoft."); *see also True Chemical*, slip op. at 6 (finding that plaintiff "cannot establish requisite showing of good cause" because it was not diligent).

Sonos entirely fails to show any diligence. It is not a close question. Sonos's opposition fails to put forth any reason—in a case it chose to bring—why it could not review *its own documents* earlier, nor does it provide any explanation for why it took *six extra months* beyond the deadline provided by the OGP to amend. Absent from Sonos's opposition is any reference to when Sonos began any investigation into its own documents, when it first talked to its inventors (most of which remain current employees), or even generally what steps Sonos took. Given its ready access to this information but failure to act on it, Sonos cannot show diligence. *True*

5

*Chemical,* slip op. at 6 (denying a motion for leave because "True Chem cannot establish that it only recently became aware of the underlying facts that gave rise to these claims and defenses.").

Sonos's only response is it "has not even failed to meet any such deadline" because the OGP allows for amendment without leave. Opp. at 15. Incorrect. The OGP only allows parties to amend without leave when a party certifies it "undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served." But, as discussed in the prior section, Sonos has never certified either point and cannot do so since its amendments are entirely based on its own documents. Accordingly, Sonos's amendment was improper under the OGP and leave would be required.

### 2. Striking Sonos's New Priority Dates Does Not Unduly Prejudice Sonos

Sonos argues that exclusion of its Priority Contentions would cause it prejudice. Opp. at 15. However, Sonos disputes that any of Google's prior art renders the claims invalid. And if Google's motion were granted, the result would only be that Sonos would be held to the priority dates and evidence that it timely disclosed—which Sonos clearly thought sufficient when it disclosed them in December 2020. The remedy is thus not "extreme" and any prejudice is entirely self-inflicted. *See also Harvatek*, 2015 WL 4396379, *2-*3 (prohibiting a party from providing untimely Priority Contentions).

### 3. Sonos's New Priority Dates And Evidence Are Unduly Prejudicial To Google

Google's Motion showed that it would suffer undue prejudice because it conducted its prior art search based on Sonos's original Priority Contentions. Mot. at 5-7. Sonos argues that this prejudice should be disregarded because Sonos allegedly "put Google on notice that it was still investigating" its priority claims. Opp. at 11. But such boilerplate language does not give

6

Sonos the right to unilaterally disregard this Court's OGP. Indeed, the correspondence Sonos points to (Ex. 3 at 3) was sent just one day before Google's contentions were due (Ex. 4 at 92) and Google promptly responded by informing Sonos that it would object to untimely Priority Contentions (Ex. 3 at 1).[1] Sonos's attempt to reserve the right to serve untimely Priority Contentions is similarly irrelevant.[2]

Sonos's assertion that Google could have "mitigated" the prejudice by simply redoing its invalidity search before the deadline for Final Invalidity Contentions ignores the hundreds of attorney hours Google spent conducting its prior art search or the fact that Sonos's late-identified priority date purports to render important art unviable. *See SoftVault Systems, Inc. v. Microsoft Corp*, 2007 WL 1342554, *2 (E.D. Tex. 2007) ("Allowing SoftVault to assert an earlier priority date at this time would prejudice Microsoft by forcing Microsoft to incur additional expense in reassessing its invalidity analyses based on an earlier priority date. Microsoft would also likely lose the ability to use references that are prior art under the currently asserted priority date."); *Allergan,* 2017 WL 119633, at *7 ("additional discovery costs imposed on the responding party are entitled to consideration in determining the issue of prejudice.").

Sonos's argument also fails to account for the fact that Sonos has buried its untimely Priority Contentions among 6,000 pages of its document production. Ex. 1 at 16. Figuring out *how Sonos contends* that each of these documents allegedly supports the claims is no small task, and adds to the prejudice Google suffers by further expanding the scope and complexity of discovery. Google should not have to propound extra discovery to remedy Sonos's violations of

---

[1] Sonos claims that Google waited "many weeks" to approach the Court, but omits to mention that the parties were engaged in claim construction between the time that Sonos made its untimely amendment and when Google raised the issue with the Court.

[2] Sonos also argues that Google should have "anticipated" that Sonos would provide an earlier conception date because Google's invalidity contentions reserved the right to respond to Sonos's future positions. Opp. at 11. But this standard reservation of rights in no way inoculates Google from being prejudiced by Sonos's untimely priority contentions.

7

the OGP. *Allergan,* 2017 WL 119633, *7 (finding prejudice because the untimely amendment would "interject a new layer of complexity into an already complex case"). [3]

Moreover, Sonos's "mitigation" argument is based on the faulty premise that Google should have assumed that the Court would allow Sonos to ignore the OGP and substantially change its Priority Contentions well past the Court's deadline, and without seeking leave to do so. But trying to shift the blame to Google for playing by the rules is absurd. This Court has emphasized that it endeavors to take cases to trial quickly and. in order to do so, the parties must adhere to the deadlines and rules set forth in the OGP, or seek the Court's leave to change them. It does not permit precisely what Sonos is attempting to do here, which is to unilaterally "reverse the order of the procedure contemplated by our Patent Local Rules, giving it a preview of [Google's] invalidity contentions before offering a concrete conception date." *Harvatek*, 2015 WL 4396379, *2. Google's opening invalidity report is due in less than four months (on January 7, 2022) and trial is set less than nine months from now (on June 6, 2022). Allowing Sonos to ignore the rules and take a bite out of Google's invalidity defense at this stage of the case would unfairly prejudice Google.

This is especially true in view of the number and character of the prior art references that would be impacted if Sonos's new Priority Contentions are accepted. Sonos claims that "95%" of the art in Google's invalidity contentions would not be antedated by its Priority Contentions. Opp. at 14. But Sonos provides no explanation for how it arrived at this number and the impact

---

[3]The cases Sonos relies upon on page 12 of its Opposition are inapposite. Neither *Creative* nor *Glazer* addressed amendments to contentions. Instead, *Creative* addressed prejudice in the context of a request for a new trial and *Glazer* applied a different Third Circuit standard (the "*Pennypack* factors") to assess whether fact witness testimony should be excluded. The only case addressing contentions, *Virginia*, involved a request from Plaintiff to fix a clerical error in its priority contentions that would have been understood based on context—far different than the facts here. *See Virginia Innovations Sciences, Inc. v. Amazon, Inc.*, 2020 WL 1275789, *5-6 (plaintiff explaining that it "is not changing its position," but rather "correcting an error creating an ambiguity in its disclosure.").

8

on Google's invalidity theories is more significant. For instance, Google charted ten references for each of the '885 and '996 patents (the "Zone Scene Patents"). Sonos's Priority Contentions predate one or more documents cited in at least five (50%) of these charts: Sonance DAB 1, Sonos Forums, Sonos System, Crestron, and Squeezebox. Similarly, for the '615 and '033 patents (the "Direct Play Patents"), Sonos's Priority Contentions would predate one or more documents cited in at least 7 of the 13 references (53.8%) Google charted: Squeezebox, Spotify, Sonos 5, Airplay, Twonky, Google's YouTube Remote, and Google's Nexus Q. For each asserted patent, this includes prior art generated by Sonos itself that Google contends invalidates. Sonos waited until it saw how Google charted Sonos's own prior art products. Only then, with the benefit of that information, Sonos attempted to amend its priority dates based on *its own documents* that it had been withholding from Google. Allowing such deliberate conduct would provide Sonos an unfair advantage that the OGP is specifically designed to prevent. Accordingly, this factor also weighs strongly against permitting Sonos's untimely amendment.

### 4. A Continuance Cannot Cure The Prejudice Here

A continuance would not reverse the prejudice Google identified above. Google has already expended resources conducting its prior art search and a continuance would not cure the prejudice associated with a narrowed body of prior art. *See SoftVault*, 2007 WL 1342554, *2 ("The final factor, the availability of continuance to avoid any prejudice, weighs against granting the motion [for leave to amend priority contentions]. Granting a continuance would allow Microsoft time to reassess its invalidity contentions. However, a continuance would not cure prejudice to Microsoft arising from a narrowed body of prior art. SoftVault had access to the earlier application before filing suit and has not shown good cause to alter the asserted patent's priority date."). The prejudice to Google by Sonos's failure to diligently pursue its Priority Contentions thus cannot be cured by a continuance.

9

## III. CONCLUSION

Google respectfully requests that the Court strike Sonos's untimely priority dates.

DATED: September 16, 2021      QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Charles K. Verhoeven*
Charles K. Verhoeven (*pro hac vice*)
charlesverhoeven@quinnemanuel.com
Melissa Baily (*pro hac vice*)
melissabaily@quinnemanuel.com
Jordan Jaffe (*pro hac vice*)
jordanjaffe@quinnemanuel.com
Lindsay Cooper (*pro hac vice*)
lindsaycooper@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875 6600
Facsimile: (415) 875 6700

Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
pamstutz@scottdoug.com

*Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on September 16, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven