NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**In re: GOOGLE LLC,**
*Petitioner*

---

2021-170

---

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:20-cv-00881-ADA, Judge Alan D. Albright.

---

**ON PETITION AND MOTION**

---

Before LOURIE, BRYSON, and TARANTO, *Circuit Judges*.

PER CURIAM.

### O R D E R

Plaintiff Sonos, Inc., filed this patent infringement case against defendant Google LLC in the Waco Division of the United States District Court for the Western District of Texas. Google moved to transfer the case to the Northern District of California. The district court denied the motion. The court first held that a forum selection clause in a 2013 agreement between the parties was inapplicable to the patent infringement action before it. The court then held that Google had failed to make a showing sufficient to justify transferring the case under 28 U.S.C. § 1404(a).

Google now petitions for a writ of mandamus directing the district court to transfer the case. We conclude that the district court's refusal to transfer the case pursuant to section 1404(a) constituted a clear abuse of discretion. We therefore grant mandamus directing the court to transfer this case to the Northern District of California. Because we conclude that the district court misapplied the factors bearing on the transfer decision, it is unnecessary for us to address Google's argument concerning the applicability of the forum selection clause in the 2013 agreement between the parties.

I

A

Google presented the following facts in support of its transfer motion: Two of the four inventors work for Sonos at its principal place of business in Santa Barbara, California. A third inventor, who no longer works for Sonos, also resides in California. The fourth inventor, who is not associated with Sonos, lives in Boston, Massachusetts. Sonos does not have any offices or employees in Texas.

Google's headquarters are in the Northern District of California. Sonos also maintains offices there. Google identified a number of employee witnesses who can testify regarding the development, functionality, and marketing of the accused products. Several of those witnesses are located in the Northern District of California and none are located in Texas. Google also identified witnesses in the Northern District of California who are expected to testify about prior art, and it noted several previous cases in which it had called such witnesses to testify during trial. Google added that because three of the named inventors are located in California, they could be compelled to testify by the district court in the Northern District of California, but not by the district court in the Western District of Texas.

Sonos responded that Google maintains a large campus in Austin, Texas, within the Western District of Texas. Sonos suggested that Google's employees from Austin might have information material to the dispute in this case. Sonos also noted that there are several current and former Google employees in New York and Massachusetts who could be potential witnesses, and that they are located closer to the Western District of Texas than to the Northern District of California. Sonos added that Andrew Greene, the former head of Google's Partnerships & Alliances for Google Cloud, lives in Austin. Based on his title, Sonos speculated that Mr. Greene might have relevant information concerning the integration of third-party application technology that is pertinent to this case. In addition, Sonos noted that Google stores documents on data centers across the country, including in a data center in Midlothian, Texas, which is outside of the Western District of Texas but is within 100 miles of the federal courthouse in Waco, Texas.

The district court analyzed Google's transfer motion by applying a set of private- and public-interest factors identified by the United States Court of Appeals for the Fifth Circuit in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*").[1] After

---

[1]  The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of non-party witnesses whose attendance may need to be compelled by court order; (3) the relative convenience of the two forums for potential witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *See Volkswagen II*, 545 F.3d at 315. The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having disputes regarding activities occurring principally within a particular

reviewing those factors, the district court concluded that Google had failed to show that the Northern District of California was clearly more convenient for trial than the Western District of Texas. The district court therefore denied Google's motion to transfer.

B

At the outset, the district court found that this action could have been brought in the Northern District of California, a necessary predicate for the court to consider transferring the case to that district. The court then made the following findings regarding the transfer decision:

Based on its view that Google was not currently storing evidentiary documents in the Northern District of California and that a data center within 100 miles of the Waco courthouse contains relevant information, the court found that the ease of access to sources of proof weighs against transfer.

The district court recognized that testimony from the Google employees in the Northern District of California who were responsible for developing the accused products and had knowledge regarding their functionality was "undoubtedly relevant." And the court also found it unlikely that Sonos would call as witnesses the large number of Google employees it identified as working in Austin. The court noted that Sonos had not identified those witnesses with any further specificity. Nonetheless, the court found that the Western District of Texas was a more convenient forum for the non-party witnesses who were willing to testify. On that issue, the court relied on its finding that the Texas forum would be more convenient for four former

---

district decided in that forum; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See id.*

Google employees who were located in New York and Massachusetts and one of the inventors who was located in Massachusetts.

The district court explained that the witnesses in the northeast "would be more inconvenienced traveling more than twice the distance—over 1000 additional miles—to the NDCA compared to the WDTX." By contrast, the district court found that the convenience and cost of attendance for party witnesses located in California is entitled to little weight because party witnesses are within the control of the party calling them.

In addressing the compulsory process factor, Google identified eight non-party individuals and two entities in the Northern District of California as potential prior-art witnesses, and Sonos identified two potential prior-art witnesses in the Western District of Texas. The district court, however, did not regard that factor as bearing on the transfer decision. Citing one of its own prior decisions, the court expressed the view that prior-art witnesses are "generally unlikely to testify at trial." For that reason, the court held, the location of prior-art witnesses should be accorded little weight. The court added that Google's decision to call prior-art witnesses in previous cases did not "dissuade the Court from its general practice of ascribing little weight to such witnesses."

As for the remaining potential non-party witnesses, the district court gave no weight to the fact that one of the inventors lived in California because Sonos represented that the inventor was willing to testify without being subpoenaed. The court also found that Sonos had failed to identify any potential third-party witnesses who were unwilling to testify voluntarily. However, the court gave decisive weight to the fact that former Google employee Andrew Greene was located in Austin and was therefore subject to the court's compulsory process. Although Google stated that Mr. Greene had not worked on the partnership

account involving Sonos, the court concluded that, in light of Mr. Greene's former title as head of "Partnerships & Alliances, Google Cloud," it was likely that he would have information concerning the "integration of third-party applications."

The district court acknowledged that the Northern District of California had a local interest in resolving this case because of Google's presence in that district and Sonos's lack of any presence in the Western District of Texas. However, because Google had a significant presence in the Western District of Texas by virtue of its campus in Austin, the district court weighed the local interest factor only slightly in favor of transfer.

Finally, the district court found that the court congestion factor weighed against transfer. In making that finding, the court relied on a comparison of the median time-to-trial statistics for the transferor and transferee districts.[2]

## II

Our review is governed by the law of the regional circuit, which in this case is the Fifth Circuit. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Under Fifth Circuit law, the governing principles are well settled. Section 1404(a) authorizes a court to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice[.]" Fifth Circuit law provides that a motion to transfer venue pursuant to section 1404(a)

---

[2] The district court found the remaining factors to be neutral. With respect to the familiarity of the forum with the law that will govern the case, Google argued that this factor weighed in favor of transfer, given that California law would apply to the interpretation of the cooperation agreement. Because that factor would not affect our analysis, we do not address it here.

should be granted if "the movant demonstrates that the transferee venue is clearly more convenient." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (quoting *Volkswagen II*, 545 F.3d at 315) (internal quotation marks omitted).

A district court enjoys broad discretion in making a transfer determination. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). That discretion, however, is subject to limits. When a district court's denial of a motion to transfer clearly contravenes governing legal standards, we have issued mandamus to overturn the denial of transfer. *See, e.g.*, *In re Samsung Elecs. Co.*, 2 F.4th 1371 (Fed. Cir. 2021); *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020).

A

The district court acknowledged that the convenience of the witnesses is probably the single most important factor in transfer analysis. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). However, the court significantly qualified that observation. Citing one of its own prior opinions, the court stated that "[t]he convenience of party witnesses is given little weight."

Google identified a number of potential witnesses located in the Northern District of California, including witnesses who were responsible for developing the accused products and functionalities. The district court noted that even though those witnesses' potential testimony was "undoubtedly relevant," the court stated that "the vast majority [of those witnesses] are party witnesses," and that the court "does not assign great weight to these witnesses because Google can compel their testimony."

While it is true that the witnesses in the Northern District of California are largely affiliated with the parties, that does not negate the inconvenience and cost to those individuals to travel a significant distance to testify. We have rejected the district court's reliance on the fact that a

party's ability to compel the testimony of its employees supports assigning little or no weight to the convenience and cost to those witnesses. *See In re Juniper Networks, Inc.*, No. 2021-160, slip op. at 8 (Fed. Cir. Sept. 27, 2021); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021). As we explained in *Hulu*: "Although an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness . . . it hardly eliminates the inconvenience" of requiring the employee to travel. 2021 WL 3278194 at *5*; see also Samsung*, 2 F.4th at 1379 (holding that a district court's § 1404(a) analysis "must consider" the convenience of "possible party witnesses").

The district court considered the "cost of attendance for willing witnesses" factor to weigh against transfer primarily due to the convenience of four former Google employees and the third-party inventor of two of the asserted patents, all of whom are located in the northeastern United States. The court found that those witnesses would be more inconvenienced by having to travel to the Northern District of California than to the Western District of Texas.

In making that assessment, the district court relied on the Fifth Circuit's "100-mile rule." The Fifth Circuit has stated that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) ("*Volkswagen I*")). The rationale behind that rule is that "the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Volkswagen I*, 371 F.3d at 205.

We have been mindful of that rationale for that rule, and we have rejected a "rigid[]" application of the rule when "witnesses . . . will be required to travel a significant distance no matter where they testify" and when all witnesses would be inconvenienced by having to leave home to attend trial. *Genentech*, 566 F.3d at 1344. In light of the purpose underlying the rule, the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time.

Moreover, even though the distance from the northeastern United States to California is greater than the distance to Waco, Texas, the record before the district court does not show that the total travel time in each case is significantly different. There is no major airport in the Waco Division of the Western District of Texas, and the Waco courthouse is more than 100 miles from the nearest airport with direct flights to the northeast U.S. *See* App. 1022. In this regard, time is a more important metric than distance.

Our cases have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer. In *Genentech,* for example, we stated that where "a substantial number of material witnesses reside within the transferee venue . . . and no witnesses reside within the" transferor venue, a district court "clearly err[s] in not determining" the convenience of willing witnesses "to weigh substantially in favor of transfer." *Genentech*, 566 F.3d at 1345.

In recent cases, we have applied those principles in circumstances not materially different from those in this case. In *In re Apple*, 979 F.3d at 1342, the petitioner argued that the district court in the Western District of Texas erred in not finding the witness-convenience factor to favor transfer to the Northern District of California because a number of the parties' witnesses were located there and no witness

was located in Texas.  The district court had given more weight to the fact that the inventors and patent prosecutor residing in New York would "need to travel a greater distance to reach" the Northern District of California than the Western District of Texas.  *Id*.  In rejecting the district court's analysis, we explained that those witnesses "will likely have to leave home for an extended period" whether or not the case was transferred, and thus would "only be slightly more inconvenienced by having to travel to California than to Texas."  *Id*. (internal quotation marks omitted).

Likewise, in *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021), the defendant identified a substantial number of witnesses in the transferee venue in Florida, while no witness was located in the Western District of Texas.  The district court nonetheless held that the willing-witness factor weighed against transfer on the ground that a transfer would double the distance traveled by potential non-party witnesses in Arizona and Minnesota and therefore would double their inconvenience.  *Id*.  We held that, "[a]s in *Apple*, the district court here clearly misapplied the law in finding that any inconvenience to these individuals outweighed the convenience of having several party witnesses be able to testify at trial without having to leave home."  *Id*. at 540.

This case fits squarely within that line of precedent.  The district court here found that the willing witness factor weighed against transfer.  Yet it based that finding not on any witnesses who were located in the Western District of Texas, but rather on the presence of potential witnesses who live far outside both venues in New York and Massachusetts.  As was the case in *Apple* and *TracFone*, the district court's application of the 100-mile rule would result in all identified witnesses having to travel away from their home and work in order to testify in Texas, which would "produce results divorced from" the rule's underlying rationale.  *TracFone*, 852 F. App'x at 539.

While Sonos listed a large number of potential witnesses from Google's Austin campus, the district court noted that Sonos did not indicate with specificity what relevant evidence any of those witnesses would have to offer. Even from the perspective of the district court, Sonos's list of Google employees therefore did not buttress its claim for retaining the case in the Western District of Texas.

For those reasons, we agree with Google that the district court abused its discretion by not weighing the convenience-to-witnesses factor strongly in favor of transfer.

B

Another factor that we have emphasized as important in transfer analysis is the value of having localized interests adjudicated at home. Google argues that the district court abused its discretion in analyzing this factor. We agree.

Although the district court properly weighed the local interest factor in favor of transfer, it held that Google's presence in the Western District of Texas lessened the importance of that factor. That was error. The district court did not find that Google's operations in the Western District of Texas had any connection to the events giving rise to this case. Rather, the district court merely relied on Google's general presence in that forum district. As such, the court failed to conduct the proper inquiry. *See Apple*, 979 F.3d at 1345 (noting that this factor "most notably regards . . . the 'significant connections between a particular venue and *the events that gave rise to a suit*'" (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (emphasis in *Apple*)).

The district court concluded, in essence, that Google had sufficient connections to Austin to make it suitable to try the case in the Western District of Texas. Without further inquiry into the particular events giving rise to the case, however, the district court's analysis "improperly

conflate[d] the requirements for establishing venue under 28 U.S.C. § 1400(b) and the requirements for establishing transfer under § 1404(a)." *Apple*, at 979 F.3d at 1346.

Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas, we agree that the local interest factor should have been weighted strongly in favor of transfer. *See id.* at 1345.

C

None of the remaining factors support the district court's conclusion that Google failed to show that the Northern District of California is a clearly more convenient forum for trial than the Western District of Texas.

1. In concluding that the sources-of-proof factor disfavored transfer, the district court reasoned that: (1) Google no longer maintains evidentiary documents in the Northern District of California; (2) Google's evidentiary records are stored in data centers located around the country; (3) one of those data centers is located in Midlothian, Texas, in the Northern District of Texas, while no such center is located in the Northern District of California; and (4) the relative proximity of the data center to the Western District of Texas makes accessing those electronic records from the Western District of Texas easier than it would be if the case were transferred. Neither that reasoning nor the facts underlying it support the district court's conclusion.

Google's declaration, on which the district court relied, cannot fairly be read as constituting an admission that Google does not keep sources of proof at its headquarters in the transferee venue. Google stated that "documents in Google's possession about its products and services are normally created and maintained by the employees working on those products and services," and because "[t]he employees with relevant knowledge of this litigation are located primarily in the San Francisco Bay Area . . . the relevant

documents in this case would be created and maintained in the San Francisco Bay Area." App. 625. Nothing in that or any other representation that Google made suggests that Google no longer maintains relevant records in its offices in the Northern District of California.

Nor does the fact that Google stores documents in electronic form at data centers around the country weigh in favor of holding trial in Texas. We have held that the fact that some evidence is stored in places outside both the transferor and the transferee forums does not weigh against transfer. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re HP Inc.*, 826 F. App'x 899, 902 (Fed. Cir. 2020). There is therefore no sound basis to weigh the sources of proof factor against transfer; if anything, that factor weighs in favor of transfer.

2. In holding that its ability to compel unwilling witnesses provided a comparative advantage for the transferor forum over the transferee forum, the district court categorically rejected the argument that the California court should be favored because it has subpoena power over several third-party prior-art witnesses who are located in the Northern District of California. Despite Google's history in other cases, the court assumed that it was unlikely that prior-art witnesses would be called in this case. For that reason, the court held, those witnesses were entitled to little weight. The court also weighed against transfer the fact that Google had failed to come forward with evidence indicating that those witnesses were unwilling to testify. The district court's conclusion on that issue cannot be supported by the reasons provided.

*Hulu* recently disapproved of the rejection of prior-art witnesses under circumstances similar to those in this case. *See* 2021 WL 3278194, at *3. As Google did here, Hulu identified prior-art witnesses it expected to call at trial. In *Hulu*, as in this case, the district court substituted its own assumption that prior-art witnesses were unlikely

Case 3:24-0781-A Document 29 Page 14 Filed 09/27/2024

to testify at trial in place of any specific reason to believe that those identified potential witnesses would not testify. *Hulu* held that such a categorical rejection of those witnesses entirely untethered to the facts of the particular case was an abuse of discretion. *Id*. *Hulu* also rejected the proposition, adopted by the district court in this case, that the compulsory process factor is irrelevant unless the witnesses in question have expressly indicated an unwillingness to testify voluntarily. *Id*. at *4. The court therefore erred in not giving weight to Google's prior-art witnesses.

The district court found the potential testimony of Google's former executive Andrew Greene to be "the decisive element" that "tips [the compulsory-process] factor against transfer." Sonos, however, was not at all specific about what testimony it expected to elicit from Mr. Greene, or even if he possesses knowledge of the facts relevant to this infringement action. Sonos's only support for the potential relevance of Mr. Greene's testimony is what appears to be Mr. Greene's "LinkedIn" page, which states that he was "Head of Partnerships & Alliances, Google Cloud" for three and one-half years between 2016 and 2019. Appx1829. The likelihood that Mr. Greene would provide relevant evidence for Sonos is thus highly speculative. And even without second-guessing the district court's conclusion in that regard, we cannot say that the district court's ability to compel him to testify under the circumstances of this case is entitled to "decisive weight."

3. With respect to the court-congestion factor that the district court held to weigh against transfer, we have held that when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347. Where, as here, the district court has relied on median time-to-trial statistics to support its conclusion as to court congestion, we have characterized this factor as the "most speculative" of the factors bearing on the transfer decision. *Id*.; *see also Apple*, 979

F.3d at 1344 n.5. Under the approach to this factor we adopted in *Genentech*, the district court's speculation about what might happen with regard to the speed of adjudication is plainly insufficient to warrant keeping this case in the Texas forum given the striking imbalance favoring transfer based on the other factors.[3]

### III

In sum, as in other recent cases in which this court has granted mandamus on the issue of transfer, the center of gravity of this action is clearly in the transferee district, not in the Western District of Texas. And as in those cases, several of the most important factors bearing on the transfer decision strongly favor the transferee court, and no factor favors retaining the case in the transferor court. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should

---

[3] Here, the median time to trial for all judges in the two districts is not dramatically different, but it favors the Western District of Texas. However, as the district court noted, the judge in the transferee court who would presumptively be assigned the case is William H. Alsup, who has been assigned the related declaratory judgment case between the parties. Statistics show that Judge Alsup's average time to trial is shorter than Judge Albright's. Moreover, as of late June 2021, Judge Alsup had significantly fewer cases on his docket (157 cases) than did Judge Albright (1053 cases). App. 2224, 2227. At minimum, then, it is not clear that the time to trial in the transferor court would be shorter than the time to trial in the transferee court.

Case: 24-0781-AD Document: 29 Page: 16 Filed: 09/27/2021
Case 6:20-cv-00881-ADA Document 118 Filed 09/27/2021 Page 16 of 16

16                                                                IN RE: GOOGLE LLC

grant a motion to transfer." (citation omitted)). We therefore grant Google's petition directing transfer of the case.

Accordingly,

IT IS ORDERED THAT:

(1) The petition is granted. The district court's order denying Google's motion to transfer is vacated, and the district court is directed to grant the transfer motion.

(2) Google's motion to waive the requirements of Federal Circuit Rule 25.1(d)(1) (ECF No. 4) is granted. ECF No. 3 is accepted for filing.

FOR THE COURT

September 27, 2021          /s/ Peter R. Marksteiner
       Date                 Peter R. Marksteiner
                            Clerk of Court

s35

cc: United States District Court for the Western District of Texas